UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

| | | |
|---|---|---|
| PRAIRIE BAND POTAWATOMI NATION, a federally recognized Indian Tribe, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. |
| JACKSON COUNTY SHERIFF TIM MORSE, in his official capacity, and JACKSON COUNTY SHERIFF'S OFFICE, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## VERIFIED COMPLAINT

Prairie Band Potawatomi Nation ("Nation") brings this action against Tim Morse, Sheriff of Jackson County, Kansas, ("Sheriff Morse") and the Jackson County Sheriff's Office ("Sheriff's Office") (collectively, "Defendants") seeking a declaratory judgment that, within the Nation's reservation, the Defendants (i) lack authority to interfere with the Nation's lawful exercise of civil-regulatory jurisdiction and (ii) lack civil-regulatory jurisdiction. The Nation also seeks permanent injunctive relief prohibiting, within the reservation, the Defendants from interfering with the Nation's lawful exercise of its civil-regulatory jurisdiction and from exercising unlawful civil-regulatory jurisdiction.

# BACKGROUND

1.      This case arises from the Nation's efforts to protect public health and safety within its reservation through its civil-regulatory jurisdiction and the Defendants' attempts to impede those efforts. It also arises from the Defendants' unlawful exercise of civil jurisdiction within the reservation.

## A.      The Nation's Reservation

2.      The Nation exercises jurisdiction over a reservation established by the Treaty with the Pottawatomi Nation, 9 Stat. 853 (June 17, 1846), ("Reservation") in northeastern Kansas, the relevant portion of which lies within Jackson County. Under 18 U.S.C. § 1151, all lands within the Reservation are Indian country.

## B.      The Nation's government

3.      The Nation's government is located on the Reservation and includes the offices of the Tribal Council (the Nation's elected government), the Judicial Council (the Nation's independent judicial branch of government, with civil and criminal jurisdiction), the Gaming Commission, and the Tax Commission. The Nation's "authority and jurisdiction . . . extend[s] to the fullest extent possible, including, without limitation . . . to any and all persons, including non-members and members of the Prairie Band Potawatomi Nation and including any corporation, other entity or any person located or doing business on the Nation's Reservation . . . ." Prairie Band Potawatomi Nation Const. art. I, § 1.

4.      The Nation provides public services within the Reservation, including fire protection and emergency services, law enforcement, early childhood education,

health care, community centers, historic preservation, environmental protection,

wildlife conservation, land maintenance, road and bridge maintenance,

transportation, and vehicle licensing and registration.

5.      The Nation also operates businesses within the Reservation including

a gaming facility (as authorized by the Indian Gaming Regulatory Act, 25 U.S.C.

§§ 2701 *et seq.,* and the Tribal-State Gaming Compact, last amended in July 2023,

*see* 88 Fed. Reg. 45,909 (July 18, 2023)), a convenience store, and a hemp farm and

processing plant.

6.      To help support these services, the Nation's Tax Commission regulates

and licenses businesses on the Reservation and collects taxes on tobacco, retail sales

(including alcohol), and motor fuels.

7.      The Nation has also established a police department authorized to

promote public safety, protect persons living in the Reservation, preserve the peace,

and work with other law enforcement agencies to promote the peace. The Nation

has authorized its law enforcement officers to make arrests and to carry handguns,

other firearms, and other weaponry for their personal protection and the protection

of others. The tribal police are cross-deputized by the Bureau of Indian Affairs, have

Special Law Enforcement Commissions under 25 U.S.C. §§ 2801 and 2804a, and are

recognized state law enforcement officers under Kan. Stat. § 22-2401a.

8.      Sheriff Morse, as a former member of the Nation's police department,

is well versed in the department's powers and status.

C.      **The Defendants' authority within the Reservation**

9.      Defendants currently exercise criminal jurisdiction within the Reservation under the Kansas Act, 18 U.S.C. § 3243.

