IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PRAIRIE BAND POTAWATOMI NATION,
a federally recognized Indian Tribe,

    Plaintiff,

vs.                                                  Case No. 5:24-cv-4066-KHV-RES

JACKSON COUNTY SHERIFF TIM MORSE,
in his official capacity, and JACKSON COUNTY
SHERIFF'S OFFICE,

    Defendants.

## Motion to Dismiss

Jackson County Sheriff Tim Morse moves, pursuant to Fed.R.Civ.P. 12(b)(2) and (6) and Fed.R.Civ.P. 17(a), to dismiss the Complaint for lack of personal jurisdiction over the "Jackson County Sheriff's Office" (which lacks the capacity to sue or be sued) and failure to state a claim against Sheriff Morse upon which relief may be granted.

Plaintiff's premise, that Sheriff Morse lacks any jurisdiction to be on the reservation in the absence of a crime, is fatally flawed. State sovereignty, and Sheriff Morse's constitutional and statutory authority, does not end at border of the Prairie Band Potawatomi Nation Reservation's border. *Nevada v. Hicks*, 533 U.S. 353, 361–62 (2001). The land within the Tribe's Reservation is part of the State of Kansas (not separate from the State) and, unless preempted, the State officials (including Sheriff Morse) have civil and criminal jurisdiction on the Reservation. *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636, 638 (2022). Sheriff Morse's statutory obligations include preserving the peace, service of process in civil and criminal cases, and "apprehending or securing" those committing a felony or "breach of the peace." *See* Kan. Const. art. IX, § 2 (creating the office of Sheriff as a constitutional officer); *see also* K.S.A. 19-813 (stating the duties of the sheriff and the sheriff's undersheriffs and deputies).

{T0484010}                                                 - 1 -

I.   **The Jackson County Sheriff's Office is not a proper party and must be dismissed.**

Rule 17(a) requires that an "action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). The Tribe is constrained by Kansas law regarding the capacity of parties to be sued in federal and, here, the capacity to sue or be sued is determined by Kansas law. Fed. R. Civ. P. 17(b)(3) ("(b) **Capacity to Sue or Be Sued**. Capacity to sue or be sued is determined as follows: … (3) for all other parties, by the law of the state where the court is located …").

In Kansas, in the absence of a specific statute, subordinate governmental agencies lack the capacity to sue or be sued. *See Mason v. Twenty–Sixth Judicial Dist.*, 670 F.Supp. 1528, 1535 (D.Kan. 1987) (judicial district was not capable of being sued, absent statutory language so providing); *Hopkins v. State*, 237 Kan. 601, 702 P.2d 311, 317 (1985) (dismissal of Kansas Highway Patrol affirmed because KHP lacked capacity to sue or be sued). Applying Kansas law, courts have held that subordinate agencies like sheriff's departments do not have the capacity to be sued. *Wright v. Wyandotte Sheriff's Department*, 963 F.Supp. 1029, 1034 (D.Kan. 1997) (finding the plaintiff improperly sued the county sheriff's department, which is "merely an agency of the county … and is not itself capable of being sued"); *Ayesh v. Butler Cnty. Sheriff's Office*, No. 19-CV-1183-EFM-KGG, 2019 WL 6700337, at *3 (D. Kan. 2019) (noting that the sheriff's office must be dismissed because it is "not amenable to suit," but permitting the plaintiff to amend the complaint to properly name the county).

Lacking the capacity to sue or be sued, the Jackson County Sheriff's Office must be dismissed.

II.   **The Tribe is not entitled to declaratory or injunctive relief.**

    A.   **Standards**

"[T]he pleading standard Rule 8 announces does not require detailed factual allegations,

but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555)). In addition to failing to state a claim under Rule 12(b)(6), the Complaint "is inadequate both for failure to provide fair notice and because, even if we take all well-pleaded facts in the complaint as true, the plaintiffs have failed to present a plausible right to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008). A basic level of specificity is necessary to "permit[ ] the defendant[s] sufficient notice to begin preparing [their] defense and the court sufficient clarity to adjudicate the merits." *Id*. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Sheriff Morse is the only proper defendant. The Complaint does not plausibly allege that Sheriff Morse committed any unlawful act warranting declaratory judgment or that Sheriff Morse is likely to commit an unlawful act in the future warranting a permanent injunction.

> A party requesting a permanent injunction bears the burden of showing: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003).

