IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PRAIRIE BAND POTAWATOMI NATION,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| v. ) | **No. 24-4066-KHV** |
| ) | |
| **JACKSON COUNTY SHERIFF TIM MORSE,** ) | |
| **in his official capacity,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **JACKSON COUNTY SHERIFF'S OFFICE,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

On July 19, 2024, Prairie Band Potawatomi Nation filed a complaint against Tim Morse, Sheriff of Jackson County, Kansas, in his official capacity and the Jackson County Sheriff's Office. Plaintiff alleges that defendants unlawfully exercised civil jurisdiction within the Nation's Reservation and seeks a declaratory judgment that within the Reservation, defendants lack (1) civil-regulatory jurisdiction and (2) authority to interfere with the Nation's lawful exercise of civil-regulatory jurisdiction. Plaintiff also seeks permanent injunctive relief prohibiting defendants from (1) interfering with the Nation's lawful exercise of its civil-regulatory jurisdiction and (2) exercising unlawful civil-regulatory jurisdiction within the Reservation. This matter is before the Court on the Motion To Dismiss (Doc. #10) which Sheriff Morse filed September 3, 2024. For reasons stated below, the Court sustains in part defendant's motion to dismiss and orders plaintiff to show cause in writing why the Court should not dismiss plaintiff's claim for injunctive relief for lack of standing under Article III, U.S. Const., art. III, and the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

**Legal Standards**

Defendant seeks to dismiss plaintiff's complaint under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

### I.     Rule 12(b)(2) – Lack Of Personal Jurisdiction

When defendant files a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), plaintiff must establish personal jurisdiction over defendant. Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch, 750 F.3d 1178, 1179–80 (10th Cir. 2014). At these preliminary stages of litigation, plaintiff's burden to establish personal jurisdiction is light. AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d 1054, 1056 (10th Cir. 2008). To defeat the motion, plaintiff need only make a prima facie showing of personal jurisdiction. Id. Plaintiff can do so by showing facts, via affidavit or other written materials, that if true would support jurisdiction over defendant. Id. When evaluating the prima facie case, the Court must resolve all factual disputes in favor of plaintiff. Id.

### II.    Rule 12(b)(6) – Failure To State A Claim

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019). Plaintiff bears the burden of

framing its claims with enough factual matter to suggest that it is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Plaintiff's complaint alleges as follows:

The Prairie Band Potawatomi Nation—a federally recognized Indian tribe—exercises governmental authority over a reservation in northeastern Kansas. Under the Potawatomi Law and Order Code, the Nation exercises civil-regulatory jurisdiction over all businesses within the Reservation. Title 10 of the Code establishes the Prairie Band Potawatomi Tax Commission, which imposes a tobacco excise tax, gross receipts sales tax and motor fuels tax. Title 13 of the Code governs business licensing within the Reservation and authorizes sanctions for non-compliance. One possible sanction is a cease and desist order requiring the business to

immediately cease doing business where the non-compliance poses an immediate threat to the peace, safety, morals or general welfare of residents of the Reservation.

In January of 2024, Wamego Store LLC, doing business as Snak Atak Travel Plaza—a non-Indian owned company located on fee land[1] within the Reservation—applied to the Tax Commission for four licenses: a business license, a tobacco retailer license, a liquor retailer license and a tribal motor fuels retailer license. In those applications, Snak Atak consensually submitted to the jurisdiction of the Nation and agreed to pay tobacco and sales taxes to the Tax Commission, to provide certain sales and inventory reports to the Tax Commission and to be bound by all laws of the Nation. In addition, in its Tobacco Retailer License application, Snak Atak agreed to pay the Tax Commission for Tribal Tax Stamps affixed on individual packs of cigarettes and to take all reasonable precautions to ensure the security and integrity of the Tribal Stamp.

Apart from Snak Atak's consent to the Nation's regulatory and taxation authority, the Nation has inherent civil-regulatory jurisdiction over sales of tobacco, alcohol, motor fuel and other goods within the Reservation. Congress has delegated authority to the Nation to regulate alcohol sales within the Reservation, and the State of Kansas has agreed that the Nation will regulate all sales of cigarettes within the Reservation. Snak Atak's alcohol and tobacco sales have a direct effect on the Nation's health and welfare.

