IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PRAIRIE BAND POTAWATOMI NATION, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 24-4066-KHV |
| | ) | |
| JACKSON COUNTY SHERIFF TIM MORSE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

On July 19, 2024, Prairie Band Potawatomi Nation filed a complaint against Tim Morse, Sheriff of Jackson County, Kansas, in his professional capacity, and the Sheriff's Office of Jackson County, Kansas. Plaintiff alleged that defendants unlawfully exercised civil jurisdiction within the Nation's Reservation and sought a declaratory judgment that within the Reservation, defendants lack (1) civil-regulatory jurisdiction and (2) authority to interfere with the Nation's lawful exercise of its own civil-regulatory jurisdiction. Plaintiff also sought permanent injunctive relief. On September 3, 2024, Sheriff Morse filed a Motion To Dismiss (Doc. #10). On February 10, 2025, the Court (1) sustained his motion in part, dismissing plaintiff's claims against the Jackson Country Sheriff's Office and plaintiff's claims with respect to service of process and (2) ordered plaintiff to show cause in writing why the Court should not dismiss plaintiff's claim for injunctive relief for lack of standing under Article III, U.S. Const., art. III. Memorandum And Order And Order To Show Cause (Doc. #25) at 16–17.

On March 15, 2025, Magistrate Judge Rachel E. Schwartz granted plaintiff leave to amend, and on March 18, 2025, plaintiff filed its amended complaint. See First Amended Complaint (Doc. #33). Plaintiff now seeks a declaratory judgment that within the Nation's reservation, Sheriff

Morse[1] (1) lacks authority to interfere with the Nation's lawful exercise of civil-regulatory jurisdiction and (2) lacks civil-regulatory jurisdiction.  Plaintiff again seeks permanent injunctive relief.  This matter comes before the Court on defendant's Motion To Dismiss Amended Complaint (Doc. #37) filed March 31, 2025.  For reasons stated below, the Court overrules defendant's motion.

## Legal Standards

Defendant seeks to dismiss plaintiff's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### I.    Rule 12(b)(1) – Lack Of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction.  Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999).  Therefore, the law imposes a presumption against jurisdiction. Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).  The Court may exercise jurisdiction only when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must dismiss a claim if it becomes apparent at any stage of the proceedings that it lacks jurisdiction, Scheideman v. Shawnee Cnty. Bd. Of Cnty. Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso, 495 F.2d at 909); Fed. R. Civ. P. 12(h)(3).  Plaintiff bears the burden of showing that jurisdiction is proper, see Scheideman, 895 F. Supp. at 280, and must demonstrate that the case should not be dismissed, see Jensen v. Johnson Cnty. Youth Baseball League, 838 F. Supp. 1437, 1439–40 (D. Kan. 1993).  Conclusory allegations of jurisdiction are not enough.  United States v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir. 1999).

---

[1]    Plaintiff does not include the distinction "in his official capacity" in its amended complaint, so it is not clear whether plaintiff seeks to enjoin him in his personal and/or official capacities.

Article III standing is a threshold question of subject matter jurisdiction, which the Court considers under Rule 12(b)(1). Kerr v. Polis, 20 F.4th 686, 692 (10th Cir. 2021). Rule 12(b)(1) motions generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations. Laufer v. Looper, 22 F.4th 871, 875 (10th Cir. 2022). A facial attack assumes that the allegations in the complaint are true and argues that they fail to establish jurisdiction. Baker v. USD 229 Blue Valley, 979 F.3d 866, 872 (10th Cir. 2020). A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction. Id.

**II.     Rule 12(b)(6) – Failure To State A Claim**

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019). Plaintiff bears the burden of framing its claims with enough factual matter to suggest that it is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendant's liability.

Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Plaintiff's amended complaint alleges as follows:

The Prairie Band Potawatomi Nation—a federally recognized Indian tribe—exercises governmental authority over a reservation in northeastern Kansas. Under the Potawatomi Law and Order Code, the Nation exercises civil-regulatory jurisdiction over all businesses within the Reservation. Title 10 of the Code establishes the Prairie Band Potawatomi Tax Commission, which imposes a tobacco excise tax, gross receipts sales tax and motor fuels tax. Title 13 of the Code governs business licensing within the Reservation and authorizes sanctions for non-compliance. Where the non-compliance poses an immediate threat to the peace, safety, morals or general welfare of residents of the Reservation, one possible sanction may be a cease and desist order requiring the business to immediately cease doing business.

