## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PRAIRIE BAND POTAWATOMI NATION, *a federally recognized Indian Tribe*,<br><br>     Plaintiff,<br><br>     v.<br><br>JACKSON COUNTY SHERIFF TIM MORSE, *in his official capacity,*<br><br>     Defendant. | Case No. 24-4066-KHV-RES |

### PRETRIAL ORDER

On January 13, 2026, U.S. Magistrate Judge Rachel E. Schwartz conducted a pretrial conference in this case by phone. Plaintiff Prairie Band Potawatomi Nation ("Nation") appeared through counsel Klint A. Cowan and Jere D. Sellers by phone. Defendant Jackson County Sheriff Tim Morse, in his official capacity, appeared through counsel David R. Cooper.

This pretrial order supersedes all pleadings and controls the subsequent course of this case. It will not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice. *See* Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(a).

1. **PRELIMINARY MATTERS.**

    a.    **Subject-Matter Jurisdiction.**  Subject-matter jurisdiction is invoked under 28 U.S.C. §§ 1331, 1362, 2201, and 2202 and is not disputed.

    b.    **Personal Jurisdiction.**  The court's personal jurisdiction over the parties is not disputed.

    c.    **Venue.**  Venue in this court is not disputed.

**d.** **Governing Law.** Subject to the court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law: Plaintiff believes this case is controlled by federal statutory and federal common law addressing civil-regulatory jurisdiction in Indian country. Defendant believes that federal and Kansas laws governing the respective jurisdiction of the Nation, the State of Kansas and the Jackson County Sheriff control. The Parties differ in that Plaintiff believes federal law alone resolves the questions before the court, while the Defendant believes Kansas law is also needed to decide the controversy. The Court has not ruled directly on which law is determinative between Kansas and federal law.

**2.** **STIPULATIONS.**

**a.** The following facts are stipulated:

**A.** **The Nation's Reservation and Government**

1. The Prairie Band Potawatomi Nation (Nation) possesses a reservation established by the Treaty with the Pottawatomi Nation, 9 Stat. 853 (June 17, 1846), ("Reservation") in northeastern Kansas.

2. Under 18 U.S.C. § 1151, all lands within the Reservation are Indian country.

3. The Nation's government is located on the Reservation and includes the offices of the Tribal Council (the Nation's elected government), the Judicial Council (the Nation's independent judicial branch of government), the Gaming Commission, and the Tax Commission. Article I, Section 1 of the Nation's federally approved constitution states:

> Section 1. The authority and jurisdiction of the Prairie Band Potawatomi Nation shall extend to the fullest extent possible, including, without limitation,
>
> (a) to any and all persons, including non-members and members of the Prairie Band Potawatomi Nation and including any corporation, other entity or any person located or doing business on the Nation's Reservation and
>
> (b) to all surface, subsurface or other territory or real or personal property of any nature within the Nation's Reservation.

4.      The Nation provides public services within the Reservation, including fire protection and emergency services, law enforcement, early childhood education, health care, community centers, historic preservation, environmental protection, wildlife conservation, land maintenance, road and bridge maintenance, transportation, and vehicle licensing and registration.

5.      The Nation also operates businesses within the Reservation including a gaming facility (as authorized by the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq., and the Tribal-State Gaming Compact, last amended in July 2023, *see* 88 Fed. Reg. 45,909 (July 18, 2023)), a convenience store, and a hemp farm and hemp processing plant.

6.      The Nation has also established a police department authorized to promote public safety, protect persons living in the Reservation, preserve the peace, and work with other law enforcement agencies to promote the peace. The Nation has authorized its law enforcement officers to make arrests and to carry handguns, other firearms, and other weaponry for their personal protection and the protection of others. The tribal police are cross-deputized by the Bureau of Indian Affairs, Inter-Governmental Cross Deputization Agreement of 1999 for Law Enforcement in the Prairie Band of Potawatomi Tribe, PBPN-000001–09 (Dec. 20, 1999), and have Special Law Enforcement Commissions under 25 U.S.C. §§ 2801 and 2804a. The tribal police exercise criminal jurisdiction over Indians within the Reservation under tribal criminal law codified at Title 15, Criminal Offenses of the Potawatomi Law and Order Code.

7.      Jackson County, Kansas Sheriff Tim Morse is a former member of the Nation's police department from November 1999 to July 2000. Prairie Band Potawatomi Nation Police Department Application and Personnel Files for Officer Tim Morse, PBPN-00355–402, PBPN-00404.

8.      Sheriff Morse has been the Jackson County Sheriff since June 2011.

9.      Pursuant to the Kansas Act, 18 U.S.C. § 3243:

Jurisdiction is conferred on the State of Kansas over offenses committed by or against Indians on Indian reservations, including trust or restricted allotments, within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State. … .

10.      Pursuant to K.S.A. § 19-813, "It shall be the duty of the sheriff and undersheriffs and deputies to keep and preserve the peace in their respective counties, and to quiet and suppress all affrays, riots and unlawful assemblies and insurrections, for which purpose, and for the service of process in civil or criminal cases, and in apprehending or securing any person for felony or breach of the peace … ."

11.      The criminal jurisdiction conferred by the Kansas Act, 18 U.S.C. § 3243, extends to Sheriff Morse, his undersheriff and his deputies.

**B.    Civil-regulatory jurisdiction within the Reservation**

12.    The Nation enacted the Potawatomi Law and Order Code. Section 1-1-1 of the Code provides as follows:

1-1-1 Territory, Persons and Property Affected.

As required by the tribal constitution, the authority and jurisdiction of the Prairie Band Potawatomi Nation shall extend to the fullest extent possible, including, without limitation, to any and all persons, including non-members and members of the Prairie Band Potawatomi Nation and including any corporation, other entity or any person and to all surface, subsurface or other territory or real or personal property of any nature. The authority and jurisdiction of the Nation shall apply pursuant to this Code to each of the following:

(A)  The Prairie Band Potawatomi Indian Reservation, including all lands, islands, waters, roads, and bridges or any interests therein, whether trust or non-trust status and notwithstanding the issuance of any patent or right-of-way, within the boundaries on the Reservation as established in Article 4 of the Treaty with the Potawatomi Nation, dated June 17, 1846, 9 Stat. 853, and such other lands, islands, waters or any interest therein hereafter added to the Reservation.

(B)  All persons and property within any existing or future territory to which it is possible to extend the Nation's jurisdiction or authority, including, without limitation, territory within the exterior boundaries of Indian country of the Nation or of its members and all property held by the United States in trust for the Prairie Band Potawatomi Nation or in trust for a member of the Prairie Band Potawatomi Nation.

(C)  All members of the Tribe, wherever located, exercising any tribal rights pursuant to federal, tribal or state law.

(D)  All persons and property outside the exterior boundaries of territory that is subject to the jurisdiction and authority of the Nation, to the extent not prohibited by federal law, including, without limitation, any person who personally or through an agent does any of the following insofar as any claim brought in Tribal Court arises from the doing of such act:

(1)  The transaction of any business of the Reservation;
(2)  The commission of a tortuous act on the Reservation;
(3)  Contracting to insure any person, property or risk located on the Reservation at the time of contracting; and
(4)  The act of sexual intercourse on the Reservation with respect to which a child may have been conceived.
(5)  The commission of a Covered Crime on the Reservation, except if victim and defendant are both non-Indian, other than Obstruction

4

of Justice or Assault of Tribal Justice Personnel.

(E)  For any reservation land located outside of Jackson County, Kansas, this tribal Code shall be interpreted to substitute for Jackson County and Kansas the county and state in which such land is located.

(Amended by PBP TC No. 2008-121, May 22, 2008; amended by PBP TC No. 2023-276, September 21, 2023)

Code, § 1-1-1, PBPN000742.

13.    Title 10 of the Code establishes the Prairie Band Potawatomi Tax Commission ("Tax Commission") as the Nation's taxing authority, *id*. at § 10-1, creates a tobacco excise tax, *id*. at § 10-2, a gross receipts sales tax (including on alcohol sales), *id*. at § 10-3, and a motor fuel tax, *id*. at § 10-6-5.

