# EXHIBIT 1

## INTER-GOVERNMENTAL CROSS DEPUTIZATION AGREEMENT OF 199 9
## FOR LAW ENFORCEMENT IN THE Prairie Band of Potawatomi TRIBE

**WHEREAS**, the United States Congress has authorized the Secretary of the Interior, acting through the Bureau of Indian Affairs (hereinafter "BIA"), to enter into agreements with Indian tribes to aid in the enforcement or carrying out in Indian country of laws of either the United States or Indian tribes, pursuant to the Indian Law Enforcement Reform Act, 25 U.S.C. §§ 2801, *et seq.*, Public Law 101-379, 104 Stat. 473; and

**WHEREAS**, the Prairie Band of Potawatomie (hereinafter "TRIBE") has enacted legislation authorizing designated tribal representatives to enter into and execute a cross-deputization agreement with the Bureau of Indian Affairs, subject to any conditions and limitations set forth in said legislation, a copy of which is attached hereto; and

**WHEREAS**, it is in the best interest of the United States of America and the TRIBE that they declare and agree that each party under this Agreement shall fully cooperate with the other to provide efficient, effective and thorough law enforcement and crime prevention to all residents in Indian country within the TRIBE'S jurisdiction.

**NOW, THEREFORE,** the U.S. Department of Interior through the Bureau of Indian Affairs, and the undersigned TRIBE hereby enter into this Inter-Governmental Cooperative Agreement of 1999.

### Section 1. Purpose

The purpose of this Inter-governmental Cross-Deputization Agreement is to:

A. Provide for the cross-deputization of law enforcement officers employed by the parties hereto; and

B. Authorize commissioned officers to provide law enforcement services and make lawful arrests in Indian country within the geographic area of the TRIBE; and

C. Authorize commissioned law enforcement officers to react immediately to observed violations of the law and other emergency situations regardless of whether such occurrences violate the criminal statutes of the United States and/or the TRIBE; and

D. Provide for efficient, effective and cooperative law enforcement efforts in Indian country in the geographic area of the TRIBE within the State of Kansas; and

E. Eliminate the uncertainties which have caused reluctance among various law enforcement

1

PBPN-000001

agencies to provide services in Indian country for fear of being subjected to tort and civil rights suits as a consequence of the good-faith errors of officers making arrests, or quelling disturbances in Indian country; and

F. Provide comprehensive law enforcement protection to citizens of the State of Kansas and the TRIBE in Indian country within the geographic area of the TRIBE including but not limited to responding to observed violations of the law, effecting arrests, responding to calls for assistance, performing investigations and providing other assistance such as dispatching and detention.

## Section 2. Definitions

A. "Agency" wherever used herein shall mean the BIA or tribal law enforcement agency. "Commissioning agency" means the agency which issues a law enforcement commission to an officer of the other agency.

B. "Agreement" wherever used herein shall mean this Inter-governmental Cooperative Agreement.

C. "BIA" wherever used herein shall mean the Bureau of Indian Affairs.

D. "BIA Police" wherever used herein shall mean the Bureau of Indian Affairs police.

E. "Federal Offense" wherever used herein shall mean an offense against the laws of the United States, including violation of any applicable criminal provisions in 25 CFR Part 11 and any other applicable Federal regulations relating to part or all of Indian country.

F. "Officer" wherever used herein shall mean a law enforcement officer.

G. "Party" wherever used herein shall mean one of the two parties to this agreement.

H. "Prosecutor" wherever used herein shall mean a person by whom criminal proceedings are instituted or conducted.

I. "The TRIBE's Indian country" wherever used herein shall mean Indian country as defined by 18 U.S.C. § 1151 located within the TRIBE's geographical boundaries.

J. "Tribal Police" wherever used herein shall mean the law enforcement department of the TRIBE as established by law of the TRIBE.

## Section 3. Term; Termination; Amendments

A. The initial term of this Agreement shall be for a period of two (2) years commencing on the initial effective date as described in Section 13 of this Agreement. Thereafter, this Agreement

2

shall be automatically renewed for successive one (1) year periods unless thirty days prior to a renewal date either party gives notice to the other party that this Agreement will not be renewed, in which case the Agreement shall be terminated.

B. Either party may terminate this Agreement, with or without cause, upon giving the other party sixty (60) days' written notice of termination. Such notice shall be served by certified mail and shall be deemed served on the date the notice is deposited, postage prepaid, in the U.S. mail.