10.     It is well established that a grant of criminal jurisdiction to the state does not confer on the Sheriff civil-regulatory or taxing jurisdiction within an Indian reservation. *See, e.g., Bryan v. Itasca Cnty., Minnesota*, 426 U.S. 373, 374 (1976) ("Congress well kn[ows] how directly to express its intent to confer upon the States general civil regulatory powers, including taxation"); *California v. Cabazon Band of Mission Indians*, 480 U.S. 202–203, 211 (1987) (finding that in a state where criminal jurisdiction has been conferred, if "an otherwise regulatory law is enforceable (as here) by criminal as well as civil means[, it] does not necessarily convert it to a criminal law" to be enforced by that state); *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 687 (2022) (finding that Congress knows how to "reference and employ *Cabazon's* distinction between prohibition and regulation"; *Burdett v. Harrah's Kansas Casino Corp.*, 260 F.Supp.2d 1109 (D. Kan. 2003) (noting that "[b]ecause this is a civil proceeding, Section 3243 [the Kansas Act] does not apply"); *Rodewald v. Kansas Dep't of Revenue*, 296 Kan. 1022, 297 P.3d 281 (2013) ("Congress has granted the state of Kansas criminal jurisdiction. . . . But there is no similar provision for civil matters"); see also "); *see also* FELIX S. COHEN, HANDBOOK OF FEDERAL INDIAN LAW 581 (2012 ed.) (citing *Iowa Tribe of Indians*, 787 F.2d 1434 (10th Cir. 1986) ("[s]tatutes authorizing state jurisdiction[, like that in Kansas,] are applicable only to criminal jurisdiction and do not confer on the states any civil

regulatory or taxing jurisdiction"); COHEN, at 581-582 (citing *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987)) (Case law has "made it clear that states cannot gain regulatory jurisdiction in Indian [C]ountry indirectly through a federal grant of state criminal jurisdiction".)

## JURISDICTION AND VENUE

11.    The Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1362 (civil actions arising under federal law brought by federally recognized Indian tribes), and 28 U.S.C. §§ 2201, 2202 (the Declaratory Judgment Act) because the Nation asserts claims arising under the laws of the United States, including federal common law.

12.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because all parties are located in the District of Kansas and the events giving rise to the Nation's claims occurred within the District.

## PARTIES

13.    The Prairie Band Potawatomi Nation is a federally recognized Indian tribe, with governmental offices at 16281 Q Rd, Mayetta, Kansas 66509, exercising governmental authority over the Reservation and those within it by virtue of the treaties with the Potawatomi Nation, the U.S. Constitution, and federal common law.

14.    Jackson County Sheriff Tim Morse is the elected Sheriff of Jackson County, Kansas, with offices at 210 US 75 Highway, Holton, Kansas 66436.

15.     The Jackson County Sheriff's Office is the law enforcement agency for Jackson County, Kansas, with offices at 210 US 75 Highway, Holton, Kansas 66436.

## STATEMENT OF FACTS

### A.     The Nation's civil-regulatory jurisdiction

16.     The Nation exercises civil-regulatory jurisdiction over businesses within the Reservation under the Potawatomi Law and Order Code ("Code"), which applies to "any and all persons, including non-members and members of the Prairie Band Potawatomi Nation and including any corporation, other entity or any person and to all surface, subsurface or other territory or real or personal property of any nature." Code, § 1-1-1.

17.     This jurisdiction is an inherent attribute of the Nation's sovereignty as an Indian Nation, which includes plenary and exclusive power over civil activities on its Reservation, subject only to limitations imposed by federal law.

18.     Title 10 of the Code governs general revenue and taxation, establishes the Prairie Band Potawatomi Tax Commission ("Tax Commission") as the Nation's taxing authority, *id.* at § 10-1, imposes a tobacco excise tax, *id.* at § 10-2, a gross receipts sales tax (including on alcohol sales), *id.* at § 10-3, and a motor fuel tax, *id.* at § 10-6-5.

19.     The incidence of the tobacco tax is on the distributor. *Id.* at § 10-2-5.

20.     The incidence of the sales tax (including alcohol) is on the retailer. *Id.* at § 10-3-4.

21.     The incidence of the motor fuels taxes is on the distributor. *Id*. at § 10-6-5.

22.     Title 13 of the Code governs business licensing within the Reservation and authorizes sanctions for non-compliance, including the issuance of a cease-and-desist order requiring the business to immediately cease doing business where the non-compliance poses an "immediate threat to the peace, safety, morals, or general welfare of the residents of the Reservation." *Id*. at § 13-3-1(B).

**B.     Defendants' interference with the Nation's exercise of its civil-regulatory jurisdiction**

**a.     *Snak Atak's consent to the Nation's civil-regulatory jurisdiction***

23.     On or about January 29, 2024, Wamego Store LLC, doing business as Snak Atak Travel Plaza ("Snak Atak"), a non-Indian owned company organized under the Kansas revised limited liability company act, Kan. Stat. §§ 17-7662 *et seq.*, and located on fee land within the Reservation, applied to the Tax Commission for a business license, tobacco retailer license, liquor retailer license, and tribal motor fuels retailer license.