"[W]hile a plaintiff who has been constitutionally injured can bring a § 1983 action to

recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). *See also Barney v. Pulsipher*, 143 F.3d 1299, 1306 n.3 (10th Cir. 1998) (a plaintiff cannot maintain a declaratory judgment action unless he or she can establish a good chance of being likewise injured in the future). Plaintiff does not allege facts which support a claim for declaratory or injunctive relief.

> **B.     The Tribe's vague notion of "civil jurisdiction" and claims of jurisdictional limitations within the boundaries of its reservation do not warrant declaratory or injunctive relief.**

Plaintiff claims this action arises from "the Defendants' unlawful exercise of civil jurisdiction within the reservation." *Doc. 1*, ¶ 1. As more fully discussed below, Plaintiff is incorrect in its assertion that Sheriff Morse has exercised unlawful civil jurisdiction within the reservation.

Count I seeks a declaratory judgment that the Defendants exceeded their authority under the Kansas Act when they interfered with the Nation's exercise of its civil-regulatory jurisdiction over Snak Atak.

Count II seeks a declaratory judgment that the Defendants have wrongfully exercised civil jurisdiction by issuing parking violations and serving process within the Reservation.

Count III seeks a permanent injunction relief prohibiting Sheriff Morse "from interfering in the Nation's lawful exercise of its civil-regulatory jurisdiction within the Reservation and prohibiting the Defendants from exercising civil jurisdiction within the Reservation."

The Complaint speaks to the alleged "exercise of civil jurisdiction" by Sheriff Morse "within the reservation." *Doc. 1*, ¶¶ 1 ("exercise of civil jurisdiction within the reservation", 67 ("civil jurisdiction within the Nation's Indian country" in connection with parking citations issued in 2021, 68 ('believes he has civil jurisdiction within the Reservation"), 72 ("bound by Reservation boundaries with respect to civil jurisdiction"), 79 ("exercised civil jurisdiction by issuing parking violations and serving process within the Reservation", 80 (seeking declaratory judgment that Sheriff Morse "lack[s] civil jurisdiction within the Reservation"), and 85 (seeking to enjoin Sheriff

Morse "from exercising civil jurisdiction within the Reservation").

The Complaint alleges that, on May 28, 2024, Tribal officials went to Snak Atak accompanied by Tribal police officers to serve a "Cease and Desist Order, eject the employees, and chain the doors to prevent Snak Atak from continuing to operate … ." *Doc. 1, ¶ 53.* Three deputies were dispatched to a call from the Snak Atak owner. Tribal Chief of Police Clark called Sheriff More via telephone and learned the store employees had reported to the Sheriff's Office that Nation officials were harassing them. *Id.*, ¶¶ 52-53, 55. Sheriff Morse told Chief Clark that if the Snak Atak employees asked the Nation's officials to leave, they should "because theoretically they could be subject to arrest." *Id.* ¶ 57. Sheriff Morse denies telling Chief Clark "employees asked the Nation's officials to leave, and they did not leave, the Sheriff's Office would arrest the Nation's officials for criminal trespass" as alleged in ¶ 56. That denial, however, is immaterial to defendant's motion to dismiss as it is not alleged that (1) any store employee/owner asked Nation officials to leave and (2) that any Nation official was arrested.

The Complaint further alleges that:

- Unspecified deputies cited or threatened to cite employees at a hemp production facility on the Reservation for parking violations. *Doc. 1*, ¶¶ 65-66.
- "Defendants Defendants have served process on the Reservation … ." *Id.*

The Complaint does not plausibly allege a constitutional violation by Sheriff Morse.

First, the Complaint concedes, *doc. 1, ¶ 9*, the Kansas Act confers jurisdiction to Sheriff Morse, as a Kansas law enforcement official, "conferred jurisdiction over offenses committed by or against Indians on Indian reservations … within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State" of Kansas. 18 U.S.C. § 3243. As the duly elected and acting Sheriff for Jackson County, Sheriff Morse is a Kansas constitutional officer who is statutorily charged with preserving the peace, service of process in civil and criminal cases, and "apprehending or securing" those committing a felony or "breach of

the peace." *See* Kan. Const. art. IX, § 2 (creating the office of Sheriff as a constitutional officer); *see also* K.S.A. 19-813 (stating the duties of the sheriff and the sheriff's undersheriffs and deputies).[1] Sheriff Morse's obligation and authority does not end at the boundaries of the Prairie Band of Potawatomi Nation Reservation.