In January and February of 2024, the Tax Commission issued to Snak Atak the four business licenses which it had requested. On February 6, 2024, the Tax Commission reminded Amit Mishra—a member of Snak Atak—that by accepting the licenses, Snak Atak agreed to submit to the Nation's jurisdiction and laws.

---

[1] "[N]on-Indian fee lands" means land that has been acquired in fee simple by non-Indian owners. Strate v. A-1 Contractors, 520 U.S. 438, 446 (1997).

In March of 2024, Snak Atak opened for business. To date, Snak Atak has not filed required reports with the Tax Commission, affixed Nation tobacco stamps to individual packs of cigarettes or paid taxes to the Commission.

On May 28, 2024, Tax Commission officials visited Snak Atak to inspect its records and inventory. During the visit, Snak Atak refused to allow Tax Commission officials to inspect its records or inventory. The officials left Snak Atak and obtained a cease and desist order from the Tax Commission, which directed Snak Atak to cease doing business immediately and cited Snak Atak for multiple violations of the Code. These included (1) failing to allow the Tax Commission and Tribal Police access to the premises to conduct inspections, (2) failing to conspicuously post licenses issued by the Nation, (3) failing to provide and remit sales tax to the Nation, maintain sales tax records and file applicable reports with the Tax Commission, (4) failing to affix tribal tobacco stamps to tobacco products sold to the public, maintain records, file applicable reports with the Tax Commission and remit tobacco excise tax to the Tax Commission and (5) continuously failing to comply with the Nation's business licensing ordinance while conducting business in violation of the applicable conditions of licenses issued by the Nation. The cease and desist order found that Snak Atak's violations posed a direct threat to the peace, safety, morals or general welfare of the residents of the Reservation.

Later in the day on May 28, 2024, Tax Commission officials—accompanied by Tribal Police Officers—returned to Snak Atak to serve the cease and desist order, eject its employees and chain the doors to prevent Snak Atak from continuing to operate in violation of Nation law and its agreements with the Tax Commission. While Tax Commission officials were attempting to serve the cease and desist order and close the store, at least three deputies from the Jackson County Sheriff's Office arrived at Snak Atak. When the deputies arrived, the Nation's Police Chief, Terry

Clark, called defendant Tim Morse, Jackson County Sheriff, and explained that (1) the Nation officials were present to enforce the Nation's civil laws on the store, (2) the store was not in compliance with those laws and (3) Snak Atak had consented to the application of the Nation's laws as part of its license agreements to do business on the Reservation. In response, Sheriff Morse told Chief Clark that Snak Atak employees had reported to his office that Nation officials were harassing them.[2] Sheriff Morse also told Chief Clark that if Snak Atak employees asked the Nation officials to leave and they did not leave, the Sheriff's Office would arrest the Nation officials for criminal trespass.[3] Based on the reports of harassment, Sheriff Morse was concerned that the Nation officials' actions were illegal.

During the visit, the Tax Commission Director heard a Sheriff's Office deputy say that he would arrest the Nation's officials if they attempted to chain Snak Atak's doors. Rather than risk arrest for criminal trespass, the Tribal Police and Tax Commission officials served the cease and desist order and left. The deputies remained on site until they left. Because of Sheriff Morse's actions, the Nation officials were unable to seize contraband and enforce its regulatory system.

Defendants' interference with the Nation's laws has not been limited to Snak Atak. Sheriff Morse believes that he has civil jurisdiction within the Reservation. For example, in the fall of 2021, Sheriff Morse cited or threatened to cite tribal employees for improper parking at a hemp production facility within the Reservation. Also in the fall of 2021, a Sheriff's deputy threatened to tow a tribal member's vehicle parked on the edge of a road on the Reservation. In response to

---

[2] This report was false—the Nation officials were not actually harassing the Snak Atak employees.