In January of 2024, Wamego Store LLC, doing business as Snak Atak Travel Plaza—a non-Indian owned company located on fee land[2] within the Reservation—applied to the Tax

---

[2] Fee simple ownership is the highest form of property possession. Fee land is land that is under complete control of its owner, which can be an individual or an entity. Benefits of
(continued. . .)

Commission for four licenses: a business license, a tobacco retailer license, a liquor retailer license and a tribal motor fuels retailer license. In those applications, Snak Atak consensually submitted to the jurisdiction of the Nation and agreed to pay tobacco and sales taxes to the Tax Commission, to provide sales and inventory reports to the Tax Commission and to be bound by all laws of the Nation. In addition, in its Tobacco Retailer License application, Snak Atak agreed to pay the Tax Commission for Tribal Tax Stamps affixed on individual packs of cigarettes and to take all reasonable precautions to ensure the security and integrity of the Tribal Stamp.

Apart from Snak Atak's consent to the Nation's regulatory and taxation authority, the Nation has inherent civil-regulatory jurisdiction over sales of tobacco, alcohol, motor fuel and other goods within the Reservation. Congress has delegated authority to the Nation to regulate alcohol sales within the Reservation, and the State of Kansas has agreed that the Nation will regulate all sales of cigarettes within the Reservation. Snak Atak's alcohol and tobacco sales have a direct effect on the Nation's health and welfare.

In January and February of 2024, the Tax Commission issued to Snak Atak the four business licenses which it had requested. On February 6, 2024, the Tax Commission reminded Amit Mishra—a member of Snak Atak—that by accepting the licenses, Snak Atak agreed to submit to the Nation's jurisdiction and laws.

In March of 2024, Snak Atak opened for business. To date, Snak Atak has not filed required reports with the Tax Commission, affixed Nation tobacco stamps to individual packs of cigarettes or paid taxes to the Commission.

---

[2] (. . .continued)
Trust Land Acquisition (Fee to Trust), U.S. Department of the Interior Indian Affairs, https://www.bia.gov/service/trust-land-acquisition/benefits-trust-land-acquisition (last visited June 17, 2025).

On May 28, 2024, Tax Commission officials visited Snak Atak to inspect its records and inventory. During the visit, Snak Atak refused to allow Tax Commission officials to inspect its records or inventory. The officials left Snak Atak and obtained a cease and desist order from the Tax Commission, which directed Snak Atak to cease doing business immediately and cited Snak Atak for multiple violations of the Code. These included (1) failing to allow the Tax Commission and Tribal Police access to the premises to conduct inspections, (2) failing to conspicuously post licenses issued by the Nation, (3) failing to provide and remit sales tax to the Nation, maintain sales tax records and file applicable reports with the Tax Commission, (4) failing to affix tribal tobacco stamps to tobacco products sold to the public, maintain records, file applicable reports with the Tax Commission and remit tobacco excise tax to the Tax Commission and (5) continuously failing to comply with the Nation's business licensing ordinance while conducting business in violation of the applicable conditions of licenses issued by the Nation. The cease and desist order found that Snak Atak's violations posed a direct threat to the peace, safety, morals or general welfare of the residents of the Reservation.

Later in the day on May 28, 2024, Tax Commission officials—accompanied by Tribal Police Officers—returned to Snak Atak to serve the cease and desist order, eject its employees and chain the doors to prevent Snak Atak from continuing to operate in violation of Nation law and its agreements with the Tax Commission. While Tax Commission officials were attempting to serve the cease and desist order and close the store, at least three deputies from the Jackson County Sheriff's Office arrived at Snak Atak. When the deputies arrived, the Nation's Police Chief, Terry Clark, called defendant Morse, Jackson County Sheriff, and explained that (1) the Nation officials were present to enforce the Nation's civil laws on the store, (2) the store was not in compliance with those laws and (3) Snak Atak had consented to the application of the Nation's laws as part of

its license agreements to do business on the Reservation. In response, Morse told Clark that Snak Atak employees had reported to his office that Nation officials were harassing them.[3] Morse also told Clark that if Snak Atak employees asked the Nation officials to leave and they did not leave, the Sheriff's Office would arrest the Nation officials for criminal trespass. Morse later communicated to the Jackson County Counselor that he "was concerned that what was happening based on what the owner was telling [him] was illegal." Amended Complaint (Doc. #33) at 14.