14.    Title 13 of the Code contains business licensing regulations for businesses within the Reservation. *Id*. at § 13.

15.    Title 29 of the Code contains regulations for selling alcohol on the Reservation, which applies to all sellers of alcohol on the Reservation.

### C.    The Snak Atak incident

> ### i.    *Snak Atak's consent to the Nation's civil-regulatory jurisdiction*

16.    On or about January 29, 2024, applications for a tribal business license, tobacco retailer license, liquor retailer license, and tribal motor fuels retailer license were submitted by Amit Mishra on behalf of Wamego Store LLC, doing business as Snak Atak Travel Plaza ("Snak Atak").

17.    Snak Atak is a non-Indian owned company organized under the Kansas revised limited liability company act, K.S.A. § 17-7662, *et seq*., and located on nonmember owned fee land within the Reservation. PBPN-000226, 000227–29, 000232, 000230–31. Mr. Mishra owns more than five percent of Wamego Store, LLC, and was an organizer of the LLC. Wamego Store, LLC, Organizing Documents, PBPN-00918–919.

18.    In those applications, the applicant agreed to pay tobacco and sales taxes and to provide certain sales and inventory reports to the Tax Commission. *Id*.

19.    In its business license application, the applicant agreed to "submit regular Sales Revenue reports, as requested by the PBPN Tax Commission Office" and agreed "to be bound by and comply with all laws of the Prairie Band Potawatomi Nation" and "consensually submit[ted] to the jurisdiction of the Prairie Band Potawatomi Nation." License for Bus. Appl., 1, PNPB-000092 (Jan. 26, 2024).

20.    In the Tobacco Retailer License application, the applicant agreed to: (i) Remit payment "to the Tax Commission for each Tribal Tax Stamp affixed on individual

packs of cigarettes by the tenth (10th) of every month for the previous month"; (ii) "Submit all reports to the Tax Commission as required pursuant to the Potawatomi Law and Order Code Title 10 General Revenue and Taxation"; (iii) "Comply with all other applicable tribal business laws applicable to tribal tobacco retailers and wholesalers," and (iv) "Take all reasonable precautions to ensure the security and integrity of the Tribal Tax Stamp, including keeping unaffixed stamps in a secure location." Tobacco Retailer License Appl., 3, PBPN-000228 (Jan. 26, 2024).

21.     The applicant agreed "to be bound by and comply with all laws of the Prairie Band Potawatomi Nation" and "consensually submit[ted] to the jurisdiction of the Prairie Band Potawatomi Nation." *Id.*

22.     In the Liquor Retailer License Application, the applicant agreed to "be bound by and comply with all laws of the Prairie Band Potawatomi Nation" and "consensually submit[ted] to the jurisdiction of the Prairie Band Potawatomi Nation." Liquor Retailer License Appl., 1, PBPN-000232 (Jan. 26, 2024).

23.     The applicant also agreed "to comply with all of the terms and conditions of the Liquor Control Ordinance of the Prairie Band Potawatomi Nation and any other applicable law" and "to be subject to the exclusive jurisdiction of the Prairie Band Nation Potawatomi Nation Tribal Court." *Id.*

24.     In the Tribal Motor Fuel Retailer License Application, the applicant agreed "to be bound by and comply with all laws of the Prairie Band Potawatomi Nation" and "consensually submit[ted] to the jurisdiction of the Prairie Band Potawatomi Nation." Motor Fuel License Retailer Appl., 1, PBPN-000230 (Jan. 26, 2024).

25.     The applicant agreed "to submit regular Motor Fuels Sales Revenue report[s] by the 10th of the following calendar month" and to keep all records "for 3 years and [make the records] readily available for PBPN Tax Commission inspection." *Id.* at 2, PBPN-000231.

26.     The State of Kansas has agreed that the Nation will regulate all sales of cigarettes within the Reservation. Compact Relating to Cigarette and Tobacco Sales, Taxation and Escrow Collection between the State of Kansas and the Prairie Band Potawatomi Nation, 4.01(a), PBPN-000016–17 (Feb. 17, 2016).

27.     The Nation possesses civil-regulatory jurisdiction on its Reservation. Defendant's Response to Request for Admission No. 10.

28.     The Snak Atak Travel Plaza on the Reservation was subject to the civil regulations of the Prairie Band Potawatomi Nation. Defendant's Response to Request for Admission No. 3.

### ii.     *Snak Atak's operation and failure to comply with Nation law*

29.     On or about January 30, 2024, the Tax Commission issued three licenses to Snak Atak Travel Plaza: a Business License (No. 013024015) (effective date Jan. 30,

2024); a Tobacco Retailer License (License No. 1302024-4) (effective date Jan. 30, 2024); and a Motor Fuel License Retail (No. MOTOR-2024-03) (effective date Jan. 30, 2024). *See* Letter from Tonya Negonsott-Rodvelt, PBPN-0000233–237 (Feb. 5, 2024); Email from Tonya Negonsott-Rodvelt, PBPN-000238 (Feb. 6, 2024).

30.    On February 1, 2024, the Nation's Tribal Council accepted the application for a liquor license, and, by resolution, approved the license. Tribal Council Resolution 2024-043 Approving Liquor License, PBPN-000619–20. On February 6, 2024, the Nation's Tax Commission issued the license to Snak Atak Travel Plaza. PBPN-000236.

31.    On February 6, 2024, the Tax Commission informed Amit Mishra (an owner of at least 5% of Snak Atak's parent company Wamego Stores, LLC and an organizer of Wamego Stores, LLC (PBPN-00918–919)) via email that a business license, motor fuel retailer license, and tobacco retailer license had been approved with an effective date of January 30, 2024 and an expiration date of January 29, 2025. Email from Tonya Negonsott-Rodvelt, PBPN-000238 (Feb. 6, 2024).

32.    Also in that email, the Tax Commission informed Mr. Mishra that the liquor retailer license had been approved with an effective date of February 1, 2024, and an expiration date of January 31, 2026. *Id.*

33.    The email also reminded Mr. Mishra that "[u]pon acceptance of a license, the licensee consensually agrees to submit to the jurisdiction of the Prairie Band Potawatomi Nation (PBPN) and comply with all the PBPN laws." *Id.*

34.    Snak Atak opened for business in or about March 2024.

35.    During its time in operation Snak Atak did not file required reports with the Tax Commission, affix Nation tobacco stamps to individual packs of cigarettes, or remit owed taxes to the Tax Commission. PBPN Tax Commission Cease and Desist Order to Snak Atak, PBPN-000100–03 (May 28, 2024).

### iii.    The Nation's civil regulation of Snak Atak

36.    On May 28, 2024, Tribal Tax Commission staff Tonya Negonsott-Rodvelt and William Mitchell visited Snak Atak to inspect its records and inventory. Negonsott-Rodvelt and Mitchell were accompanied by Tribal Police Officers Michael Barnhart and Dereck Martinez. Law Enforcement Narrative from Chief Terry Clark, PBPN-000075–76 (May 28, 2024); Law Enforcement Narrative from Michael Barnhart, PBPN-000077; Law Enforcement Narrative from Dereck Martinez, PBPN-000078.

37.    During that visit, staff working at the Snak Atak refused to allow the Tax Commission officials to inspect Snak Atak's records or inventory. Deputy Jose Martinez Body Cam Footage, PBPN-000731 (May 28, 2024).

38.    After being refused access for the inspection, the Nation officials left Snak Atak. The Tax Commission officials then requested and obtained a cease-and-desist order from the Tax Commission ("Cease and Desist Order"). Cease and Desist Order (May 28,

2024). Deputy Jose Martinez Body Camera Footage, PBPN-000731 (May 28, 2024); PBPN Tax Commission Cease and Desist Order to Snak Atak, PBPN-000100–03 (May 28, 2024).

39.    The Cease and Desist Order states as follows:

CEASE AND DESIST ORDER

CHAPTER 13-3-1, POTAWATOMI NATION LAW AND ORDER CODE

COMES NOW the Prairie Band Potawatomi Tax Commission (Tax Commission) and by the authority granted it by the Potawatomi Law and Order Code, has issued this **CEASE AND DESIST ORDER** upon the business known as Wamego Store, LLC d/b/a Snak Atak, doing business at 20330 US 75 N, Holton, Kansas.