C. This Agreement shall not be amended unless such amendment is in writing and executed by each party.

## Section 4.  Coordination; Supervision; Status of Parties

A. This Agreement shall be administered by the following designated coordinators for each party:

    BIA: Commander, District II, Office of Law Enforcement Services, BIA or authorized designee

    TRIBE: Chief of Police

B. Notwithstanding any other provision in this Agreement, the respective law enforcement agencies of the BIA and the TRIBE, including their agents, employees and insurers, shall not have the authority or any right whatsoever to control in any manner the day-to-day discharge of the duties and/or activities of the officers of the other agency who have been commissioned pursuant to Section 5 of this Agreement, unless said officers are acting pursuant to the granting agency's commission and under the authority of this Agreement. Nothing herein impairs or affects the existing status of each party nor the sovereignty of each government as established under the laws of the United States and the TRIBE.

## Section 5.  Commissions

A. Each agency may, in its discretion, issue special law enforcement commissions to law enforcement officers of the other agency upon the application for commissions for specified officers by the other agency. Such commissions shall grant the officers the same law enforcement authority as that of officers of the commissioning agency unless specifically limited by the terms of the commission. All commissions issued hereunder shall be in written form.

B. Officers shall not be automatically cross-deputized by virtue of the execution of this Agreement, but must be commissioned on an individual basis, upon application and approval of each officer's application by the commissioning agency;

C. Upon the granting of such application by the BIA as commissioning agency, the approved officer shall receive Deputy Special Officer (hereinafter "DSO") commissions from the BIA;

3

D. Upon the granting of such application by the TRIBE as commissioning agency, the approved officer shall receive Tribal Police commissions from the TRIBE.

## Section 6.  Commission Applicant Qualifications; Cards; Suspension or Revocation of Commission

A. A commission shall not be granted by the BIA unless:

     1. The applicant officer's agency has provided a satisfactory National Crime Information Center background check on the applicant officer; and

     2. The officer has complied with all of the prerequisites for appointment as a police officer as set forth in 40 Indian Affairs Manual Law Enforcement Handbook, Volume 1, Chapter 2, Section 4, as well as any other specific requirements of the BIA, which shall include the following minimum prerequisites:

    (a)    Is at least 21 years of age;

    (b)    Within the period immediately preceding the issuance of the commission, has passed his or her departments firearms qualifications and continues to be certified semi-annually;

    (c)    Has not ever been convicted of a felony nor, within the one year period immediately preceding the issuance of the commission, has not been convicted of misdemeanor offense, with the exception of minor traffic offenses, nor been convicted of a misdemeanor domestic violence preventing him or her from possessing a firearm in compliance with the Gun Control Act of 1968, and has not been the subject of a court order prohibiting him or her from possessing a firearm;

    (d)    Has no physical, emotional, or mental condition which might adversely affect his or her performance as an active law enforcement officer;

    (e)    Is a U.S. citizen, has a valid drivers license and a high school diploma or equivalent; and

    (f)    Meets State or Federal Peace Officer Standards and Training (POST) requirements for certification as a bona fide full-time peace officer and has written proof of such certification.

B. A commission shall not be granted by the TRIBE unless the officer has complied with each of the minimum prerequisites set forth in sub-section A.1. and A.2(a)-(f) above., and complies with any other specific requirements of the TRIBE.

4

PBPN-000004

C. The commissioning agency shall notify the applicant agency of the names of the officers receiving commissions hereunder.

D. Prior to receipt of a commission, each recipient officer shall agree in writing to assume the responsibility for returning the commission card to his or her agency immediately when one or more of the following conditions set forth in sub-section E.(1) through (7) of this Section occur.

E. An officer's agency shall secure and return the officer's commission card and any other evidence of the commission to the commissioning agency no later than ten days following actual knowledge of or receipt of notice of the occurrence of any one of the following events:

1. The officer transfers to an area or jurisdiction outside of the jurisdictional area of the TRIBE in the case of a tribal officer or outside the jurisdictional area of District II, Law Enforcement Services, BIA, in the case of a BIA officer.

2. The officer terminates employment as a full-time law enforcement officer of the agency for any reason.

3. The officer is suspended or terminated for any reason.

4. The officer is under indictment or has been charged with a crime other than a traffic offense.

5. The commissioning agency sends written notice to the officer and the officer's agency that it has exercised its sole discretion to suspend or revoke the officer's commission temporarily, indefinitely, or permanently. The decision of the commissioning agency to suspend or revoke a commission whether temporarily, indefinitely, or permanently shall be final.