24.     In those applications, Snak Atak agreed to pay tobacco and sales taxes and to provide certain sales and inventory reports to the Tax Commission.

25.     In its business license application, Snak Atak "agree[d] to submit regular Sales Revenue reports, as requested by the PBPN Tax Commission Office" and agreed "to be bound by and comply with all laws of the Prairie Band Potawatomi Nation" and "consensually submit[ted] to the jurisdiction of the Prairie Band Potawatomi Nation." Snak Atak, License for Bus. Appl., 1 (Jan. 26, 2024).

26.     In its Tobacco Retailer License application, Snak Atak agreed to: (i) Remit payment "to the Tax Commission for each Tribal Tax Stamp affixed on individual packs of cigarettes by the tenth (10th) of every month for the previous month"; (ii) "Submit all reports to the Tax Commission as required pursuant to the Potawatomi Law and Order Code Title 10 General Revenue and Taxation; (iii) "Comply with all other applicable tribal business laws applicable to tribal tobacco retailers and wholesalers," and (iv) "Take all reasonable precautions to ensure the security and integrity of the Tribal Tax Stamp, including keeping unaffixed stamps in a secure location." Snak Atak, Tobacco Retailer License Appl., 3 (Jan. 26, 2024).

27.     Snak Atak also agreed "to be bound by and comply with all laws of the Prairie Band Potawatomi Nation" and "consensually submit[ted] to the jurisdiction of the Prairie Band Potawatomi Nation." *Id.*

28.     In its Liquor Retailer License Application, Snak Atak agreed to "be bound by and comply with all laws of the Prairie Band Potawatomi Nation" and "consensually submit[ted] to the jurisdiction of the Prairie Band Potawatomi Nation." Snak Atak, Liquor Retailer License Appl., 1 (Jan. 26, 2024).

29.     Snak Atak also agreed "to comply with all of the terms and conditions of the Liquor Control Ordinance of the Prairie Band Potawatomi Nation and any other applicable law" and "to be subject to the exclusive jurisdiction of the Prairie Band Nation Potawatomi Nation Tribal Court." *Id.*

30.     In its Tribal Motor Fuel Retailer License Application, Snak Atak agreed "to be bound by and comply with all laws of the Prairie Band Potawatomi

Nation" and "consensually submit[ted] to the jurisdiction of the Prairie Band Potawatomi Nation." Snak Atak, Motor Fuel License Retailer Appl., 1 (Jan. 26, 2024).

31.     Snak Atak also agreed "to submit regular Motor Fuels Sales Revenue report[s] by the 10th of the following calendar month" and to keep all records "for 3 years and [make the records] readily available for PBPN Tax Commission inspection." *Id.* at 2.

### b.  *Additional authority to regulate and tax Snak Atak*

32.     Apart from Snak Atak's consent to the Nation's regulatory and taxation authority, the Nation has inherent civil-regulatory jurisdiction over sales of tobacco, alcohol, motor fuel, and other goods within the Reservation because such sales "threaten[] or ha[ve] some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana v. United States*, 450 U.S. 544, 566, (1981).

33.     In addition, Congress has delegated authority to the Nation to regulate alcohol sales within the Reservation. 18 U.S.C. § 1161; *United States v. Mazurie*, 419 U.S. 544, 557 (1975) (holding that Indian tribes have congressionally delegated authority to regulate such sales).

34.     Snak Atak's alcohol sales on the Reservation have a direct effect on the health and welfare of the Nation, as Congress has recognized by delegating regulatory authority over such sales to the Nation. *See id.* at 577.

35.     Sales of tobacco, a substance dangerous to human health, are also highly regulated and have a direct effect on the Nation's health and welfare.

36.     In addition, the State of Kansas has agreed that the Nation will regulate all sales of cigarettes within the Reservation. Compact Relating to Cigarette and Tobacco Sales, Taxation and Escrow Collection between the State of Kansas and the Prairie Band Potawatomi Nation, 4.01(a) (Feb. 17, 2016).

### c.    *Snak Atak's operation and failure to comply with Nation law*

37.     On or about January 30, 2024, the Tax Commission issued three licenses to Snak Atak: a Business License (No. 013024015) (effective date Jan. 30, 2024); a Tobacco Retailer License (License No. 1302024-4) (effective date Jan. 30, 2024); and a Motor Fuel License Retail (No. MOTOR-2024-03) (effective date Jan. 30, 2024).