In short:

1. The Complaint does not allege any violation of law or the constitution by Sheriff Morse regarding the Nation's exercise of its civil-regulatory jurisdiction with respect to the Snak Atak,
2. The issuance of parking violations and serving process on the Reservation by Sheriff Morse or his deputies is not wrongful, and
3. The Tribe is not entitled a declaratory or injunctive relief.

Hence, the Complaint does not plausibly allege that Sheriff Morse "interfered" with "the Nation's exercise of its civil-regulatory jurisdiction within the Reservation" or that he "wrongfully exercised civil jurisdiction by issuing parking violations and serving process within the Reservation.

### C. The Prairie Band Potawatomie Reservation is not excluded from the territorial boundaries of the State of Kansas.

"To begin with, the Constitution allows a State to exercise jurisdiction in Indian country. Indian country is part of the State, not separate from the State." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636 (2022). Certainly, in Kansas, Indian reservations are not separate territories. *Kaul v. State Dep't of Revenue*, 266 Kan. 464, 467, 970 P.2d 60 (1998). The 1861 Act for Admission of Kansas into the Union provides:

> [N]othing contained in the said constitution respecting the boundary of said State

---

[1] The statute provides:
It shall be the duty of the sheriff and undersheriffs and deputies to keep and preserve the peace in their respective counties, and to quiet and suppress all affrays, riots and unlawful assemblies and insurrections, for which purpose, and for the service of process in civil or criminal cases, and in apprehending or securing any person for felony or breach of the peace, they, and every coroner, may call to their aid such person or persons of their county as they may deem necessary.

K.S.A. 19-813.

> shall be construed ... to include any territory which, *by treaty with such Indian tribe*, is not, without the consent of said tribe, to be included within the territorial limits or jurisdiction of any State or Territory; but all such territory shall be excepted out of the boundaries, and constitute no part of the State of Kansas.

12 Stat. 127 (emphasis added). For reservation land to excluded from the jurisdiction of the State of Kansas, the treaty with the Tribe must exclude the reservation from the state boundary or must expressly require consent of the Tribe to be included within the boundary of the State or territory. *Sac & Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 576–77 (10th Cir. 2000). This binding Tenth Circuit precedent held the boundaries of the State of Kansas excludes only "only those lands which Indian tribes reserved unto themselves 'by treaty' with the United States."

> To our knowledge, the only federal decision construing the applicable provision of the 1861 Act is *United States v. Ward*, 28 F. Cas. 397 (C.C.D.Kan.1863) (No. 16,639). Ward involved the question of the United States' criminal jurisdiction over the murder trial of a non-Indian defendant whose victim was also non-Indian. The murder occurred on lands of the Kansas Tribe of Indians within the external boundaries of the State of Kansas. Holding the State of Kansas, not the United States, had jurisdiction over the matter, Supreme Court Justice Miller, riding circuit, reasoned that under the Act, all territory not previously exempted from the boundaries of the State of Kansas by treaty between the United States and an Indian tribe "was included within the state, within its jurisdiction and within its territory; and this irrevocably, unqualifiedly, and exclusively." *Id*. at 399.

213 F.3d at 576–77.

> We agree with Justice Miller's able construction of the 1861 Act for it is consistent with the Act's plain language. The Act for Admission excludes from the boundaries of the State of Kansas only those lands which Indian tribes reserved unto themselves "by treaty" with the United States. The Tribes fail to identify any language in any of the treaties provided us which we might construe as excluding their lands from the boundaries of the State.

*Id.* at 577.

The treaties between the United States and the Prairie Band of Potawatomie do not exclude any Indian lands from Kansas' boundaries. *See Treaty with the Potawatomi Nation*, 1846., 9 Stat. 853 (Attachment 1); *Treaty with the Potawatomi*, 1861, 12 Stat. 1191 (Attachment 2); and Treaty with the Potawatomi, 1867, 15 Stat. 531 (Attachment 3).

The rights of Indian Tribes "to make their own laws and be governed by them does not exclude all state regulatory authority on the reservation. State sovereignty does not end at a reservation's border." *Nevada v. Hicks*, 533 U.S. 353, 361–62 (2001). While Indian Tribes are oft referred to as sovereign entities, it does not follow that State law have no force within the boundaries of a Tribe's reservation. *Id*. Indeed, the general rule is that ordinarily, an Indian reservation is considered part of the territory of the State. *Id.* (citations omitted).