[3] Sheriff Morse later confirmed this statement in a communication to the County Counselor, stating "I told the Chief that if they are asked to leave that they should leave because theoretically they could be subject to arrest. Verified Complaint (Doc. #1) filed July 19, 2024, ¶ 57.

those incidents, on September 1, 2021, Sheriff Morse explicitly stated in an email to Chief Clark that "unless the road is completely shut down, all Kansas statutes still apply." Verified Complaint (Doc. #1) filed July 19, 2024, ¶ 68. Defendants have also served process on the Reservation. In one instance, a Sheriff's deputy attempting to serve process on a tribal member within the Reservation shot and killed the tribal member's dog. Sheriff Morse's 2023 Annual Report states that he is not bound by reservation boundaries. For the past several years, Chief Clark has attempted to work with Sheriff Morse and reach a mutual understanding of their respective authority on the Reservation, but he has rejected those attempts.

In June of 2024, the Tax Commission filed suit against Snak Atak in tribal court seeking exclusion from the Reservation, an injunction prohibiting Snak Atak from conducting business on the Reservation and interfering with the Tax Commission staff performing their official duties and civil penalties for violations of the Nation's laws.[4]

On July 19, 2024, plaintiff filed suit seeking a declaratory judgment against Sheriff Morse and the Jackson County Sheriff's Department. Specifically, plaintiff seeks a declaratory judgment that within the Reservation, defendants lack (1) civil-regulatory jurisdiction and (2) authority to interfere with the Nation's lawful exercise of civil-regulatory jurisdiction. Plaintiff also seeks permanent injunctive relief prohibiting defendants, within the Reservation, from (1) exercising unlawful civil-regulatory jurisdiction and (2) interfering with the Nation's lawful exercise of civil regulatory jurisdiction. On September 3, 2024, Sheriff Morse filed his Motion To Dismiss (Doc. #10).

---

[4] The status of this suit is unknown.

**Analysis**

**I.      Whether The Court Should Dismiss The Jackson County Sheriff's Office**

Defendant argues that the Court should dismiss plaintiff's complaint against the Jackson County Sheriff's Office because it is not a proper party to this action. Specifically, defendant argues that the Jackson County Sheriff's Office is not a proper party because under Kansas law, absent a specific statute, subordinate government agencies—such as a Sheriff's Office—lack the capacity to sue or be sued.

Although defendant argues that the Court lacks personal jurisdiction over the Jackson County Sheriff's Office, the relevant issue is whether the Jackson County Sheriff's Office has the capacity to be sued. Either way, plaintiff agrees that the Sheriff's Office is not a proper party to this action. Accordingly, the Court sustains defendant's motion to dismiss the Jackson County Sheriff's Office. See Fed. R. Civ. P. 17(b)(3) (the capacity to sue or be sued determined by law of state where court is located); Est. of Holmes by & through Couser v. Somers, 387 F. Supp. 3d 1233, 1248 (D. Kan. 2019), aff'd sub nom. Couser v. Gay, 959 F.3d 1018 (10th Cir. 2020) (Kansas law does not authorize suit against sheriff's offices).

**II.     Failure To State A Claim**

Under Rule 12(b)(6), defendant asks the Court to dismiss plaintiff's complaint in its entirety. Specifically, defendant argues that plaintiff is not entitled to declaratory or injunctive relief because the complaint does not allege that (1) Sheriff Morse violated or is likely to violate any law or constitution regarding the Nation's exercise of civil-regulatory jurisdiction with respect to Snak Atak or (2) Sheriff Morse and his deputies wrongfully issued parking citations and served process on the Reservation.

A.  Whether Plaintiff Has Stated A Claim For Declaratory Judgment

Plaintiff brings suit under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., seeking a declaration that (1) on May 28, 2024, defendants lacked authority to interfere with the Nation's exercise of civil regulatory jurisdiction over Snak Atak; and (2) in general, defendants lack civil jurisdiction within the Reservation, including jurisdiction to issue parking citations and serve process.

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Plaintiff must present the Court with a suit based on an "actual controversy," meaning that the Court must determine "whether the facts alleged, under all the circumstances, show that a substantial controversy exists, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1244 (10th Cir. 2008) (quoting Md. Cas. Co. v. Pac. Coal & Oil, 312 U.S. 270, 273 (1941)).