During the visit, the Tax Commission Director heard a Sheriff's Office deputy say that he would arrest the Nation's officials if they attempted to chain Snak Atak's doors. Rather than risk arrest for criminal trespass, the Tribal Police and Tax Commission officials served the cease and desist order and left. The deputies remained on site until they left. Because of Morse's actions, the Nation officials were unable to seize contraband and enforce its regulatory system.

Defendant's interference with the Nation's laws has not been limited to Snak Atak. Sheriff Morse believes that he has civil jurisdiction within the Reservation. For example, in the fall of 2021, Morse cited or threatened to cite tribal employees for improper parking at a hemp production facility within the Reservation. Also in the fall of 2021, a Sheriff's deputy threatened to tow a tribal member's vehicle parked on the edge of a road on the Reservation. In response to those incidents, on September 1, 2021, Morse explicitly stated in an email to Clark that "unless the road is completely shut down, all Kansas statutes still apply." Id. at 16.

Morse continues to assert that that he is not bound by federal law, that he has full jurisdiction, both civil and criminal, over the Nation's Reservation and that the Nation does not have civil regulatory jurisdiction or any other attributes of sovereignty over its own Reservation.

---

[3] Plaintiff alleges that this report was false—the Nation officials were not actually harassing the Snak Atak employees.

Morse's 2023 Annual Report states that he is not bound by Reservation boundaries. For the past several years, Clark has attempted to work with Morse and reach a mutual understanding of their respective authorities on the Reservation, but Morse has rejected those attempts. Plaintiff alleges that absent declaratory and injunctive relief, Morse will continue to wrongfully exercise civil authority on the Reservation and interfere with the Nation's exercise of civil-regulatory jurisdiction.

In June of 2024, the Tax Commission filed suit against Snak Atak in tribal court, seeking (1) exclusion from the Reservation, (2) an injunction prohibiting Snak Atak from conducting business on the Reservation and interfering with Tax Commission staff performing their official duties and (3) civil penalties for violations of the Nation's laws. On July 1, 2024, the Tax Commission filed a request for civil penalties in the same action. Since then, the tribal court has entered an order excluding Snak Atak and a default judgment for civil penalties against Snak Atak's parent company. To date, the Nation has not recovered any tax payments or penalties, and it continues to pursue remedies in tribal court.

On July 19, 2024, plaintiff filed this suit seeking a declaratory judgment and permanent injunction against Morse and the Jackson County Sheriff's Department. On September 3, 2024, Morse filed his Motion To Dismiss (Doc. #10). As noted, on February 10, 2025, the Court sustained his motion in part and ordered plaintiff to show cause in writing why the Court should not dismiss plaintiff's claim for injunctive relief for lack of standing under Article III.

On March 15, 2025, Judge Schwartz granted plaintiff leave to amend. See Memorandum And Order (Doc. #31). On March 18, 2025, plaintiff filed its First Amended Complaint (Doc. #33), seeking a declaratory judgment that, within the Nation's Reservation, Sheriff Morse (1) lacks authority to interfere with the Nation's lawful exercise of civil-regulatory jurisdiction and (2) lacks

civil-regulatory jurisdiction.  The Nation seeks permanent injunctive relief prohibiting Sheriff Morse from (1) interfering with the Nation's lawful exercise of its civil-regulatory jurisdiction and (2) exercising unlawful civil-regulatory jurisdiction within the Reservation.

The amended complaint differs from the original complaint because it addresses the elements required for plaintiff to have standing for injunctive relief.  The amended complaint alleges that because Morse has continued to assert that he is not bound by federal law, that he has civil jurisdiction over the Reservation and that the Nation does not have civil-regulatory jurisdiction or sovereignty over its Reservation, he will continue to wrongfully exercise jurisdiction over the Reservation and interfere with the Nation's sovereignty, which demonstrates a real and immediate threat of future harm.  The amended complaint alleges that declaratory and injunctive relief are necessary to prevent further infringement of tribal sovereignty, which is irreparable harm.  On March 31, 2025, defendant filed his motion to dismiss.  See Motion To Dismiss Amended Complaint (Doc. #37).

## Analysis

### I. Subject Matter Jurisdiction

Under Rule 12(b)(1), defendant asks the Court to dismiss plaintiff's amended complaint in its entirety because plaintiff lacks Article III standing.

Federal courts are not "free-wheeling enforcers of the Constitution and laws."  Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1087 (10th Cir. 2006).  Article III of the U.S. Constitution limits the exercise of federal judicial power to cases and controversies.  U.S. Const., art. III, § 2.  To satisfy Article III's standing requirements, plaintiff must show that (1) it has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent," (2) the injury is fairly traceable to the challenged action of defendant and (3) it is likely, as opposed to

merely speculative, that a favorable decision will redress the injury. New England Health Care Emps. Pension Fund v. Woodruff, 512 F.3d 1283, 1288 (10th Cir. 2008).