For one or more of the following reported violations of the Potawatomi Law and Order Code, the Tax Commission has determined that this business continued noncompliance with the Potawatomi Law and Order Code and is a direct and immediate threat to the peace, safety, morals, or general welfare of the residents within the exterior boundaries of the Prairie Band Potawatomi Reservation as established on Article 4, of the Treaty with the Potawatomi Nation, dated June 17, 1846, 9 Stat. 853, and includes such other lands, islands, waters or any interest therein hereafter added to the Reservation.

Reported Violations:    1) Failure to allow Tax Commission and Tribal Police access to the premises to conduct inspections. *Chapter 10- 1-4, General Taxing Powers of the Tax Commission, Potawatomi Law and Order Code.*

2) Failure to conspicuously post licenses issued by the Nation. *Chapter 13-2-2, Application and Issuance, Potawatomi Law and Order Code.*

3) Failure to provide and remit sales tax owed the Nation and maintain sales tax records and filing applicable reports with the Tax Commission. *Chapter 10-3, Sales Tax, Potawatomi Law and Order Code.*

4) Failure to affix tribal tobacco stamps to tobacco products sold to the public within the store, maintain records and filing applicable reports with the Tax Commission, remitting tobacco excise tax to the Tax Commission. *Chapter 10-2, Tribal Tobacco Excise Tax, Potawatomi Law and Order Code.*

5) Continual non-compliance with the Nation's business licensing ordinance while conducting business in violation of the applicable conditions of licenses issued by the Nation. *Chapter 13-3, Sanctions, Potawatomi Law and Order Code.*

This order shall remain in effect until the Wamego Store, LLC d/b/a Snak Atak, doing business at 20330 US 75 N, Holton, Kansas, shall come into compliance with the Potawatomi Law and Order Code.

Wamego Store, LLC d/b/a Snak Atak, doing business at 20330 US 75 N, Holton, Kansas shall cease and desist business immediately upon service of this order and may file a notice of appeal with the Prairie Band Potawatomi Nation District Court within thirty (30) days from receipt of this **CEASE AND DESIST ORDER** in accordance with *Chapter 13-3-1 (B) Revocation of License; Failure to Obtain License; Show Cause Hearing, Potawatomi Law and Order Code*.

By issuing this order neither the Tax Commission nor the Prairie Band Potawatomi Nation waives any other remedy available under the Potawatomi Law and Order Code.

This **CEASE AND DESIST ORDER** is entered on this 28th_ day of May, 2024 and served on Wamego Store, LLC d/b/a Snak Atak, doing business at 20330 US 75 N, Holton, Kansas and its agent [illegible] on this 28th day of May, 2024 at the business address.

IT IS SO ORDERED

Cease and Desist Order, 1–2, PBPN-000100–02.

40.     Snak Atak did not appeal the Cease and Desist Order within thirty days.

*iv.     Defendant's actions at Snak Atak*

41.     Later in the day on May 28, 2024, Tribal Tax Commission staff Tonya Negonsott-Rodvelt and William Mitchell returned to Snak Atak accompanied by Tribal Police Chief Terry Clark and Tribal Police Officers Michael Barnhart and Dereck Martinez to serve the Cease and Desist Order. Law Enforcement Narratives, Chief Terry Clark, Officer Michael Barnhart, and Officer Dereck Martinez, PBPN-000075–78 (May 28, 2024).

42.     Chief Clark called Sheriff Morse by cell phone. Chief Clark's side of the conversation was recorded on his body camera. Chief Terry Clark, Body Cam Footage at 2:09 to 8:47, PBPN-000737 (May 28, 2024).

43.     Chief Clark said to Sheriff Morse the following:

a. "Hello Sir, hey, you busy? We're getting ready to serve a cease and desist order on 'em."

b. "The Tribe issued them their business license. They're not in compliance. They've been trying to get in compliance, get them to get in compliance for the last six months. They're not paying -, they haven't paid—they haven't paid their taxes."

c. "… they're also selling lottery tickets here and they didn't have their alcohol license up, and I mean there's a lot of different reasons here."

d. "But (inaudible) my understanding is – I'm here just to keep the peace. But, my understanding is, they signed an agreement with the tribe."

e. "And the tax commission, you know, they, they brought up all these things, and, and they're ordering them to stop doing business."

f. "For what?"

g. "No. Nobody's asked us to leave."

h. "I'm not. I'm keeping the peace. I have an order signed by the Tax Commission that says cease and desist."

i. "Well, I mean the tribe issues the business license."

j. "They have to . . . because it's on the Reservation."

k. "Well, that's what they want to do."

l. "… I can't get in the middle of the taxation stuff like that but they have a cease and desist order."

Chief Terry Clark, Body Cam Footage at 2:15 to 4:25, PBPN-000737 (May 28, 2024); Law Enforcement Narrative from Chief Terry Clark on Snak Atak Call, 1, PBPN-000075–76 (May 28, 2024).

44.    While Negonsott-Rodvelt, Mitchell, Chief Clark, Officer Barnhart and Officer Martinez were at Snak Atak to serve the Cease and Desist Order, Jackson County Sheriff's Sgt. Bryce Whelpley, Deputy Jose Martinez and Deputy Maverick Ohlde arrived at Snak Atak. Deputy Jose Martinez, Body Cam Footage at 0:00, MORSE_000027 (May 28, 2024).

45.    Tribal Police Chief Terry Clark was on the phone with Sheriff Morse when two of the Jackson County Deputies, Deputy Martinez and Deputy Ohlde, arrived at the Snak Atak. Chief Terry Clark, Body Cam Footage at 7:30 to 7:36, PBPN-000737 (May 28, 2024).

46.    Also during that call, Chief Clark repeatedly advised the Sheriff that this was a "a civil matter." *See, e.g.*, Chief Terry Clark, Body Cam Footage at 6:54, PBPN-000737 (May 28, 2024); Law Enforcement Narrative from Chief Terry Clark on Snak Atak Call, 2, PBPN-000075–76 (May 28, 2024).

47.    Also during that call, Chief Clark told Sheriff Morse that Snak Atak employees, "have not said one word about us leaving. Never – have not asked. I've got Michael Barnhart and Dereck Martinez and all that out here." Chief Terry Clark, Body Cam Footage at 7:37 to 7:47, PBPN-000737 (May 28, 2024); Law Enforcement Narrative from Chief Terry Clark on Snak Atak Call, 2, PBPN-000075–76 (May 28, 2024).

48.    Also during that call, Sheriff Morse told Chief Clark that if they are asked to leave that they should leave because theoretically they could be subject to arrest for criminal trespass and that Sheriff Morse didn't want to put his deputies or the Tribal officials in that position. Law Enforcement Narrative from Chief Terry Clark on Snak Atak Call, 2, PBPN-000075–76 (May 28, 2024); MORSE_000002, Sheriff Morse Email to Hendricks; Sheriff Morse Answer to Interrogatory No. 8; PBPN-000288; Defendant's Response to Interrogatory No. 8.

49.    After hanging up from his call with Sheriff Morse, Chief Clark said the following to Negonsott-Rodvelt and Mitchell:

a.    "I will tell you guys right now that the sheriff doesn't believe you can do this. Does not believe you can do this because this is a private business, you can't lock them out of a private business. It's all over tax stuff. I guess he's been complaining to the sheriff about the tax commission and everything else. Chief Terry Clark, Body Cam Footage at 8:54 to 9:16.

b.    "Now I will tell you if they come in here and ask us to leave, I have no legal reason to stay." Chief Terry Clark, Body Cam Footage at 9:16 to 9:28.

50.    The Snak Atak manager stated that the Sheriff "told me that if they are going to mess you a lot, just give us a call. We are going to send you dispatch in." Sgt. Bryce Whelpley, Body Cam Footage at 1:40, MORSE_000025 (May 28, 2024).