6. The commission expires.

7. This Agreement is terminated for any reason pursuant to Section 3 of this Agreement.

F. The parties may independently or jointly evaluate the effectiveness of the use of special law enforcement commissions provided for herein. The parties shall cooperate in the investigation of any allegation that an officer commissioned by the other agency pursuant to Section 5 of this Agreement exceeded the authority given to the officer by the said commission.

## Section 7. Scope of Powers Granted

A. BIA officers who receive commissions from the TRIBE shall have authority to respond to observed violations of the law, and upon request, investigate offenses and enforce the criminal laws enumerated in the TRIBE's Law and Order Code and other laws of the TRIBE; except that BIA Police who are performing law enforcement for the TRIBE shall not need a commission from

5

the TRIBE in order to enforce 25 CFR Part 11 or any of the TRIBE'S criminal laws approved by the Secretary of Interior within the TRIBE'S Indian country at the TRIBE'S request, in the absence of a law enforcement contract or compact between the TRIBE and the Federal Government for performance of law enforcement functions pursuant to 25 U.S.C. § 450 *et seq.*.

B.  Officers of the TRIBE who receive BIA commissions shall have authority to perform any activity authorized under 25 U.S.C. § 2803(1)-(7).  Such officers shall assist the BIA and other Federal law enforcement officials in the prevention, detection, and investigation of a Federal "offense" as defined in the Indian Law Enforcement Reform Act, 25 U.S.C. § 2801 and Section 2.E of this agreement, within the TRIBE'S Indian country, including the following activities: conducting preliminary investigations, reporting potential crimes, apprehension of alleged offenders, detention and delivery of alleged offenders to appropriate authorities, securing crime scenes, contacting appropriate authorities, and notifying the Criminal Investigator of the BIA of all activities related to enforcement of such Federal laws and regulations.  Officers of the TRIBE who receive BIA commissions may also, when requested, assist any other Federal entity in the enforcement or carrying out of the laws or regulations the entity enforces or administers.

C.  Nothing in this Agreement shall make any law applicable to a certain person or certain conduct where it would not otherwise be applicable.  Accordingly, the purpose of this Agreement is to vest cross-deputized or commissioned officers with the authority to enforce only the applicable law(s).

D.  Nothing herein shall alter or convey any judicial jurisdiction or impair, limit or diminish the status of any party or agency or the sovereignty of any government.

### Section 8.  Arrest Procedure and Facilities; Transportation; Medical Treatment

A.  After lawful arrest by an officer commissioned pursuant to this Agreement, the prisoner shall be turned over to a responsible official of the United States, the BIA, or the TRIBE for purposes of detention and processing as provided for by the appropriate detention facility administrator unless otherwise provided by agreement.  Prisoners arrested under Federal authority shall be detained in a facility approved for said prisoners.

B.  The official determination of the correct jurisdictional authority for purposes of prosecution shall be made by the United States Attorney's Office, a Bureau of Indian Affairs Court of Indian Offenses prosecutor and/or the TRIBE's prosecutor.  Any necessary transfer of custody of the prisoner resulting from such determination shall be made at the earliest practicable time.  All evidence and investigatory reports and products shall be turned over to the proper authority at the earliest practicable time.  The prisoner shall be taken before a judge of the appropriate jurisdiction within forty-eight hours after the time of arrest.

C.  In the event that an Indian prisoner who is subject to federal or tribal court jurisdiction and is in the custody of either agency  requires medical treatment, the officers of said agency shall have the power and authority to transport such prisoner to the nearest Indian Health Service or a

6

PBPN-000006

tribal health care facility to avoid any significant medical expense. In cases of extreme emergency where it is not feasible or practicable to take the Indian prisoner to an IHS or tribal facility, the Indian prisoner may be treated at a local, federal or state health care facility as emergency needs dictate. In such emergency cases, the Indian prisoner, or an individual or agency acting on behalf of the Indian, or the medical care provider, within 72 hours after the beginning of the treatment for the condition or after admission to a health care facility, notify the nearest IHS facility of the fact of the admission or treatment, together with information necessary to determine the relative medical need for the services and the eligibility of the Indian for the services. Authorization for payment by IHS/Contract Health Services will be determined on the basis of medical priorities established by federal regulations and the Contract Health Services Program and is subject to availability of funds.