38.     On or about February 1, 2024, the Nation's Tribal Council accepted Snak Atak's application for a liquor license, and, by resolution, approved the license. Snak Atak, Liquor License (No. 2024-1) (effective date Feb. 1, 2024).

39.     On February 6, 2024, the Tax Commission informed Amit Mishra (a member of Snak Atak) via email that Snak Atak's business license, motor fuel retailer license, and tobacco retailer license had been approved with an effective date of January 30, 2024 and an expiration date of January 29, 2025.

40.     Also in that email, the Tax Commission informed Mr. Mishra that Snak Atak's liquor retailer license had been approved with an effective date of February 1, 2024 and an expiration date of January 31, 2026.

41.     The email also reminded Mr. Mishra that "[u]pon acceptance of a license, the licensee consensually agrees to submit to the jurisdiction of the Prairie Band Potawatomi Nation (PBPN) and comply with all the PBPN laws."

42.     Upon information and belief, Snak Atak opened for business in March 2024.

43.     To date, Snak Atak has not filed required reports with the Tax Commission, affixed Nation tobacco stamps to individual packs of cigarettes, or remitted owed taxes to the Tax Commission.

### d. *The Nation's civil regulation of Snak Atak*

44.     On May 28, 2024, Tax Commission officials visited Snak Atak to inspect its records and inventory.

45.     During that visit, Snak Atak refused to allow the Tax Commission officials to inspect Snak Atak's records or inventory.

46.     The Tax Commission officials left Snak Atak and obtained a cease-and-desist order from the Tax Commission ("Cease and Desist Order") under Section 13-3-1(B) of the Code. Cease and Desist Order (May 28, 2024).

47.     The Cease and Desist Order cited Snak Atak for the following violations of the Code: (i) "[f]ailure to allow the Tax Commission and Tribal Police access to the premises to conduct inspections", Code, § 10-1-4, *General Taxing Powers of the Tax Commission*; (ii) "[f]ailure to conspicuously post licenses issued by the Nation", *id.* at § 13-2-2, *Application and Issuance*; (iii) "[f]ailure to provide and remit sales tax owed the Nation and maintain sales tax records and filing applicable

reports with the Tax Commission" *id.* at § 10-3, *Sales Tax*; (iv) "[f]ailure to affix tribal tobacco stamps to tobacco products sold to the public within the store, maintain records and filing applicable reports with the Tax Commission, remitting tobacco excise tax to the Tax Commission", *id.* at § 10-2, *Tribal Tobacco Excise Tax*; and (v) "[c]ontinual non-compliance with the Nation's business licensing ordinance while conducting business in violation of the applicable conditions of licenses issued by the Nation", *id.* at § 13-3, *Sanctions. Id.* at 1–2.

48.     The Cease and Desist Order also found that Snak Atak's "continued non-compliance with the Potawatomi Law and Order Code [] is a direct and immediate threat to the peace, safety, morals, or general welfare of the residents within the exterior boundaries" of the Reservation. Cease and Desist Order, 1.

49.     The Cease and Desist Order directed Snak Atak to "cease and desist business immediately upon service of this order" and gave Snak Atak notice that it may "file a notice of appeal with the Prairie Band Potawatomi Nation District Court within thirty (30) days from receipt" of the Cease and Desist Order under the Code, § 13-3-1(B), *Revocation of License; Failure to Obtain License; Show Cause Hearing. Id.* at 2.

50.     Snak Atak did not appeal the Cease and Desist Order within thirty days.

**e.  *Defendants' interference with the Nation's regulation of Snak Atak***

51.     Later in the day on May 28, 2024, Tax Commission officials returned to Snak Atak (accompanied by Tribal police officers) to serve the Cease and Desist

Order, eject the employees, and chain the doors to prevent Snak Atak from continuing to operate in violation of Nation law and of its agreements with the Tax Commission.

52.     While Tax Commission officials (accompanied by Nation police officers) were attempting to serve the Cease and Desist Order and close the store, at least three deputies from the Sheriff's Office arrived at Snak Atak.

53.     When the deputies arrived, the Nation's Police Chief, Terry Clark, (who was present during the Tax Commission's visit to Snak Atak) called Sheriff Morse.

54.     Chief Clark explained to Sheriff Morse that the Nation officials were present to enforce the Nation's civil laws on the store, which was not in compliance with those laws, and that Snak Atak had consented to the application of the Nation's laws as part of its license agreements to do business on the Reservation.

55.     On that call, Sheriff Morse told Chief Clark that Snak Atak employees had reported to the Sheriff's Office that Nation officials were harassing them, which was false.