> That is not to say that States may exert the same degree of regulatory authority within a reservation as they do without. To the contrary, the principle that Indians have the right to make their own laws and be governed by them requires "an accommodation between the interests of the Tribes and the Federal Government, on the one hand, and those of the State, on the other." *Washington v. Confederated Tribes of Colville Reservation*, 447 U.S. 134, 156 (1980); *see also id*., at 181 (opinion of REHNQUIST, J.). "When on-reservation conduct involving only Indians is at issue, state law is generally inapplicable, for the State's regulatory interest is likely to be minimal and the federal interest in encouraging tribal self-government is at its strongest." [*White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144 (1980). When, however, state interests outside the reservation are implicated, States may regulate the activities even of tribe members on tribal land ….

*Nevada v. Hicks*, 533 U.S. at 362. The corollary to the State's interest is the "right to enter a reservation (including Indian-fee lands) for enforcement purposes." *Id*., at 363. The service of process and execution of warrants on reservations do not interfere with Tribal sovereignty nor does it impair the Tribe's self-government. *Id.*, at 364.

"Indian Country" is defined in 28 U.S.C. § 1151:

> Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

28 U.S.C. § 1151. "While § 1151 is concerned, on its face, only with criminal jurisdiction, the

Court has recognized that it generally applies as well to questions of civil jurisdiction." *DeCoteau v. Dist. Cnty. Ct. for Tenth Jud. Dist.*, 420 U.S. 425, 428 (1975).

There are broad areas over which the Tribe cannot have exclusive jurisdiction regardless of territorial jurisdiction. For example, tribes do not have criminal jurisdiction over non-Indians unless specifically authorized to do so by Congress. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 195 (1978). Likewise, tribes do not have authority to regulate activities of nonmembers which do not affect tribal welfare and self-government unless the nonmembers have entered into consensual relations with the Tribe, *see Montana v. United States*, 450 U.S. 544, 563–67 493 (1981). Indian tribal courts do not have criminal jurisdiction to try and to punish non-Indians

> [T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe. To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.

*Montana v. United States*, 450 U.S. 544, 565 (1981).

> A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Id.* at 566.

Again, a reservation's status as "Indian country" does not mean state officials lack jurisdiction on the reservation:

> To begin with, the Constitution allows a State to exercise jurisdiction in Indian country. Indian country is part of the State, not separate from the State. To be sure, under this Court's precedents, federal law may preempt that state jurisdiction in certain circumstances. But otherwise, as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country. See U.S. Const., Amdt. 10. As this Court has phrased it, a State is generally "entitled to the sovereignty and jurisdiction over all the territory within her limits." *Lessee of Pollard v. Hagan*, 3 How. 212, 228, 11 L.Ed. 565 (1845).

*Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636 (2022). Thus, State officials, including Sheriff Morse, have jurisdiction throughout Jackson County including the Tribe's Reservation. This includes the power over persons and property as necessary to preserve the peace. *Id.,* at 637. The United State Supreme "Court's more recent cases have recognized the rights of States, absent a congressional prohibition, to exercise criminal (and, implicitly, civil) jurisdiction over non-Indians located on reservation lands." *County of Yakima v. Confederated Tribes and Bands of Yakima Nation*, 502 U.S. 251, 257–258 (1992). As already noted, "State sovereignty does not end at a reservation's border." *Nevada v. Hicks*, 533 U.S. at 361. Unless preempted, States have civil and criminal jurisdiction in Indian country. *Castro-Huerta*, 597 U.S. at 638.

The Complaint does not allege, nor does the law provide, that the Congress has preempted jurisdiction for State authorities to preserve the peace, enforce criminal statutes, or serve civil or criminal process, writs or warrants in Indian country or on reservations in Kansas. Hence, the Complaint does not plausibly allege that Sheriff Morse "interfered" with "the Nation's exercise of its civil-regulatory jurisdiction within the Reservation" or that he "wrongfully exercised civil jurisdiction by issuing parking violations and serving process within the Reservation.

**D.    Sheriff Morse did not wrongfully interfere with the Nation's exercise of civil-regulatory jurisdiction on the Reservation.**

As noted above, the Complaint concedes the Kansas Act confers criminal jurisdiction, *inter alia* upon Sheriff Morse. *Doc. 1,* ¶ 9. The Complaint alleges the Snak Atak employees falsely reported to the Sheriff's Office that Nation officials were harassing them. *Id.*, ¶ 55. It also alleges that *if* Snak Atak employees asked Nation officials to leave and the Nation officials refused, they could theoretically be subject to arrest. *Id.*, ¶¶ 56-57. First, in such an instance *if* the Nation officials lack a privilege to remain on the premises *and* remained after being ordered to leave by the premises owner or authorized person—such would constitute criminal trespass. *See* K.S.A.