In determining whether to grant declaratory relief, the Court considers the following factors: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fending" or "to provide an arena for a race to res judicata;" (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether an alternative remedy would be better or more effective. Bell Helicopter Textron, Inc. v. Heliqwest Int'l., Ltd., 385 F.3d 1291, 1299 (10th Cir. 2004).

1.  Whether Plaintiff Has Plausibly Alleged That It Is Entitled To A Declaratory Judgment Based On The Events Of May 28, 2024

Plaintiff seeks a declaratory judgment that Sheriff Morse's actions were unlawful because he lacked authority to interfere with the Nation's exercise of its civil-regulatory jurisdiction with respect to Snak Atak on May 28, 2024. Defendant argues that the Court should dismiss plaintiff's claim because Sheriff Morse has criminal jurisdiction on the Reservation, which empowers him to preserve the peace and respond to alleged criminal activity, and therefore his actions with respect to Snak Atak were lawful.

Indian tribes are domestic dependent nations that exercise "inherent sovereign authority." Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 788 (2014). These attributes of inherent sovereignty include the power to tax and regulate economic activity within its reservation. See Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 137 (1982) (power to tax is essential attribute of Indian sovereignty); N.L.R.B. v. Pueblo of San Juan, 276 F.3d 1186, 1192 (10th Cir. 2002) (tribes retain sovereign authority to regulate economic activity within their territory). State sovereignty does not end at the Reservation's border, however, and Indians' right to make and be governed by their own laws does not exclude all state regulatory authority on the Reservation. Nevada v. Hicks, 533 U.S. 353, 361 (2001). For instance, Congress has delegated to the states criminal jurisdiction within Indian reservations, and as sheriff, Morse has a duty to preserve the peace throughout all of Jackson County, including the Reservation. 18 U.S.C. § 3243; K.S.A. § 19-813.[5]

Plaintiff has authority to tax and regulate Snak Atak's economic activity—both through inherent sovereign authority and Snak Atak's consent. Michigan v. Bay Mills Indian Cmty., 572

---

[5] Congress has not, however, conferred civil-regulatory jurisdiction within Indian reservations to the states. Burdett v. Harrah's Kansas Casino Corp., 260 F. Supp. 2d 1109, 1117 (D. Kan. 2003) (Section 3243 not applicable to civil proceeding). Plaintiff does not claim that Sheriff Morse was attempting to exercise civil-regulatory jurisdiction on behalf of the State of Kansas.

U.S. 782, 788 (2014); Verified Complaint (Doc. #1) filed July 19, 2024, ¶ 25.  Defendant argues that because Snak Atak employees reported that the Nation officials were harassing them, his actions were justified by his criminal jurisdiction and duty to preserve the peace.  The parties agree that defendant has criminal jurisdiction within the Reservation, which would allow him to respond to a Snak Atak report of harassment and to intervene if a crime was in fact occurring.  Plaintiff, however, has stated a plausible claim that defendant's criminal jurisdiction stopped short of allowing Snak Atak to operate in violation of Nation law, or prohibiting plaintiff from seizing contraband, chaining the door and ejecting Snak Atak employees.[6]

As noted, the Court considers five declaratory judgment factors: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fending" or "to provide an arena for a race to res judicata;" (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether an alternative remedy would be better or more effective.  Bell Helicopter, 385 F.3d at 1299.

The first factor—whether a declaratory action would settle the controversy—weighs in favor of plaintiff.  Plaintiff has plausibly alleged a controversy whether defendant's actions with respect to Snak Atak were wrongful.  The second factor—whether it would serve a useful purpose in clarifying the legal relations at issue—also weighs in favor of plaintiff.  The parties dispute whether Sheriff Morse has authority to interfere with plaintiff's exercise of its civil-regulatory

---

[6] The Nation officials successfully served the cease and desist order, but the complaint plausibly alleges that defendant's actions in preventing the Nation officials from seizing contraband, chaining the door and ejecting the employees infringed on the Nation's exercise of civil-regulatory jurisdiction and authority to regulate economic activity.

jurisdiction through actions such as preventing Nation officials from shutting down a business that is violating Nation law. The third factor—whether the declaratory remedy is being used merely for the purpose of procedural fending or to provide an arena for a race to res judicata—weighs in favor of plaintiff because the Court has no reason to suspect that plaintiff is seeking a declaratory judgment for these purposes. The fourth factor—whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction—weighs in favor of plaintiff because the Court has no reason to expect that this remedy would increase friction or encroach upon state jurisdiction. The fifth factor—whether an alternative remedy would be better or more effective—weighs in favor of plaintiff because there is no indication that an alternative remedy would be better or more effective.