Plaintiffs who seek prospective relief—such as an injunctive order to prevent future injury—must show a real and immediate threat of future harm. City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983); Redmond v. Crowther, 882 F.3d 927, 942 (10th Cir. 2018) (plaintiff who seeks injunctive relief based on threat of future harm must show threat is "real and immediate, not conjectural or hypothetical"). Past exposure to wrongful conduct bears on whether plaintiff faces a real and immediate threat of repeated injury, but it is not dispositive. Tandy v. City of Wichita, 380 F.3d 1277, 1289 (10th Cir. 2004).

Defendant argues that plaintiff lacks standing because (1) the amended complaint does not allege an injury that is ongoing, certainly impending or substantially likely to occur because (a) Morse has civil jurisdiction to enforce traffic laws on the Reservation and (b) the Snak Atak incident was a one-off occurrence and is unlikely to happen again, and (2) the requested relief does not remedy any cognizable Article III injury.

As to the first element—whether plaintiff has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"—the amended complaint alleges that defendant interfered with tribal sovereignty and will continue to do so. Specifically, plaintiff alleges that defendant (1) threatened to arrest Nation officials at Snak Atak (and persisted in this threat even after Clark explained that the officials were lawfully regulating Snak Atak's activity under the Nation's civil-regulatory jurisdiction), (2) unlawfully issued parking violations, (3) unlawfully threatened removal of vehicles and (4) continues to assert that he is not bound by federal law, that he has full jurisdiction, both civil and criminal, over the Nation's Reservation and that the Nation does not have civil-regulatory jurisdiction or any other attributes of sovereignty over its

Reservation. The Court has already found that plaintiff has plausibly alleged that Morse's actions with respect to enforcing traffic laws and interfering with Snak Atak wrongfully exceeded his jurisdiction on the Reservation. The Tenth Circuit has "repeatedly stated" that "an invasion of tribal sovereignty can constitute irreparable injury." Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Utah, 790 F.3d 1000, 1005 (10th Cir. 2015).

Defendant's argument that the Snak Atak incident was a "one-off" occurrence that is unlikely to happen again seems to suggest that plaintiff's claims are moot. To moot a case, *defendant* bears the burden to establish that he "cannot reasonably be expected to resume [his] challenged conduct." Fed. Bureau of Investigation v. Fikre, 601 U.S. 234, 235 (2024). Here, defendant has not done so. In fact, from defendant's statements and briefing, it appears that he has no plans to alter his behavior and almost certainly will continue to act in such a way that plaintiff alleges invades the Nation's sovereignty. Further, even if the Snak Atak incident was a "one-off" occurrence, the injunctive and declaratory relief which plaintiff seeks is not specific to Snak Atak, and it is substantially likely that these issues will arise again.[4] Thus, the amended complaint has satisfied the first element, and defendant's argument that the amended complaint does not allege an injury that is ongoing, certainly impending or substantially likely to occur is unpersuasive.

As to the second element—whether plaintiff has shown that the injury is fairly traceable to defendant's challenged action—the amended complaint clearly alleges that plaintiff's claimed injuries are traceable to defendant's actions of exercising civil jurisdiction and interfering with the Nation's exercise of civil-regulatory jurisdiction on the Reservation. Plaintiff has therefore also met the second element.

As to the third element—whether it is likely that a favorable decision will redress plaintiff's

---

[4] In this context, the Court is not sure what a "one-off" occurrence is.

injury—the amended complaint alleges that absent injunctive relief, Morse will continue to exercise civil jurisdiction on the Reservation and interfere with the Nation's exercise of civil-regulatory jurisdiction.  The Court can assume that Morse would comply with an injunctive order and stop issuing citations for parking violations, threatening to remove vehicles and threatening to arrest Nation Officials exercising civil-regulatory jurisdiction on the Reservation, and thus injunctive relief would redress plaintiff's injury.  Plaintiff has therefore met the third element, and defendant's argument that the requested relief would not remedy any cognizable Article III injury is unpersuasive.

Accordingly, the Court overrules defendant's motion to dismiss under Rule 12(b)(1).