51.    The Tribal Police and Tax Commission officials served the Cease and Desist Order on Snak Atak and left. *See* Deputy Jose Martinez, Body Cam Footage at 23:21, MORSE_000027 (May 28, 2024).

52.    The Sheriff's deputies remained on site until the Nation's officials left. Deputy Jose Martinez, Body Cam Footage at 28:00, MORSE_000027 (May 28, 2024).

53.    Sheriff Morse admitted that "on a telephone call between Sheriff Morse and Chief Terry Clark on May 28, 2024, Sheriff Morse told Chief Clark that if Snak Atak employees ask the Prairie Band officials to leave the premises and they do not leave, they could be subject to arrest by the Sheriff's Office." Defendant's Response to Request for Admission No. 8.

54.     Sheriff Morse has stated that he told Chief Clark: "I explained that I thought if they didn't have the authority to proceed, that if they were asked to leave the property by the owners or management it could result in trespassing which could end in criminal charges or arrest." Defendant's Response to Interrogatory No. 8.

55.     Sheriff Morse wrote an email to the then-Jackson County Counselor Lee Hendricks, on May 31, 2024, which read as follows:

> On that day, we had a couple calls from the store. At the end of the day the owner/manager called me very upset stating that they were there to close his store. At the same time, I received a call from Chief Clark who from what I understood was on the scene. I am guessing his purpose was to tell me that they were on scene. I believe our dispatch also received a call and three deputies were dispatched. The Chief seemed to not be completely on board with what the tribe was doing either and made the point that they were only keeping the peace and there was nothing else they could legally do.
>
> I was concerned that what was happening based on what the owner was telling me was illegal. I told the Chief that if they are asked to leave that they should leave because theoretically they could be subject to arrest. The Chief assured me that no one has asked them to leave. I told him that I didn't want his officers or my deputies in that situation. He told me that he told the taxing commission who planned to chain the doors shut to not do it. He said they were there only to serve a cease-and-desist notice and leave. We had a good visit after that and discussed his son's tonsil surgery. I was advised that everyone left with no incident. I have been told since that the store has not been open since.

Email from Lee Hendricks to Darren Root, MORSE_000002 (May 31, 2024); *see also* PBPN-000288.

56.     On a body camera recording during the visit by PBPN officials to serve the Cease and Desist Order, Sgt. Bryce Whelpley stated on a phone call that "This is all civil, I don't know what we can do about it." Sgt. Bryce Whelpley, Body Cam Footage at 5:30, MORSE_000026 (May 28, 2024).

57.     Chief Clark told Sgt. Whelpley:

> "They're serving a cease and desist order on this business because they're not meeting the regulatory, civil regulatory law of the Tribe. There was a plan of chaining the doors closed, doing all that stuff. Have one guy, I don't know him, we were up here earlier, the Tribe has the right to go in there and inspect for – Tribal – you know, tobacco, that stuff. They refused to allow - . And there's an agreement between the business owner and the tribe. All that stuff. So, I'm going to serve them, get them properly served on the cease and desist order. I'm gonna tell them, you've got to close your doors. Whatever they do at that point is up to them. As long as they're properly

served, then we're leaving. It's paperwork. It's all civil. There's nothing
criminal here. But we're here, us three are here just to keep the peace. They
weren't very nice to Tanya and William when they came up here earlier to
try and do their inspection.

Sgt. Bryce Whelpley, Body Cam Footage at 6:12 to 7:23, MORSE_000026 (May 28,
2024).

58.    Sgt. Whelpley asked Chief Clark and Negonsott-Rodvelt the ramifications
if the Snak Atak continued to stay open. Both Chief Clark and Negonsott-Rodvelt said it
would go back to the Tax Commission and through the courts. Sgt. Bryce Whelpley, Body
Cam Footage at 9:12 to 9:22, MORSE_000026 (May 28, 2024).

59.    Sgt. Whelpley stated on another call captured on his body camera "I'm not
gonna be putting cuffs on other law enforcement officers out here at the moment." Sgt.
Bryce Whelpley, Body Cam Footage at 13:46 MORSE_000026 (May 28, 2024).

60.    Sgt. Whelpley told the manager of Snak Atak that "there's nothing criminal
that I can take care of." Sgt. Bryce Whelpley, Body Cam Footage at at 21:14.

61.    Sgt. Whelpley also told the manager of Snak Atak that there's "not much
we can do, it's all on the civil side with them." Sgt. Bryce Whelpley, Body Cam Footage
at 28:35.

62.    The Snak Atak closed in August 2024 and has not been open for business
to the public since that date.

   *v.    Tribal court action*

63.    On or about June 28, 2024, the Tax Commission filed suit against Snak Atak
and its agents in tribal court seeking an order of exclusion from the Reservation. The
complaint requested that the Court:

> impose conditions in the order of exclusion including (1) an order directing
> all excluded parties to immediately cease and desist all commercial activity
> at the business location, (2) an order directing the Tax Commission and
> Tribal Police to use whatever reasonable and lawful means available to
> secure the business location, including but not limited to, chaining doors
> and placing barricades around the property to prevent access to the business
> location.

*Tax Comm'n v. Wamego Store LLC*, (Prairie Band Dist. Ct. filed June 28, 2024); Exclusion
Complaint Form, PBPN-000630–32 (June 28, 2024).

64.    On or about June 30, 2024, the Tax Commission filed two actions against
Snak Atak in tribal court, with the first seeking an injunction prohibiting Snak Atak from
conducting business within the Reservation and an injunction prohibiting Snak Atak from
interfering with Tax Commission staff performing their official duties such as conducting

inspections and seizing contraband, and the second seeking civil penalties for violations of the Nation's law. *Tax Comm'n v. Wamego Store LLC*, No. CV-2024-OT-0013.CV (Prairie Band Dist. Ct. filed June 30, 2024).

65.     Since that date, the Tribal Court entered an order of exclusion against Snak Atak (on Aug. 8, 2024), PBPN-00836–838, and entered a default judgment against the parent company for civil penalties (on Feb. 3, 2025), PBPN-00921–926. No tax payments or penalties have been recovered, but the Nation continues to pursue its remedies in Tribal Court.

### D.     The parking enforcement incident

66.     At approximately 8:00 a.m. on August 26, 2021, Jackson County Sheriff's Deputy Kendal Grimm found a 2003 Toyota Avalon registered to Kenneth Aitkens parked in the roadway on O Road. Aitkens was a tribal employee at a hemp production facility within the Reservation. Deputy Grimm believed Aitkens' vehicle was a road hazard as it was over a crest of the hill and asked Aitkens to park the vehicle on the shoulder and off the roadway. Aitkens refused to move the vehicle. Deputy Grimm told Aitkens he would have the vehicle towed if Aitkens did not move the vehicle. Deputy Grimm requested assistance and Sgt. Matthew Honas was dispatched to the location. After Sgt. Honas was in route and after Aitkens had called someone, Aitkens elected to move his vehicle. Deputy Grimm cleared the scene at about 8:16 a.m. Sheriff Tim Morse to Chief Terry Clark, PBPN-000187 (Sept. 1, 2021); MORSE_000029-000032.

67.     Aitkens is a tribal member and had tribal tags on his car. Kenneth Aikens, Certificate of Degree of Indian Blood, PBPN-000808 (Sept. 10, 2025); Kenneth Aikens, Prairie Band Potawatomi Nation, Titles and Registration, PBPN-000809 (Oct. 15, 2021).

68.     In response to this incident, on September 1, 2021, Sheriff Morse stated in an email to Chief Clark that "unless the road is completely shut down, all Kansas statutes still apply." Email from Sheriff Tim Morse to Chief Terry Clark, PBPN-000187 (Sept. 1, 2021).