D. In the event it becomes necessary to provide guard security for an Indian prisoner subject to Federal or the TRIBE's jurisdiction at a health facility or any place other than jail facilities, officers of the BIA and the TRIBE shall have the power and authority to provide such service.

E. In the event an emergency mental or psychiatric condition arises with an Indian prisoner subject to Federal or the TRIBE's jurisdiction, officers of the BIA and the TRIBE shall have the power and authority to immediately take custody of said prisoner for appropriate action pursuant to applicable law.

## Section 9. Orientation, Technical Assistance and Training

A. Each agency is responsible for providing to its own full-time officers a thorough orientation regarding specific authority a holder of a commission is to exercise by virtue of the commission.

B. The TRIBE and the BIA shall ensure that each of its officers is qualified in the field of law enforcement and has a working knowledge of arrest procedure, rules of evidence, crime scene search, preservation of evidence, writing reports, testifying in court and related police and detention functions.

C. The designated coordinator for each party identified in Section 4 herein shall determine what other training or technical assistance is or may be required for that party's officers, particularly in the areas of jurisdiction and Federal laws.

D. The BIA may provide technical assistance and assist in providing in-house training to officers of the TRIBE, administrative personnel and others, depending upon availability of resources.

## Section 10. Conduct

Each agency will require each of its police officers who is issued a commission under this Agreement to follow a law enforcement code of conduct prescribed by the agency. The code will establish specific guidelines concerning conflicts of interest, employee conduct both on and off

7

duty, impartiality and thoroughness in performance of duty, and acceptance of gifts or favors. Each officer will acknowledge in writing that he or she has received and understands the code of conduct. The acknowledgment will remain on file with the officer's agency as long as the officer is employed with the agency. Additionally, training will be conducted on the code of conduct and ethics issues at least once a year in accordance with 25 CFR §12.51.

## Section 11. Liabilities and Immunities

A. While performing an official act for a commissioning agency under authority of a commission authorized by this Agreement, officers shall have the same powers as though employed by and shall be deemed to be acting within the scope of authority of the commissioning agency in whose or under whose territorial jurisdiction they are serving. Salaries, insurance and other benefits shall not be the responsibility of an agency that is not the employing agency for the officer. Each agency's property acquisition, possession and disposition shall be the separate responsibility of that agency.

B. An officer of the TRIBE holding a DSO commission while performing any official act for the purpose of federal law enforcement in the TRIBE's Indian country under authority of said commission shall be afforded all protections extended by the Indian Law Enforcement Reform Act, 25 U.S.C. § 2804, and other applicable Federal law.

C. A BIA officer holding a tribal commission while performing any official act for the purpose of tribal law enforcement in the TRIBE's Indian country under authority of said commission shall be afforded all protections allowed by applicable Federal and tribal law.

D. It is understood and agreed that the BIA and the TRIBE, and their agents, employees and insurers, do not, by virtue of this Agreement, assume any responsibility or liability for the actions of officers commissioned pursuant to this Agreement which are performed outside the scope of their duties.

E. Nothing in this Agreement shall be read as waiving or limiting any defenses to claims of liability otherwise available to law enforcement officers, such as the defense of qualified immunity.

F. Nothing in this Agreement shall be construed as a waiver of any government's sovereign immunity, not otherwise expressly waived by legislative act of said government or by Act of Congress.

## Section 12. Workers Compensation

Nothing herein waives or limits the responsibility of each agency to provide Workers Compensation coverage for its own officers who are cross-deputized pursuant to this Agreement. Where a claim for Workers Compensation is made, the officer's agency is responsible for

8

providing the Workers Compensation coverage regardless of where the action occurred or the law that was being enforced.

## Section 13. Effective Date

This Agreement shall become effective on the last date of execution by the authorized representatives of the TRIBE and the BIA.

**FEDERAL APPROVAL:**

Approved as to proper form and compatibility with the laws of the United States:

_____     12/20/99
Field Solicitor, Department of Interior     Date

Approved:

_____     9-17-99
Commander, District II,     Date
Law Enforcement Services, BIA

**TRIBAL APPROVAL:**

Approved as to proper form and compatibility with the laws of the **Prairie Band of Potawatomi** Tribe:

_____     9/17/99
Attorney General, Tribe [Nation]     Date
Secretary

Tribal Official

By: _____     9/17/99
                                          Date
_____
Title

_____

Subscribed & Sworn to before me on 9-17-99.

James M. Potter
NOTARY PUBLIC
STATE OF KANSAS
MY APPT EXPIRES 9-26-2000

9

PBPN-000009