56.     Also during that call, Sheriff Morse told Chief Clark that if the Snak Atak employees asked the Nation's officials to leave, and they did not leave, the Sheriff's Office would arrest the Nation's officials for criminal trespass.

57.     Sheriff Morse later confirmed this statement in a communication to the County Counselor, stating "I told the Chief that if they are asked to leave that they should leave because theoretically they could be subject to arrest."

58.     The Tax Commission Director also heard a Sheriff's Office deputy on site during the Snak Atak visit say that if the Nation's officials attempt to chain Snak Atak's doors, they would be arrested.

59.     Rather than risk arrest for criminal trespass, the Tribal Police and Tax Commission officials served the Cease and Desist Order on Snak Atak and left.

60.     The deputies remained on site until the Nation's officials left.

61.     In a later communication to the Jackson County Counselor, Sheriff Morse explained that he "was concerned that what was happening based on what the owner was telling me was illegal."

62.     The Defendants' interference with the Nation's lawful attempts to exercise its civil-regulatory jurisdiction against Snak Atak resulted in the Nation's inability to seize contraband and to enforce its own lawful regulatory system within its own sovereign territory.

63.     On or about June 28, 2024, the Tax Commission filed suit against Snak Atak and its agents in tribal court seeking an order of exclusion from the Reservation. Tax Comm'n v. Wamego Store LLC, (Prairie Band Dist. Ct. filed June 28, 2024)

64.     On or about June 30, 2024, the Tax Commission filed suit against Snak Atak in tribal court seeking an injunction prohibiting Snak Atak from conducting business within the Reservation, an injunction prohibiting Snak Atak from interfering with Tax Commission staff performing their official duties such as conducting inspections and seizing contraband, and civil penalties for violations of

the Nation's law. *Tax Comm'n v. Wamego Store LLC*, No. CV-2024-OT-0013.CV

(Prairie Band Dist. Ct. filed June 30, 2024).

### C.   Defendants' unlawful exercise of civil jurisdiction within the Reservation

#### a.   *Parking citations*

65.   The Sheriff's interference with the Nation's laws has not been limited

to Snak Atak. Unfortunately, Sheriff Morse and the Sheriff's Office have repeatedly

and intentionally overstepped their lawful authority and interfered with the

Nation's authority over activities on its Reservation. By way of example, upon

information and belief, in late August or early September 2021, the Defendants

cited, or threatened to cite, tribal employees at a hemp production facility within

the Reservation for improper parking, which is a civil—not a criminal—offense.

66.   Upon information and belief, in early September or late August 2021, a

Sheriff's deputy threatened to tow a tribal member's vehicle parked on the edge of a

road on the Reservation, but the tribal member moved the vehicle to comply with

the deputy's request.

67.   Defendants lack authority to threaten to issue or issue parking

citations within the Reservation (even in highway rights-of-way), because the

highways (and highway rights-of-way) are Indian country under 18 U.S.C. § 1151(a)

and the Defendants lack civil jurisdiction within the Nation's Indian country.

68.   In response to those incidents, on September 1, 2021, Sheriff Morse

explicitly stated in an email to Chief Clark that "unless the road is completely shut

down, all Kansas statutes still apply", demonstrating Sheriff Morse wrongly believes he has civil jurisdiction within the Reservation.

### b. Service of process

69.     Upon information and belief, Defendants have served process on the Reservation, which is a civil—not a criminal—action.

70.     In at least one instance, the Sheriff's unlawful service of process on the Reservation has had a tragic result. Upon information and belief, a Sheriff's deputy attempting to serve process on a tribal member within the Reservation shot and killed the tribal member's dog.

71.     Because service of process is inherently civil, *see* Kan. Stat. § 60-303, the Kansas Act does not confer jurisdiction on the Defendants to serve process within the Reservation.

### c. The Defendants' incorrect understanding of their civil authority

72.     Sheriff Morse's 2023 Annual Report incorrectly states that "[t]he Sheriff is not bound by . . . reservation boundaries" when he is absolutely bound by Reservation boundaries with respect to civil jurisdiction. Jackson County Sheriff's Off., 2023 Annual Report (undated).

73.     For the past several years, Chief Clark has attempted to work with the Defendants and to reach a mutual understanding of their respective authority on the Reservation, but the Sheriff has rejected those attempts.

## COUNT I
### Declaratory Judgment

74.     The Nation incorporates all previous paragraphs as if restated herein.

75.     The Defendants' threats to arrest Nation officials at Snak Atak on May 28, 2024 wrongfully interfered with the Nation's exercise of its civil-regulatory jurisdiction within the Reservation.