21-5808(a)(1).²

The Complaint does not allege:

1. that any Nation official was ordered to leave by the premises owner or authorized person,
2. that any Nation official remained on the premises ordered to leave, and/or
3. that any Nation official was arrested by Sheriff Morse or at his direction.

Hence, the Complaint does not plausibly allege that Sheriff Morse "interfered" with "the Nation's exercise of its civil-regulatory jurisdiction within the Reservation" let alone that Sheriff Morse's words over the telephone constituted a "wrongful" interference.

Congress expressly conferred criminal jurisdiction on reservations to Kansas law enforcement officials. 18 U.S.C. § 3243. Moreover, Congress has not stripped Kansas officials of the authority or jurisdiction to preserve preserving the peace, enforce traffic and vehicle laws, or serve of process in Indian country or on reservations. *Nevada v. Hicks*, 533 U.S. at 365; *Castro-Huerta*, 597 U.S. at 637-38. Thus, the Complaint does not state a claim upon which declaratory or injunctive relief may be granted under Counts I, II, and/or III.

### E.  Citations for parking violations fall within the criminal jurisdiction of the State of Kansas.

Traffic offenses and infractions fall with criminal jurisdiction when applied to Indians, Indian Country and Indian Reservations. *See Hackford v. Utah*, 827 Fed. Appx. 808, 810 (10th Cir. 2020). Thus, the issuance of citations (or threats to issue citations) for parking violations falls with the criminal jurisdiction of the State of Kansas. *See* K.S.A. 8-1571.³  Plaintiff's claim that

---

² The statute provides:
**Criminal trespass**. (a) Criminal trespass is entering or remaining upon or in any:
(1) Land, nonnavigable body of water, structure, vehicle, aircraft or watercraft by a person who knows such person is not authorized or privileged to do so, and:
 (A) Such person enters or remains therein in defiance of an order not to enter or to leave such premises or property personally communicated to such person by the owner thereof or other authorized person;

K.S.A. 21-5808.

³ This statute provides:
**Stopping, standing or parking prohibited in specified places**. (a) Except when

Sheriff Morse lacks jurisdiction to issue citations for parking violations within the Reservation is without basis. Accordingly, Count II of the Complaint fails to state a claim for declaratory relief on this issue and injunctive relief under Count III is not warranted.

### F. Sheriff Morse has the authority and jurisdiction to serve process, and he is <u>required</u> to serve process directed to him.

The Kansas statute for service of process requires that the sheriff serve any process directed to him or her:

---

<p style="padding-left: 2em;">necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or official traffic-control device, no person shall:<br>
(1) Stop, stand or park a vehicle:</p>

<p style="padding-left: 4em;">(i) On the roadway side of any vehicle stopped or parked at the edge or curb of a street;<br>
(ii) On a sidewalk;<br>
(iii) Within an intersection;<br>
(iv) On a crosswalk;<br>
(v) Between a safety zone and the adjacent curb or within thirty (30) feet of points on the curb immediately opposite the ends of a safety zone, unless a different length is indicated by signs or markings;<br>
(vi) Alongside or opposite any street excavation or obstruction when stopping, standing or parking would obstruct traffic;<br>
(vii) Upon any bridge or other elevated structure upon a highway or within a highway tunnel;<br>
(viii) On any railroad tracks;<br>
(ix) On any controlled-access highway;<br>
(x) In the area between roadways of a divided highway, including crossovers; or<br>
(xi) At any place where official signs prohibit stopping.</p>

<p style="padding-left: 2em;">(2) Stand or park a vehicle, whether occupied or not, except momentarily to pick up or discharge a passenger or passengers:</p>

<p style="padding-left: 4em;">(i) In front of a public or private driveway;<br>
(ii) Within fifteen (15) feet of a fire hydrant;<br>
(iii) Within twenty (20) feet of a crosswalk at an intersection;<br>
(iv) Within thirty (30) feet upon the approach to any flashing signal, stop sign, yield sign or traffic-control signal located at the side of a roadway;<br>
(v) Within twenty (20) feet of the driveway entrance to any fire station and on the side of a street opposite the entrance to any fire station within seventy-five (75) feet of said entrance, when properly signposted; or<br>
(vi) At any place where official signs prohibit standing.</p>

<p style="padding-left: 2em;">(3) Park a vehicle, whether occupied or not, except temporarily for the purpose of and while actually engaged in loading or unloading property or passengers:</p>

<p style="padding-left: 4em;">(i) Within fifty (50) feet of the nearest rail of a railroad crossing; or<br>
(ii) At any place where official signs prohibit parking.</p>

<p style="padding-left: 2em;">(b) No person shall move a vehicle not lawfully under his or her control into any such prohibited area or away from a curb such a distance as is unlawful.</p>

K.S.A. 8-1572.