Plaintiff has plausibly alleged that it is entitled to a declaratory judgment that defendant wrongfully interfered with the Nation's exercise of civil-regulatory jurisdiction with respect to Snak Atak. Accordingly, the Court overrules defendant's motion to dismiss plaintiff's claim for a declaratory judgment regarding Snak Atak.

        2.      Whether Plaintiff Has Plausibly Alleged That It Is Entitled To A Declaratory Judgment That Sheriff Morse Lacks Civil Jurisdiction Within The Reservation

Plaintiff alleges that Sheriff Morse exceeded his authority within the Reservation with respect to (1) threatening to remove vehicles and issuing parking citations and (2) serving process. Plaintiff seeks a declaratory judgment that Sheriff Morse lacked civil jurisdiction to do so within the Reservation.

        i.      Threatening To Remove Vehicles And Issuing Parking Citations

Sheriff Morse argues that when applied to Indians or Indian reservations, citations for parking violations fall within the criminal jurisdiction of the State of Kansas, so he did not exceed his authority or infringe on the Nation's civil-regulatory jurisdiction by threatening to remove

vehicles and issuing citations for parking violations on the Reservation.  Plaintiff responds that threatening to remove vehicles and issuing parking tickets are inherently civil, not criminal, functions and are therefore outside the scope of Sheriff Morse's authority on the Reservation.

Defendant cites Hackford v. Utah, 827 Fed. App'x. 808 (10th Cir. 2020), for the proposition that when applied to Indians and Indian reservations, traffic offenses and infractions fall within criminal jurisdiction.  In Hackford, a motorist sought a declaratory judgment that he was immune from state prosecution for speeding due to his Native American ancestry and the fact that the offense occurred on an Indian reservation.  Id. at 811.  The Tenth Circuit did not state that traffic offenses and infractions are within a state's criminal jurisdiction when applied to Indians or Indian reservations, but instead found that the state had criminal jurisdiction because the incident did not occur on the reservation and the motorist was not an Indian.  Id.  Accordingly, Hackford does not support defendant's claim that threatening to remove vehicles and issuing citations for traffic infractions on the Reservation fell within his criminal jurisdiction.

The complaint plausibly alleges that in the fall of 2021, Sheriff Morse exceeded his jurisdiction on two occasions: (1) citing or threatening to cite tribal employees for improper parking at a hemp production facility within the Reservation and (2) threatening to tow a tribal member's vehicle parked on the edge of a road on the Reservation.

Applying the factors set forth in Bell Helicopter, the first factor—whether a declaratory action would settle the controversy—weighs in favor of plaintiff.  Plaintiff has plausibly alleged that a controversy exists whether defendant's actions in threatening to remove vehicles and issuing parking citations were wrongful.  The second factor—whether it would serve a useful purpose in clarifying the legal relations at issue—weighs in favor of plaintiff.  The parties dispute whether Sheriff Morse has authority to issue parking citations and threaten to remove vehicles within the

Reservation. The third factor—whether the declaratory remedy is being used merely for the purpose of procedural fending or to provide an arena for a race to res judicata—weighs in favor of plaintiff because the Court has no reason to suspect that plaintiff is seeking a declaratory judgment for these purposes. The fourth factor—whether a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction—weighs in favor of plaintiff because the Court has no reason to expect that this remedy would increase friction or encroach upon state jurisdiction. The fifth factor—whether an alternative remedy would be better or more effective—weighs in favor of plaintiff because the record does not suggest that an alternative remedy would be better or more effective.

Accordingly, the Court overrules defendant's motion to dismiss with respect to plaintiff's declaratory judgment claim relating to defendant threatening to remove vehicles and issuing citations for parking violations.