## II.     Failure To State A Claim

Under Rule 12(b)(6), defendant asks the Court to dismiss plaintiff's complaint in its entirety because the amended complaint fails to state a claim for declaratory or injunctive relief. Specifically, defendant argues that (1) he has civil-regulatory jurisdiction over the reservation, (2) the reservation is not excluded from the territorial boundaries of Kansas, (3) traffic offenses are criminal when applied to the Reservation, (4) the enforcement of traffic laws does not impinge tribal sovereignty and (5) the amended complaint fails to describe in reasonable detail the act or acts sought to be restrained.[5]

---

[5]     As to defendant's first four arguments, which essentially argue that defendant's actions were not wrongful and did not harm plaintiff, the Court has held that plaintiff has plausibly alleged that defendant exceeded his jurisdiction when he (1) allowed Snak Atak to operate in violation of Nation law, (2) prohibited plaintiff from seizing contraband, (3) chained the Snak Atak door, (4) ejected Snak Atak employees, (5) cited or threatened to cite tribal employees for improper parking at a hemp production facility within the Reservation and (6) threatened to tow a tribal member's vehicle parked on the edge of a road on the reservation.  Thus, defendant's arguments that he did not exceed his jurisdiction and that his actions did not impinge tribal sovereignty are insufficient to establish that plaintiff failed to state a claim for injunctive relief.

(continued. . .)

The Court has already found that plaintiff has plausibly alleged that it is entitled to a declaratory judgment that (1) defendant wrongfully interfered with the Nation's exercise of civil-regulatory jurisdiction with respect to Snak Atak and (2) defendant exceeded his jurisdiction by threatening to remove vehicles and issuing citations for parking violations. The amended complaint does not affect this analysis. Accordingly, the Court focuses on whether plaintiff has plausibly alleged that it is entitled to injunctive relief.

For plaintiff to state a claim for injunctive relief, it must allege (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) that if issued, the injunction will not adversely affect the public interest. Prairie Band Potawatomi Nation v. Wagnon, 476 F.3d 818, 822 (10th Cir. 2007).

As to the first element—actual success on the merits—plaintiff has plausibly alleged that defendant has interfered with the Nation's exercise of civil-regulatory jurisdiction by threatening to arrest Nation officials engaged in the exercise of such jurisdiction, and that defendant has overstepped his authority with respect to parking and vehicular offenses.

As to the second element—irreparable harm unless the Court issues injunctive relief—plaintiff has plausibly alleged that interference with tribal self-government is irreparable harm, and that Morse will not stop interfering with tribal self-government unless the Court issues injunctive

---

[5] (. . .continued)
Defendant's argument that the amended complaint fails to describe in reasonable detail the act or acts sought to be restrained is also insufficient to establish that plaintiff failed to state a claim. Rule 65(d) of the Federal Rules of Civil Procedure requires that orders granting injunctive relief describe in detail the act or acts restrained. Rule 65(d) does not have any bearing on whether plaintiff has stated a claim for injunctive relief. If the Court eventually grants injunctive relief, the order will comply with Rule 65(d).

relief. Plaintiff can satisfy the irreparable harm requirement by demonstrating "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009) (quoting Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1258 (10th Cir. 2003)). The Tenth Circuit has "repeatedly stated" that "an invasion of tribal sovereignty can constitute irreparable injury." Ute Indian Tribe of the Uintah & Ouray Rsrv., 790 F.3d at 1005; see Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1251 (10th Cir. 2001) (harm to tribe's self-government is irreparable injury that could not be adequately compensated for by monetary damages, not subject to easy valuation and monetary damages possibly not available because of state's sovereign immunity). The amended complaint alleges that Morse's exercise of civil authority and interference with the Nation's exercise of civil-regulatory jurisdiction infringes on the Nation's ability to make and be ruled by its own laws, which is a fundamental attribute of sovereignty, and that defendant has no plans to alter his behavior.

As to the third element—that the threatened injury outweighs the harm to the opposing party—the injunction would only prohibit defendant from violating the Nation's sovereignty and federal law. Such an injunction would not harm defendant in his official or personal capacities.

As to the fourth element—that the injunction would not adversely affect the public interest—the public does not have any interest in defendant acting outside his scope of authority, and the Nation's right to self-government is a matter of public interest.

Plaintiff has plausibly alleged that it is entitled to injunctive relief. Accordingly, the Court overrules defendant's motion to dismiss under Rule 12(b)(6).

**IT IS THEREFORE ORDERED** that defendant's Motion To Dismiss Amended Complaint (Doc. #37) filed March 31, 2025 is **OVERRULED.**

Dated this 18th day of June, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