**b.**     The parties have stipulated to the admissibility of the following exhibits for

purposes of summary judgment:

      **i.**     Documents disclosed and produced by Plaintiff Nation pursuant to Rule 26.

          1)     PBPN-000001-PBPN-000009 - PBPN-BIA Cross-deputization agreement
          2)     PBPN-000010-PBPN-000029 – PBPN-Kansas Tobacco Compact
          3)     PBPN-000030-PBPN-000074 – JCSO 2023 Annual Report
          4)     PBPN-000075-PBPN-000086 – PBPN Law Enforcement Narratives regarding May 28, 2026 Snak Atak incident

5)   PBPN-000087-PBPN-000099 – Snak Atak PBPN Tax Commission Application materials

6)   PBPN-000100-PBPN-000101 – Cease and Desist Order

7)   PBPN-000102-PBPN-000103 - Chapter 13 PBPN Code – Business Licenses

8)   PBPN-000104-PBPN-000109 – PBPN Law Enforcement personnel files

9)   PBPN-000110-PBPN-000141 – PBPN Tribal Court pleadings

10)  PBPN-000142-PBPN-000244 – PPBN Law Enforcement personnel files

11)  PBPN-000245 – Snak Atak – Kansas Cigarette Retailer License

12)  PBPN-000246 – Kansas law on PBPN tobacco compact

13)  PBPN-000247-PBPN-000248 – Letter from Sheriff Morse to Chief Clark regarding traffic stop

14)  PBPN-000249-PBPN-000286 – PBPN Tax Commission Snak Atak licensing materials

15)  PBPN-000287-PBPN-000293 – Email chain from County Attorney regarding Snak Atak incident

16)  PBPN-000294-PBPN-000560 – PBPN personnel files

17)  PBPN-000561-PBPN-000566 – PBPN Tribal Court pleadings

18)  PBPN-000567 – Snak Atak counsel letter to PBPN Tax Commission

19)  PBPN-000568-PBPN-000571 – Kansas Revenue Ruling

20)  PBPN-000572 - Snak Atak counsel letter to PBPN Tax Commission

21)  PBPN-000573-PBPN-000575 – PBPN Gaming Commission Order to Snak Atak to Cease and Desist

22)  PBPN-000576-PBPN-000579 - Snak Atak counsel letters to PBPN Tax Commission

23)  PBPN-000580-PBPN-000583 – Kansas Revenue Ruling

24)  PBPN-000584-PBPN-000587 - Snak Atak counsel letters to PBPN Tax Commission

25)  PBPN-000588-PBPN-000591 – Kansas Revenue Ruling

26)  PBPN-000592 – Snak Atak counsel letter to PBPN Tax Commission

27)  PBPN-000593-PBPN-000597 – PBPN Tax Commission Snak Atak licensing materials

28)  PBPN-000598-PBPN-000599 – Kansas motor fuel licensing information

29)  PBPN-000600-PBPN-000604 – PBPN Tax Commission Snak Atak licensing materials

30)  PBPN-000605-PBPN-000606 – Kansas motor fuel licensing information

31)  PBPN-00060 – PBPN tribal court Notice of Hearing

32)  PBPN-000608 – Email from Sheriff Morse to Chief Clark re O Road parking incident

33)  PBPN-000609-PBPN-000618 – PBPN tribal court pleadings

34)  PBPN-000619-PBPN-000620 – PBPN Tribal Council liquor license resolution for Snak Atak

35)     PBPN-000621-PBPN-000629 – PBPN personnel files
36)     PBPN-000630-PBPN000635 – PBPN Tax Commission Exclusion Complaint Form
37)     PBPN-000636-PBPN-000674 – PBPN personnel files
38)     PBPN-000675-PBPN-000676 - Letter from Sheriff Morse to Chief Clark regarding traffic stop
39)     PBPN-000677-PBPN-000683 – PBPN Tax Commission Snak Atak licensing materials
40)     PBPN-000684 - Kansas Cigarette Retailer License
41)     PBPN-000685-PBPN-000730 – PBPN personnel files
42)     PBPN-000731.mp4 – Derek Martinez body camera
43)     PBPN-000732.mp4 – Derek Martinez body camera
44)     PBPN-000733.mp4 – Michael Barnhart body camera
45)     PBPN-000734.mp4 – Michael Barnhart – body camera
46)     PBPN-000735.mp4 – Michael Barnhart – body camera
47)     PBPN-000736.mp4 – Michael Barnhart – body camera
48)     PBPN-000737.mp4 – Terry Clark – body camera
49)     PBPN-000738.jpeg – Photograph of Snak Atak visit
50)     PBPN-000739.jpeg - Photograph of Snak Atak visit
51)     PBPN-000740.jpeg - Photograph of Snak Atak visit
52)     PBPN-000741-PBPN-000747.pdf – Title 1 Prairie Band Law and Order Code
53)     PBPN-000748 - PBPN-000807.pdf – Title 10 Prairie Band Law and Order Corde
54)     PBPN-000808.pdf – Kenneth Aitkens PBPN membership information
55)     PBPN-000809.pdf – Kenneth Aitkens PBPN tribal car tags information
56)     The Court File for *Prairie Band Potawatomi v. Wamego Store LLC, 2024-OT-0013-CV*, inclusive of the following:

    1)     PBPN - 000810 - PBPN - 000815.pdf – Exclusion Complaint Form
    2)     PBPN - 000816.pdf – Notice of Hearing
    3)     PBPN - 000817 - PBPN - 000832.pdf - Complaint
    4)     PBPN - 000833 - PBPN - 000834.pdf – Proof of Service
    5)     PBPN - 000835.pdf – Notice of Hearing
    6)     PBPN - 000836 - PBPN - 000838.pdf – Order of Exclusion
    7)     PBPN - 000839 - PBPN - 000840.pdf – Proof of Service
    8)     PBPN - 000841 - PBPN - 000842.pdf – Notice of Appeal
    9)     PBPN - 000843 - PBPN - 000874.pdf – Motion to File Answer Out of Time
    10)     PBPN - 000875.pdf – Snak Atak counsel letter
    11)     PBPN - 000876 - PBPN - 000879.pdf – Kansas Revenue Ruling
    12)     PBPN - 000880.pdf – Snak Atak counsel letter

16

13) PBPN - 000881 - PBPN - 000883.pdf – PBPN Gaming Commission Cease and Desist Order
14) PBPN - 000884.pdf – Snak Atak counsel letter
15) PBPN - 000885 - PBPN - 000892.pdf – Snak Atak counsel letters
16) PBPN - 000893 - PBPN - 000900.pdf – Snak Atak counsel letters
17) PBPN - 000901.pdf – Snak Atak counsel letter
18) PBPN - 000902 - PBPN - 000920.pdf – Response to Motion for Leave to File Answer Out of Time
19) PBPN - 000921 - PBPN - 000926.pdf - Order
20) PBPN - 000927 - PBPN - 000991.pdf – Notice of Tax Liens
21) PBPN - 000992.pdf – Order Accepting Notice of Tax Liens
22) PBPN - 000993 - PBPN - 000995.pdf - Order for Execution
23) PBPN - 000996 - PBPN - 001039.pdf – Inventory
24) PBPN - 001040 - PBPN - 001088.pdf – Notice of Forfeiture

**ii.** Documents disclosed and produced by Defendant Sheriff Morse pursuant to Rule 26 and in response to discovery

1) MORSE_000001 - 2024.05.28 Whelpley 316 Call History
2) MORSE_000002-000008 - 2024.05.31 Email re Jackson County Sheriff Interfering with Nation's Jurisdiction_Redacted
3) MORSE_000009-000010 - 2024.05.28 Martinez 315 Call History
4) MORSE_000009-000010 - 2024.05.28 Martinez 315 Call History
5) Recordings of telephone calls and radio traffic with dispatch.
   1) MORSE_000011 - 20240528-174647230-Console-1-3bhrTEoG.wav
   2) MORSE_000012 - 20240528-174828039-800-1-ikaSI9cW.wav
   3) MORSE_000013 - 20240528-174849131-800-1-CCzaoBhi.wav
   4) MORSE_000014 - 20240528-174904989-800-2-g7glg2tV.wav
   5) MORSE_000015 - 20240528-174936723-800-2-9fy9x2ie.wav
   6) MORSE_000016 - 20240528-174947518-800-1-PYtQsgBT.wav
   7) MORSE_000017 - 20240528-175013735-Console-1-H1luffcb.wav
   8) MORSE_000018 - 20240528-175046560-Console-2-Fc2VjcfV.wav
   9) MORSE_000019 - 20240528-175221574-800-1-G68f9iuY.wav
   10) MORSE_000020 - 20240528-175322929-Console-2-cvDUha4E.wav