76.     To protect public health and safety on the Reservation, the Nation must be able to ensure that non-Indian owned businesses are not selling alcohol or tobacco to minors, are not selling contraband products, and are filing required reports to the Tax Commission.

77.     The Nation is entitled to a declaratory judgment that the Defendants exceeded their authority under the Kansas Act when they interfered with the Nation's exercise of its civil-regulatory jurisdiction over Snak Atak.

## COUNT II
### Declaratory Judgment

78.     The Nation incorporates all previous paragraphs as if restated herein.

79.     The Defendants have wrongfully exercised civil jurisdiction by issuing parking violations and serving process within the Reservation.

80.     The Nation is entitled to a declaratory judgment that the Defendants lack civil jurisdiction within the Reservation.

## COUNT III
### Injunctive Relief

81.     The Nation incorporates all previous paragraphs as if restated herein.

82.     On May 28, 2024, the Defendants wrongfully interfered with the Nation's exercise of its lawful civil-regulatory jurisdiction at Snak Atak by threatening to arrest the Nation's officials.

83.     The Defendants' actions prohibited the Nation's officials from seizing contraband and exercising their civil-regulatory jurisdiction to close Snak Atak for non-compliance with the Code.

84.     The Defendants have routinely overstepped their jurisdictional authority by taking civil actions, such as issuing parking tickets and serving process within the Reservation.

85.     The Nation is entitled to permanent injunctive relief prohibiting the Defendants from interfering in the Nation's lawful exercise of its civil-regulatory jurisdiction within the Reservation and prohibiting the Defendants from exercising civil jurisdiction within the Reservation.

## REQUEST FOR PLACE OF TRIAL

The Nation hereby requests that the trial of this matter take place in Topeka, Kansas.

## REQUEST FOR RELIEF

WHEREFORE, the Nation respectfully requests the following relief:

(a) A declaration that the Defendants lacked authority to interfere with the Nation's exercise of its civil-regulatory jurisdiction on May 28, 2024 at Snak Atak;

(b) A declaration that the Defendants lack civil jurisdiction within the Reservation, including jurisdiction to issue parking tickets and serve process;

(c) A permanent injunction prohibiting the Defendants from interfering in the lawful exercise of the Nation's civil-regulatory jurisdiction within the Reservation and prohibiting the Defendants from exercising civil jurisdiction within the Reservation;

(d) Such other relief as may be appropriate whether legal or equitable in nature; and

(e) An award of reasonable attorneys' fees and costs.

Respectfully submitted,

**STINSON LLP**

By: _/s/ Jere D. Sellers_
Jere D. Sellers        KS #16405
Rachel E. North      D. Kan. #79121
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
Tel:   (816) 691-3190
Fax:   (816) 412-8195
jere.sellers@stinson.com
rachel.north@stinson.com

**LIPPES MATHIAS**

Carol E. Heckman
NY State Bar #1321561, _PHV Pending_
LIPPES MATHIAS
50 Fountain Place, Suite 1700
Buffalo, NY 14202
Tel.: (716) 853-5100

Fax.: (716) 853-5199
Email: checkman@lippes.com

Klint A. Cowan
Okla. State Bar #20187, *PHV Pending*
LIPPES MATHIAS
512 NW 12th St.
Oklahoma City, OK 73103
Tel.: (405) 204-6487
Fax.: (202) 888.7615
Email: kcowan@lippes.com

**ATTORNEYS FOR PLAINTIFF**

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

| | | |
|---|---|---|
| PRAIRIE BAND POTAWATOMI NATION, a federally recognized Indian Tribe, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. |
| JACKSON COUNTY SHERIFF TIM MORSE, in his official capacity, and JACKSON COUNTY SHERIFF'S OFFICE, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## **VERIFICATION**

| | |
|---|---|
| STATE OF KANSAS | ) |
| | ) ss.: |
| COUNTY OF JACKSON | ) |

Terry Clark, being duly sworn, deposes and says that I am the Chief of Police of the Prairie Band Potawatomi Nation, the Plaintiff in the above-captioned case. I have reviewed the allegations made in the complaint and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on statements from other Nation officials and I believe them to be true.

ALISA MAE ROSE MILLER
Notary Public - State of Kansas
My Appt. Expires

Terry Clark, Chief of Police
Prairie Band Potawatomi Nation

Sworn to me this 17ᵗʰ day of July , 2024.

Notary Public