{T0484010}     - 12 -

> The sheriff of the county in which the action is filed must serve any process by any method authorized by this section, or as otherwise provided by law, unless a party, either personally or through an attorney, notifies the clerk that the party elects to undertake responsibility for service

K.S.A. 60-303(b). The Jackson County Sheriff is <u>required</u> to serve process or summonses directed to the Jackson County Sheriff, otherwise, the service is defective and subject to motions under Rule 12(2), (4), and/or (5) (personal jurisdiction, insufficient process, and/or insufficient service of process). *See Finn v. Sisters of St. Joseph of Wichita*, 195 Kan. 410, 407 P.2d 535 (1965) (where summons is issued in suit commenced in one county, and directed to sheriff of such county but sent to sheriff of another county, it cannot be served by deputy sheriff of such other county). Where a summons addressed to the sheriff of one county is served by the sheriff of another county, the service is defective and subject to timely objection." *State v. Marshall & Brown-Sidorowicz, P.A.*, 2 Kan. App. 2d 182, 193, 577 P.2d 803 (1978). "Process" under K.S.A. 60-303 includes " writs of execution, orders of attachment, replevin orders, orders for delivery, writs of restitution and writs of assistance." K.S.A. 60-303(d)(3).

Fundamentally, process issued by a court of competent jurisdiction is valid whether served on or off a reservation. The Kansas Act neither confers nor restricts the jurisdiction for a sheriff with respect to service of process. It cannot be said that service of process on a reservation by someone other than a tribal official is invalid. Indeed, Rule 4 permits <u>any</u> person over age 18 to serve process. Fed.R.Civ.P. 4(c)(2) ("Any person who is at least 18 years old and not a party may serve a summons and complaint."). As noted above, Kansas law <u>requires</u> a county sheriff to serve any process directed to him or her without regard to what county (or state or reservation) where the recipient might be. State and federal courts have considerable interest in the service of process—whether civil or criminal. *Nevada v. Hicks*, 533 U.S. at 364. Service of process by state officials (or other in accordance with state statutes on the service of process) does not impair a tribe's self-government. *Id*. Plaintiff's claim that Sheriff Morse lacks jurisdiction serve process

within the Reservation is without basis. Accordingly, Count II of the Complaint fails to state a claim for declaratory relief on this issue and injunctive relief under Count III is not warranted.

## Conclusion

For the foregoing reasons, the sheriff's office must be dismissed because it is not an entity with the capacity to sue or be sued and is, thus, not amenable to suit; and the claims against Sheriff Morse should be dismissed for failure to state a claim upon which relief may be granted.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 SW 5th Street | Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cbranson@fpsslaw.com
tokeefe@fpsslaw.com

**s/David R. Cooper**

| | |
|---|---|
| David R. Cooper | #16690 |
| Charles E. Branson | #17376 |
| Timothy A. O'Keefe | #18525 |

**Attorneys for Defendants**

## Certificate of Service

On September 3, 2024, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record:

Jere D. Sellers, KS #16406 | Rachel E. North, D.Kan. #79121
STINSON LLP | 1201 Walnut Street, Suite 2900 | Kansas City, Missouri 64106
Tel: (816) 691-3190 | Fax: (816) 412-8195
jere.sellers@stinson.com | rachel.north@stinson.com

Carol E. Heckman, New York State Bar #1321561, *Pro Hac Vice*
LIPPES MATHIAS | 50 Fountain Place, Suite 1700 | Buffalo, New York 14202
Tel: (716) 853-5100 | Fax: (716) 853-5199
checkman@lippes.com

Klint A. Cowan, Oklahoma State Bar #20187, *Pro Hac Vice*
LIPPES MATHIAS | 512 NW 12th Street | Oklahoma City, Oklahoma 73103
kcowan@lippes.com
**Attorneys for Plaintiff**

**s/David R. Cooper**