### ii.     Serving Process

Defendant argues that Sheriff Morse has authority to serve process on the Reservation, so plaintiff cannot allege that he exceeded his authority by doing so. Plaintiff responds that serving process is a civil-regulatory function, so Sheriff Morse lacks jurisdiction to serve process on the Reservation.

Defendant argues that Sheriff Morse has authority to serve process anywhere in Jackson County and is in fact required to serve process directed to him. The Supreme Court has indeed held that state officers may execute process on reservations related to off-reservation violations of state laws, as to prevent reservations from becoming "an asylum for fugitives from justice." Nevada v. Hicks, 533 U.S. 353, 364 (2001). With respect to other circumstances—such as process not related to an off-reservation violation of state laws—the law is less clear. At least one state

court has found that a sheriff lacked authority to serve process on an Indian reservation. See Francisco v. State, 113 Ariz. 427, 428, 556 P.2d 1, 2 (1976).  Further, plaintiff has the right to make and be governed by its own laws, and the Nation has its own laws governing service of process.  Hicks, 533 U.S. at 361.

The complaint alleges only one incident in which Sheriff Morse served process on the Reservation.  The complaint does not allege the date of the incident or details such as whether the process was related to an off-reservation violation of state law, whether the person served was an Indian or whether defendant violated the Nation's laws in executing the process.  Therefore, the complaint does not plausibly allege that service of process in that one instance was unlawful.

Accordingly, the Court sustains defendant's motion to dismiss plaintiff's declaratory judgment claim with respect to service of process.

B.   Whether Plaintiff Has Standing To Seek Injunctive Relief

Plaintiff seeks a permanent injunction prohibiting Sheriff Morse from (1) interfering in the Nation's exercise of civil-regulatory jurisdiction within the Reservation and (2) exercising civil jurisdiction within the Reservation.

The Court may sua sponte raise jurisdictional issues where necessary.  Kontrick v. Ryan, 540 U.S. 443, 455 (2004).  Federal courts are not "free-wheeling enforcers of the Constitution and laws."  Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1087 (10th Cir. 2006).  Article III of the U.S. Constitution limits the exercise of federal judicial power to cases and controversies.  U.S. Const., art. III, § 2.  To satisfy Article III's standing requirements, plaintiff must show that (1) it has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent," (2) the injury is fairly traceable to the challenged action of defendant and (3) it is likely, as opposed to merely speculative, that a favorable decision will redress the injury.  New England Health Care

Emps. Pension Fund v. Woodruff, 512 F.3d 1283, 1288 (10th Cir. 2008).

Accordingly, plaintiffs who seek prospective relief—such as an injunctive order to prevent future injury—must show a real and immediate threat of future harm. City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983); Redmond v. Crowther, 882 F.3d 927, 942 (10th Cir. 2018) (plaintiff who seeks injunctive relief based on threat of future harm must show threat is "real and immediate, not conjectural or hypothetical"). Past exposure to wrongful conduct "bears on whether there is a real and immediate threat of repeated injury," but it is not dispositive. Tandy v. City of Wichita, 380 F.3d 1277, 1289 (10th Cir. 2004).

For plaintiff to seek a permanent injunction, it must allege (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest. Prairie Band Potawatomi Nation v. Wagnon, 476 F.3d 818, 822 (10th Cir. 2007).

While plaintiff has alleged past violations by defendant (some of which may involve claims which are beyond the relevant statute of limitations), plaintiff has not alleged that the violations are ongoing or that they pose a real and immediate threat of future injury. The Court therefore questions whether plaintiff has standing under Article III to seek injunctive relief.

**IT IS THEREFORE ORDERED that defendant's Motion To Dismiss (Doc. #10) is SUSTAINED in part and OVERRULED in part. The Court dismisses plaintiff's claims against the Jackson County Sheriff' Office and plaintiff's claim for declaratory judgment with respect to service of process. The Court overrules the remainder of defendant's motion.**

**IT IS FURTHER ORDERED that on or before February 17, 2025, plaintiff show good cause in writing why the Court should not dismiss plaintiff's claim for injunctive relief for**

**lack of standing to seek such relief. Within 14 days, defendant may file a reply to plaintiff's response.**

Dated this 10th day of February, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>KATHRYN H. VRATIL<br>United States District Judge