11) MORSE_000021 - 20240528-175845232-800-1-clCNnjHd.wav

12) MORSE_000022 - 20240528-180805335-800-1-BINqmeUP.wav

13) MORSE_000023 - 20240528-180812278-800-1-axgK1BbG.wav
MORSE_000024 - 20240528-182923704-800-1-2thgE6GT.wav

6) Body Cam Videos

1) MORSE_000025 - Bryce Whelpley_20240528_01_44_WFC1-059671_UNCATEGORIZED_243383882.ts
MORSE_000026 - Bryce Whelpley_20240528_05_59_WFC1-059671_Misc_243414534.ts

2) MORSE_000027 - Jose Martinez_20240528_05_59_WFC1-125124_Suspicious Behavior_76961739.ts

3) MORSE_000028 - Travis Debarge_20240528_01_44_WFC1-060563_None_301312269.ts

7) MORSE_000029-000032 - Parking Incident

8) MORSE_000033-000034 - Employee's 2021-2025

9) MORSE_000035-000039 Text Messages 1-5

**iii.** All deposition exhibits from the depositions of:

1) Bethany Streeter,

2) Tonya Negonsott-Rodvelt

3) Chief Terry Clark, and

4) Sheriff Tim Morse

**iv.** Prairie Band Potawatomi Nation Law Code Chapters:

1) Chapter 1-1 APPLICATION OF CODE

2) Chapter 10-1 PRAIRIE BAND POTAWATOMI TAX COMMISSION DESIGNATED AS TAXING AUTHORITY

3) Chapter 10-2 TRIBAL TOBACCO EXCISE TAX

4) Chapter 10-3 SALES TAX

5) Chapter 10-4 EARNINGS TAX

6) Chapter 10-5 ECONOMIC DEVELOPMENT TAX

7) Chapter 10-6 MOTOR FUEL TAX

8) Chapter 10-7 FRANCHISE CODE

9) Chapter 10-8 TRANSIENT GUEST TAX

10) Chapter 13-1 LEGISLATIVE FINDINGS AND PURPOSE

11) Chapter 13-2 BUSINESS LICENSES

12) Chapter 13-3 SANCTIONS

13) Chapter 13-4 NON-PROFIT CORPORATIONS
14) Chapter 14-1 EXCLUSION
15) Chapter 29-1 LIQUOR CONTROL ORDINANCE GENERAL PROVISIONS (also published at 75 Fed. Reg. 22,419 (Apr. 28, 2010)).

v.    Responses to Requests for Admission and Responses to Interrogatories

3.    **FACTUAL CONTENTIONS.**

a.    **Plaintiff's Factual Contentions.**

1.    *Sheriff Morse unlawfully interfered with the Nation's exercise of its civil-regulatory jurisdiction at Snak Atak on May 28, 2024.*

Under federal common law, Indian tribes possess civil-regulatory jurisdiction over non-Indians on their reservations who enter into a consensual relationship with the tribe or whose action threatens or has some direct effect on the tribe's political integrity, economic security, health or welfare. *Montana v. United States*, 450 U.S. 544, 565–566 (1981).

In this case, Snak Atak, a non-Indian owned convenience store located on fee land within the Prairie Band's Reservation, consented in writing to the Prairie Band's regulation. Its consent extended to liquor sales, motor fuel sales, tobacco sales, general business conduct, and taxation. Sheriff Morse attempted to interfere with the Nation's exercise of civil-regulatory jurisdiction over Snak Atak by instructing a Snak Atak agent to tell the Nation's officials to leave when they conduct civil-regulatory inspections. Sheriff Morse then told the Nation's officials they could be arrested for criminal trespassing when they were carrying out their civil-regulatory duties.

Federal law delegates regulation of liquor sales on the Reservation to the Nation and the State of Kansas. Anyone selling alcohol on the Reservation must comply with both state and tribal law. *United States v. Mazurie*, 419 U.S. 544 (1975); 18 U.S.C. § 1161. And the Tobacco Compact between the State of Kansas and the Nation recognizes that the Nation regulates all tobacco sales on the Reservation. *See* Compact Relating to Cigarette and Tobacco Sales, Taxation and Escrow

Collection between the State of Kansas and the Prairie Band Potawatomi Nation, 4.01(a) (Feb. 17, 2016). Thus, Snak Atak—which lies within the Reservation boundary—was subject to the Nation's regulation of liquor sales and tobacco sales at the very least. And the Sheriff, as the Chief law enforcement officer in the County, should have been aware of those facts.

Moreover, Snak Atak expressly agreed to submit to the Nation's civil-regulatory jurisdiction when it applied for (and received) a business license, a tobacco retailer license, a motor fuel retailer license, and a liquor retailer license from the Nation. Yet, when the Nation's Tax Commission officials visited Snak Atak to inspect tax stamps on tobacco products, for example, Snak Atak routinely denied them access. The final time this occurred, on May 28, 2024, the Nation's Tax Commission officials, together with Nation law enforcement officers (who were present to assist the Tax Commission officials in their civil-regulation of Snak Atak) left Snak Atak, went to the Tax Commission, and obtained a Cease and Desist Order directing Snak Atak to cease its operations and providing Snak Atak with an appeal process. The Tax Commission officials, also on May 28, 2024, went back to Snak Atak (with Nation law enforcement officers) to serve the Cease and Desist Order.

During this visit, three Sheriff's deputies from the Jackson County Sheriff's Office arrived at Snak Atak in three Jackson County Sheriff vehicles. The deputies stayed on the scene the entire time the Nation's officials were present. Chief Clark of the Nation's police department (who was present at Snak Atak) called Sheriff Morse to explain that the Nation's officials were at Snak Atak to serve a Cease and Desist Order, which was a civil-regulatory process. Yet, the Sheriff told Chief Clark that if Snak Atak asked them to leave and they did not leave, they could be arrested for criminal trespass. Rather than escalating the situation into a standoff between two law enforcement agencies, Chief Clark served the Cease and Desist Order on Snak Atak and the Nation's officials

left.

At any time before the May 28, 2024, Snak Atak incident, Sheriff Morse could have asked Chief Clark or the Nation's Tax Commission whether Snak Atak was licensed by the Nation or had consented to the Nation's civil-regulatory jurisdiction. He would have found out immediately that it had. Yet, he did not bother to reach out to the Nation. Furthermore, Sheriff Clark used to be a Prairie Band Potawatomi Nation police officer and was familiar with Nation's constitution, laws, and Tax Commission.

When Chief Clark told Sheriff Morse on their phone call during the May 28, 2024 Snak Atak incident that Snak Atak had obtained a business license from the Nation, it seemed to make no difference to the Sheriff. Importantly, Chief Clark immediately told Sheriff Morse at the very beginning of the call that the Tribe had issued Snak Atak a business license. Even after learning that fact, Sheriff Morse insisted that if Snak Atak asked the Nation officials to leave and they did not leave they could be arrested for criminal trespass. This concept flies in the face of federal Indian law, which recognizes the Nation's civil-regulatory jurisdiction over Snak Atak and does not allow the Sheriff to arrest (or threaten to arrest) Nation officials engaged in their official civil-regulatory duties at Snak Atak.

To be clear, while Chief Clark and two other Nation police department officers were on the scene at Snak Atak, they were only there on a civil stand-by basis to keep the peace and to support the Nation's Tax Commission officials' service of the Cease and Desist Order. The Nation's police department was not exercising criminal jurisdiction over Snak Atak or anyone at Snak Atak during this visit, and there is no evidence that proves otherwise.

Weeks before the May 28, 2024 visit to Snak Atak by Nation officials, Tim Lenz, a friend of Sheriff Morse who knew the Snak Atak principals, contacted Sheriff Morse and asked him to

get in touch with Amit Mishra because the Nation was harassing Mishra's business on the Reservation, Snak Atak. Lenz wanted the Sheriff to intervene on behalf of the Snak Atak owners against the Nation. Sheriff Morse visited with Mishra during an onsite visit to the Snak Atak, and also over the phone and via text messages, in the days and weeks leading up to the May 28, 2024 Snak Atak incident.

Mishra supposedly told Sheriff Morse, untruthfully, that Snak Atak had not signed an agreement of any sort with the Nation, and Sheriff Morse claims to have incorrectly understood this to mean that the Nation had no civil-regulatory jurisdiction over Snak Atak. Sheriff Morse told Mishra that Snak Atak was not on tribal property and recommended that Mishra tell the Nation officials to leave when they visit Snak Atak.

Around the Jackson County Sheriff's Office, the Sheriff had conversations with the head of the dispatch office and others about what he wanted to do to protect Snak Atak from the Nation. These conversations circulated through the office and left the impression with at least one dispatcher that Sheriff Morse wanted the tribal officials to be arrested when they visited Snak Atak on May 28, 2024. This dispatcher, Bethany Streeter, said on a dispatch call to a deputy on May 28, 2024, "Anyways, its tribal PD out there [at Snak Atak], and we were told by Tim [Sheriff Morse] to arrest them if they refused to leave." Dispatch recording (May 28, 2024), MORSE-000017.

Sheriff Morse was convinced—incorrectly and without checking details or consulting counsel—that the Nation lacked civil-regulatory jurisdiction over Snak Atak, and he believed he could stop the Nation's officials from even visiting Snak Atak by threatening to arrest them for criminal trespass once a Snak Atak manager or employee asked the Nation officials to leave and they did not leave. Sheriff Morse even set this plan in motion by telling Mishra to "ask them to leave" when the Nation officials next visited Snak Atak. Text message from Sheriff Morse to Amit

Mishra (May 28, 2024, 8:15 a.m.), MORSE-000036. However, no one from Snak Atak asked the Nation's officials to leave during either of the Nation's officials' two visits to Snak Atak on May 28, 2024.

The events unfolding at Snak Atak during the Nation's visit in the late afternoon of May 28, 2024, also indicated that the Nation officials could be at risk of arrest for exercising their civil-regulatory jurisdiction over Snak Atak. Two Jackson County Sheriff's deputies and a sergeant arrived at Snak Atak right after the Nation officials arrived to serve the Cease and Desist Order. These three Jackson County Sheriff's officers arrived in three separate marked vehicles and stayed onsite until the Nation officials left.

After Sheriff Morse told Chief Clark that the Nation officials could theoretically be arrested for criminal trespass if they were asked to leave and did not leave—and considering the show of force made by the Sheriff's Office at Snak Atak—the Nation officials were rightfully concerned about the situation escalating into them being arrested for criminal trespass. The Nation officials, therefore, decided to serve the Cease and Desist Order and leave. But the Sheriff's threat interfered with the Nation's exercise of its civil-regulatory jurisdiction. If a local or state law enforcement officer can arrest tribal officials engaged in the lawful exercise of civil-regulatory jurisdiction for criminal trespass, then tribal civil-regulatory jurisdiction does not exist in any meaningful sense.

   2.   *Sheriff Morse unlawfully exercised civil-regulatory jurisdiction over a tribal member on the Reservation.*

On August 26, 2021, Jackson County Sheriff's Deputy Kendal Grimm told Nation tribal member Kenneth Aitkens that if he did not move his car from the side of the road, the Deputy would have it towed. The car was parked alongside O Road on the Reservation near the Nation's hemp processing facility. Aitkens' car had a Prairie Band license plate. Parking violations and towing cars are both civil-regulatory in nature. They are not civil-prohibitory or criminal in nature.

Under federal case law, states lack civil-regulatory jurisdiction over tribal members on a reservation. While Sheriff Morse does have criminal jurisdiction on the Reservation, nothing gives him civil-regulatory jurisdiction over tribal members on the Reservation.

Federal law prohibits the Sheriff from issuing parking tickets and threatening to tow Nation member's vehicles on the Reservation. Such actions infringe the Nation's right to make its own laws and be ruled by them. *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 142-43 (1980). The incident described above in which a Jackson County Sheriff's Deputy directed a tribal member with a tribally tagged vehicle to move his car or get towed constitutes an unlawful exercise of state civil-regulatory jurisdiction over a Nation member, and Nation property, on the Reservation, which federal law prohibits.

**b.    Defendant's Factual Contentions.**

Sheriff Tim Morse generally denies Plaintiff's contentions that he interfered with the Nation's exercise of civil-regulatory jurisdiction.

Sheriff Morse is the duly elected and acting Sheriff of Jackson County Sheriff. State officials, including Sheriff Morse, have jurisdiction throughout Jackson County including the Tribe's Reservation. Fundamentally, Sheriff Morse has the authority and jurisdiction to do anything on the Reservation that he can do off the Reservation but within Jackson County. This includes the power over persons and property as necessary to preserve the peace, to serve civil and criminal process, to execute writ issued by duly constituted and authorized courts, and to enforce Kansas statutes pertaining to the regulation of traffic, vehicle safety, driving under the influence of alcohol or drugs, abandoned or disabled vehicles, the Uniform Act Regulating Traffic, and to enforce the Kansas Criminal Code (K.S.A. Chapter 21). There are public highways that cross the Reservation, including four miles of U.S. Highway 75. Sheriff Morse and his deputies are authorized and have jurisdiction to enforce all provisions of Kansas Statutes Annotated Chapter 8

(pertaining to automobiles and other vehicles) in Jackson County, whether on the Reservation or off of the Reservation. The exercise of this authority and jurisdiction on the Reservation does not directly affect the Tribe's political integrity, economic security, health, or welfare.

The Prairie Band Potawatomi Nation Reservation is in Jackson County, Kansas. The Reservation is a square eleven miles on each side. The Reservation is bounded by F Road on the west, Q Road on the east, 118th Road on the south, and 206 Road on the north.

The United States Constitution allows a State to exercise jurisdiction in Indian country. Indian country is part of the State, not separate from the State. Unless preempted, States have civil and criminal jurisdiction in Indian country. Sheriff Morse and his deputies have the authority and jurisdiction in Jackson County (on and off the Reservation) under (1) the 1861 Act for Admission of Kansas into the Union, 12 Stat. 127, (2) the Kansas Constitution, (3) Kansas statutes, and (4) the Kansas Act of 1940, 18 U.S.C. § 3243.

The treaties between the United States and the Prairie Band of Potawatomie do not exclude any Indian lands from Kansas' boundaries. *See* Treaty with the Potawatomi Nation, 1846., 9 Stat. 853; Treaty with the Potawatomi, 1861, 12 Stat. 1191; and Treaty with the Potawatomi, 1867, 15 Stat. 531.

### *Sheriff Morse did not interfere with the Tribe's civil-regulatory jurisdiction.*

With respect to the claim of interference with civil-regulatory jurisdiction over the Snak Atak, Sheriff Morse had personal information regarding non-tribal operators of convenience stores on the Reservation: Kathy's General Store, previously owned by Kathy Kaul Kennedy, and the Indian County Store (which later became the Snak Atak). Both businesses were eventually closed with resulting tax warrants and seizures arising from the non-payment of taxes to the State of Kansas. Sheriff Morse generally understood from Kansas Department of Revenue Ruling 19-2002-

1, that non-tribally owned businesses within the reservation must pay taxes to the State of Kansas excepting sales to Qualified Indians who reside on the Reservation.

The owners and/or managers of the Snak Atak complained to Sheriff Morse that they were being "harassed" by Tribal Officials who were trying to get them to pay taxes to the Nation rather than the State of Kansas. Sheriff Morse inquired of whether the Snak Atak had signed any agreement with the Nation and was given the adamant response that they had not signed any agreement with the Tribe. Sheriff Morse encouraged the Snak Atak to contact their lawyer, the Kansas Attorney General's Office, the Kansas Department of Revenue, and the County Commission.

On May 28, 2024, Amit Shaw of the Snak Atak called the Sheriff's Office about 1:44 p.m. and reported that Tribal Officials were present and harassing them. Sheriff's Deputies responded but arrived after the Tribal Official had left the store. At about 5:45 p.m., Amit Shaw again called Sheriff Morse and, in an excited voice, reported that Tribal Officials were present and threatening to chain the doors of the Snak Atak. Sheriff Morse was, at the time, leaving the office for his home and drove home after the call. The Snak Atak on-duty manager also called the Sheriff's Dispatch and requested assistance. Deputies were dispatched and responded to the Snak Atak.

Tribal Police Chief Terry Clark called Sheriff Morse and advised he was present to keep the peace and serve a cease and desist order to the Snak Atak. Sheriff Morse questioned the Tribe's authority to tax the Snak Atak and advised Chief Clark that (1) if he (Chief Clark) did not believe the plan to be "legit," and (2) if the store owners asked that Tribal Officials to leave the premises and if the Tribal Officials refused to leave the premises, they could theoretically be trespassing and subject to arrest. Chief Clark informed Sheriff Morse that they had not been asked to leave. Sheriff Morse did not threaten to arrest any Tribal Officials or Officers. Tribal Officials or Officers

served the cease and desist order and departed the premises.

Tribal Officials later filed a complaint for exclusion of the Snak Atak and secured an order and writ of execution to secure the business location, including but not limited to, authorization to chain doors and place barricades to prevent access to the business location.

After the events of May 28, 2024, Sheriff Morse learned that the Snak Atak had signed agreements submitting to the jurisdiction of the Tribe.

**No parking citation was issued, but a citation was threatened.**

At approximately 8:00 a.m. on August 26, 2021, Jackson County Sheriff's Deputy Kendal Grimm found a 2003 Toyota Avalon registered to Kenneth Aitkens parked in the roadway on O Road. Aitkens was a tribal employee at a hemp production facility within the Reservation. Deputy Grimm believed Aitkens' vehicle was a road hazard as it was over a crest of the hill and asked Aitkens to park the vehicle on the shoulder and off the roadway. Aitkens refused to move the vehicle. Deputy Grimm told Aitkens he would have the vehicle towed if Aitkens did not move the vehicle. Deputy Grimm requested assistance, and Sgt. Matthew Honas was dispatched to the location. After Sgt. Honas was in route and after Aitkens had called someone, Aitkens elected to move his vehicle. Deputy Grimm cleared the scene at about 8:16 a.m. Aitkens is a tribal member and had tribal tags on his car. After an inquiry from Chief Clark regarding this incident, on September 1, 2021, Sheriff Morse stated in an email to Chief Clark that "unless the road is completely shut down, all Kansas statutes still apply."

4.    **LEGAL CLAIMS AND DEFENSES.**

a.    **Plaintiff's Claims.**

Plaintiff asserts that it is entitled to recover upon the following theories:

      i.    Plaintiff seeks declaratory judgment that Sheriff Morse exceeded his authority by interfering with the Nation's exercise of its civil-regulatory jurisdiction over Snak Atak. (Count I of the Amended Complaint.)

      ii.     Plaintiff seeks a declaratory judgment that Sheriff Morse, through his deputies, wrongfully exercised civil-regulatory jurisdiction by issuing parking violations and threatening to tow vehicles within the Reservation within the Reservation (Count II of the Amended Complaint).

      iii.    Plaintiff seeks permanent injunctive relief prohibiting Sheriff Morse from interfering in the Nation's lawful exercise of its civil-regulatory jurisdiction within the Reservation and prohibiting the Defendant from exercising civil-regulatory jurisdiction within the Reservation.

**b.**    **Defendant's Defenses.**

Defendant asserts the following defenses:

      i.      The Tribe lacks standing for Count I because it did not suffer an injury in fact, (2) that is fairly traceable to the challenged conduct of Sheriff Morse, or (3) that is likely to be redressed by a favorable judicial decision.

      ii.     Sheriff Morse did not interfere with the Nations exercise of civil-regulatory authority.

      iii.    The exercise of authority on the Reservation over persons and property as necessary to preserve the peace is not an interference with the Nation's civil-regulatory authority and does not impinge upon tribal attributes of sovereignty over tribal members and tribal territory.

      iv.    The enforcement of state vehicle and traffic laws by Sheriff Morse and his deputies on the Reservation does not impinge tribal attributes of sovereignty over tribal members and tribal territory.

      v.     The occurrence at the Snak Atak, while not unlawful, was a one-off event unlikely to occur again. There is no threatened injury that is certainly impending nor is there is a '"substantial" risk that the alleged harm will occur again.

      vi.    Sheriff Morse and his deputies have jurisdiction to issue parking citations on the Reservation.

**5.**    **DAMAGES AND NON-MONETARY RELIEF REQUESTED.**

There is no claim for monetary damages. Plaintiff requests the following non-monetary relief:

a.     Under Count I, a declaration that the Defendant lacked authority to interfere with the Nation's exercise of its civil-regulatory jurisdiction on May 28, 2024, at Snak Atak;

b.     Under Count II, a declaration that the Defendant lacks civil jurisdiction within the Reservation, including jurisdiction to issue parking tickets and threatening to tow vehicles within the Reservation; and

c.     Under Count III, a permanent injunction prohibiting the Defendant from interfering in the lawful exercise of the Nation's civil-regulatory jurisdiction within the Reservation and prohibiting the Defendant from exercising civil-regulatory jurisdiction within the Reservation.

Plaintiff also requests an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**6.     AMENDMENTS TO PLEADINGS.**

None.

**7.     DISCOVERY.**

Under the scheduling order and any amendments, all discovery was to have been completed by December 31, 2025.  Discovery is complete.

Unopposed discovery may continue after the deadline to complete discovery so long as it does not delay briefing or ruling on dispositive motions or other pretrial preparations.  Although discovery may be conducted beyond the deadline to complete discovery if all parties agree to do so, under these circumstances the court will not be available to resolve any disputes that arise during the course of such extended discovery.

**8.     MOTIONS.**

**a.     Pending Motions.**

None pending.

**b.     Additional Pretrial Motions.**

After the pretrial conference, the parties intend to file the following motions:

Both parties plan to file motion for summary judgment.

The dispositive-motion deadline, as established in the scheduling order and any amendments, is **February 13, 2026**.  The parties should follow the summary-judgment guidelines on the court's website:

https://ksd.uscourts.gov/sites/ksd/files/Summary-Judgment-Guidelines%202023.pdf

Principal briefs in support of, or in response to, summary judgment motions must not exceed 40 pages and replies must not exceed 15 pages.  *See* D. KAN. RULE 7.1(d)(2).  Any motion to exceed these page limits or for an extension of briefing deadlines must be filed at least three days before the brief's filing deadline.  *See* D. KAN. RULE 6.1(a), 7.1(d)(4).

        **c.**      **Motions Regarding Expert Testimony.**

Not applicable, *i.e.*, the parties have stipulated that no expert testimony will be used in this case.

**9.**      **TRIAL.**

The trial docket setting, as established in the scheduling order and any amendments, is **July 1, 2026, 9:00 a.m., in Topeka, Kansas**.  This case will be tried by the court sitting without a jury.  Trial is expected to take approximately **2** days.  The court will attempt to decide any timely filed dispositive motions approximately 60 days before trial.  If no dispositive motions are timely filed, or if the case remains at issue after timely dispositive motions have been decided, then the trial judge may enter an order or convene another pretrial conference to set deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

**10.**      **ALTERNATIVE DISPUTE RESOLUTION (ADR).**

The status of settlement negotiations is as follows: The parties engaged in a settlement conference with Judge James P. O'Hara on December 17, 2024.  The parties currently believe the

prospects for settlement of this case are poor and they do not believe that further court-ordered ADR would be helpful.

The parties are reminded that, under D. Kan. Rule 40.3, they must immediately notify the court if they reach an agreement that resolves the litigation as to any or all parties.  Jury costs may be assessed under this rule if the parties do not provide notice of settlement to the court's jury coordinator at least one full business day before the scheduled trial date.

**IT IS SO ORDERED.**

Dated: January 20, 2026, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge