# EXHIBIT 10

# COMPACT RELATING TO CIGARETTE AND TOBACCO SALES, TAXATION AND ESCROW COLLECTION

THIS COMPACT RELATING TO CIGARETTE AND TOBACCO SALES, TAXATION AND ESCROW COLLECTION (**"Compact"**) is entered into between the Prairie Band Potawatomi Nation (along with its agencies, boards, commissions and political subdivisions, the **"Nation"**) and the State of Kansas (along with its agencies, boards, commissions and political subdivisions, the **"State"**). The Nation and the State are each referred to herein as a **"Party"** and collectively referred to herein as the **"Parties."**

## Recitals

WHEREAS, the Nation is a federally-recognized Indian tribe possessing and exercising inherent sovereign powers of self-government, as defined and recognized by treaties, federal laws and federal court decisions, and that it has responsibilities and needs similar to other governments;

WHEREAS, the State is a state within the United States of America possessing and exercising full powers of state government, as defined and recognized by the United States Constitution, federal laws, federal court decisions, the Kansas Constitution, State laws and State court decisions, and that it has responsibilities and needs similar to other governments;

WHEREAS, both the State and the Nation recognize that pursuant to applicable law each is a sovereign with dominion over their respective territories and governments and that entry into this Compact is not intended nor shall it be construed to cause the sovereignty of either to be diminished;

WHEREAS, the Nation is situated on and occupies a federally-established Indian Reservation situated within the borders of the State;

WHEREAS, federal law recognizes that tribal jurisdiction exists on Qualified Nation Lands regarding the rights of the Nation to pass its own laws and be governed by them;

WHEREAS, it is in the best interests of both the State and the Nation to prevent disputes between the Parties regarding possession, transport, distribution, and Sale of Cigarettes and other Tobacco Products, including but not limited to taxation and escrow collection, in the State of Kansas, on Compact Lands;

WHEREAS, each of the State and the Nation recognize the financial, cultural, educational, and economic contributions of the other;

WHEREAS, each of the State and the Nation respects the sovereignty of the other, and recognizes and supports the other's governmental responsibilities to provide for and govern its citizens, members and territory; Kansas recognizes the Nation's inherent sovereign right to existence, self-government and self-determination; and the Nation recognizes the Kansas's inherent sovereign right to existence, self-government and self-determination;

WHEREAS, the Parties are of the opinion that cooperation between the Nation and the State is mutually productive and beneficial and recognize the need to develop and maintain good Nation/State governmental relations;

WHEREAS, it is in the best interests of the State to continue to reduce the financial burdens imposed on the State by Cigarette smoking and that said costs continue to be borne by Tobacco Product Manufacturers rather than by Kansas to the extent that such Tobacco Product Manufacturers either determine to enter into a settlement with Kansas or are found culpable by the courts;

WHEREAS, on November 23, 1998, the State became party to the MSA;

1

PBPN-000010

WHEREAS, certain Tobacco Product Manufacturers, which are party to the MSA, are obligated, in return for a release of past, present and certain future claims against them as described therein, to pay substantial sums to State (tied in part to their volume of Sales); to fund a national foundation devoted to the interests of public health; and to make substantial changes in their advertising and marketing practices and corporate culture, with the intention of reducing underage smoking;

WHEREAS, it would be contrary to the policy of State if Tobacco Product Manufacturers who determine not to enter into such a settlement could use a resulting cost advantage to derive large, short-term profits in the years before liability may arise without ensuring that State will have an eventual source of recovery from them if they are proven to have acted culpably;

WHEREAS, Kansas entered into a Secondary Settlement Agreement with certain participating Tobacco Product Manufacturers in 2012 settling State's obligations under the MSA and disputes regarding certain payment adjustments under the MSA with respect to NPMs (as that term is defined below) for calendar years 2003-2012;

WHEREAS, as part of said Secondary Settlement Agreement, State has agreed to undertake certain diligent enforcement efforts of its Cigarette and other Tobacco Product laws and more specifically, its MSA laws on Qualified Tribal Lands within the borders of State;

WHEREAS, State recognizes the importance to State of forming an alliance with Nation to assist State in its diligent enforcement efforts;

WHEREAS, State further recognizes that the Nation will incur certain economic costs in assisting State in its diligent enforcement efforts which Nation should not be required to endure;

WHEREAS, it is altogether just and proper that State compensate the Nation for its assistance to State in State's diligent enforcement obligation under the MSA and the Secondary Settlement Agreement; and

WHEREAS, the State and the Nation agree that it will serve the interests of both the State and the Nation for the Nation to be able to generate revenue for governmental purposes through the collection of certain Tribal taxes in accordance with this Compact and resolve their differences regarding the State's collection of escrow on certain Cigarettes Sold on Compact Lands.

## Compact

NOW, THEREFORE, in consideration of the foregoing recitals which are made a contractual part hereof, and in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## ARTICLE I
## DEFINITIONS

**Section 1.01.    Definitions.** Whenever used in this Compact, the following capitalized words and phrases shall have the following meanings:

"**AAA**" shall mean the American Arbitration Association.

"**Approved Manufacturer**" shall mean, subject to Section 4.02(c), a Tobacco Product Manufacturer which is (A) in compliance with the Escrow Statutes and the Fire Safety Statutes, and (B) listed on the KSAG's directory of compliant manufacturers pursuant to K.S.A. 50-6a04(B). The KSAG's directories of compliant Tobacco Product Manufacturers can be found on the KSAG's website.

"**Auditor**" shall have the meaning set forth for such term in Section 6.02.

"**Business Day**" shall mean any day that the governmental offices of the Nation are open for business.

PBPN-000011

"**Carton**" shall mean a container of two hundred (200) Cigarettes, whether consisting of either eight or ten Packs.

"**Cigarette**" shall mean any product that contains nicotine, is intended to be burned or heated under ordinary conditions of use and consists of or contains:

    (1)  any roll of tobacco wrapped in paper or in any substance not containing tobacco;

    (2)  tobacco, in any form, that is functional in the product, which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, Consumers as a Cigarette; or

    (3)  any roll of tobacco wrapped in any substance containing tobacco which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, Consumers as a Cigarette described in clause (1) above.

The term "Cigarette" includes "roll-your-own" (i.e., any tobacco which, because of its appearance, type, packaging or labeling is suitable for use and likely to be offered to, or purchased by, Consumers as tobacco for making Cigarettes). For purposes of this definition, 0.09 ounces of "roll-your-own" tobacco shall constitute one individual "Cigarette."

"**Compact**" shall have the meaning set forth for such term in the initial paragraph.

"**Compact Lands**" shall mean only the following Qualified Nation Lands:

    (A) those Qualified Nation Lands within the boundaries of the Nation's reservation granted in Article 4 of the Treaty with the Potawatomi Nation, ratified July 22, 1846 (9 Stat. 853), as modified by the Treaty with the Potawatomi, ratified April 15, 1862 (12 Stat. 1191), and by the Treaty with the Potawatomi, ratified July 25, 1868 (15 Stat. 531); and

    (B) those Qualified Nation Lands described in (1) a Kansas Warranty Deed to the United States of America in trust for the Prairie Band Potawatomi Nation found in the Jackson County Register of Deeds Office in Book 305 of RB on pages 302-303, (2) a Kansas Warranty Deed to the United States of America in trust for the Prairie Band Potawatomi Nation found in the Jackson County Register of Deeds Office in Book 305 of RB on pages 587-588, (3) a Kansas Warranty Deed to the United States of America in trust for the Prairie Band Potawatomi Nation found in the Jackson County Register of Deeds Office in Book 500 on pages 234-235, and (4) a Kansas Warranty Deed to the United States of America in trust for the Prairie Band Potawatomi Nation found in the Jackson County Register of Deeds Office in Book 500 on pages 257-258.

"**Consumer**" shall mean the individual or entity purchasing or receiving Cigarettes or other Tobacco Products for final use.

"**Dispute**" shall have the meaning set forth for such term in Section 7.01(b).

"**Dispute Party**" shall have the meaning set forth for such term in Section 7.01(b).

"**Effective Date**" shall have the meaning set forth for such term in Section 3.01.

"**Escrow Statutes**" shall mean Chapter 50, Article 6a of the Kansas Statutes Annotated.

"**Fire Safety Statutes**" shall mean Chapter 31, Article 6 of the Kansas Statutes Annotated.

"**Indian Tribe**" shall mean any Indian tribe, band, nation or other organized group or community that is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians under the laws of the United States.

"**KDOR**" shall mean the Kansas Department of Revenue.

"**KSAG**" shall mean the Office of the Attorney General of the State of Kansas.

PBPN-000012

"**Licensed Distributor**" shall mean the Nation, any Nation Affiliate, or any individual or entity subject to the Nation's regulatory and tax jurisdiction, in each case conducting business pursuant to a valid tobacco distributor license issued by the Nation.

"**Licensed Retailer**" shall mean the Nation or any Nation Affiliate conducting business pursuant to a valid tobacco retailer license issued by the Nation.

"**MSA**" shall mean the settlement agreement (and related documents) entered into on November 23, 1998 by the State and leading United States Tobacco Product Manufacturers; provided, however, that such term does not include the Secondary Settlement Agreement.

"**Nation**" shall have the meaning set forth for such term in the initial paragraph.

"**Nation Affiliate**" shall mean an entity directly or indirectly wholly owned by the Nation. Solely for purposes of this definition, the phrase "wholly owned by" means ownership of one hundred percent (100%) of an equity interest, or the equivalent thereof.

"**Nation Claim Parties**" shall mean, collectively, the Nation, the Nation Tax Commission, and any Nation Affiliate to the extent such Nation Affiliate is either a Licensed Retailer or Licensed Distributor.

"**Nation Tax Commission**" shall mean the Prairie Band Potawatomi Tax Commission, or such other successor commission, board, committee, council, department or agency charged under Nation law with administration and enforcement of Nation tax laws.

"**NPM**" shall have the meaning set forth for the term "Non-participating manufacturer" in K.S.A. §50-6a07(g).

"**Pack**" shall mean one package of either twenty (20) or twenty-five (25) Cigarettes.

"**Parties**" or "Party" shall have the meaning set forth for such terms in the initial paragraph.

"**PM**" shall mean a "participating manufacturer" as that term is used in the Escrow Statutes.

"**Qualified Tribal Lands**" shall mean:

(1) All land within the borders of the State that is within the limits of any Indian reservation under the jurisdiction of the United States, notwithstanding the issuance of any patent, including rights-of way running through such reservation;

(2) all dependent Indian communities within the borders of the State;

(3) all Indian allotments within the borders of the State, the Indian titles to which have not been extinguished, including rights-of-way running through such allotments; and

(4) any lands within the borders of the State, the title to which is either held in trust by the United States for the benefit of any Indian Tribe or individual, or held by any Indian Tribe or individual subject to restriction by the United States against alienation and over which an Indian Tribe exercises governmental power.

"**Qualified Nation Lands**" shall mean the Nation's Qualified Tribal Lands.

"**Rules**" shall have the meaning set forth in Section 7.02(b).

"**Sale**" (and any correlative term, such as "**Sell**," "**Seller**," or "**Sold**," shall have the correlative meaning) shall mean any sale, barter, trade, exchange, or other transfer of ownership for value of Cigarettes or other Tobacco Products, no matter how characterized.

"**Secondary Settlement Agreement**" shall mean the 2003 NPM adjustment settlement agreement, which shall include the 2012 term sheet agreement, related to the MSA and to which State is a party.

"**State**" shall have the meaning set forth for such term in the initial paragraph.

PBPN-000013

"**Tobacco Product**" shall mean any product, including any component, part, or accessory, made or derived from tobacco that is intended for human consumption through smoking, chewing or both, including but not limited to Cigarettes, Cigarette tobacco, roll-your-own tobacco, smokeless tobacco, cigars, pipe tobacco, dissolvables, gels, waterpipe tobacco, and electronic cigarettes.

"**Tobacco Product Manufacturer**" shall mean an entity that after the Effective Date directly (and not exclusively through any affiliate):

(1) manufactures Cigarettes anywhere that such manufacturer intends to be Sold in the United States, including Cigarettes intended to be Sold in the United States through an importer;

(2) is the first purchaser anywhere for resale in the United States of Cigarettes manufactured anywhere that the manufacturer does not intend to be sold in the United States; or

(3) becomes a successor of an entity described in paragraph (1) or (2).

The term "Tobacco Product Manufacturer" shall not include an affiliate of a Tobacco Product Manufacturer unless such affiliate itself falls within any of paragraphs (1) through (3) above. Solely for purposes of this definition, the term "affiliate" shall mean a person who directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, another person. Solely for purposes of the preceding sentence, the terms "owns," "is owned" and "ownership" mean ownership of any equity interest, or the equivalent thereof, of 10% or more, and the term "person" means an individual, partnership, committee, association, corporation or any other organization or group of persons.

"**Units Sold**" shall mean, with respect to a particular Tobacco Product Manufacturer for a particular year, the number of individual Cigarettes Sold in the State, including, without limitation, any Cigarettes Sold on any Qualified Tribal Lands within the State, by the applicable Tobacco Product Manufacturer, whether directly or through a distributor, retailer or similar intermediary or intermediaries, during the year in question, for which the State has the authority under federal law to impose excise or a similar tax or to collect escrow deposits, regardless of whether such taxes were imposed or collected by the State.

**Section 1.02.    Other Definitional Provisions.**

(a) All capitalized terms defined in this Compact shall have the defined meanings when used as a capitalized term in any certificate or other document made or delivered pursuant hereto unless otherwise defined therein.

(b) As used herein and in any certificate or other document made or delivered pursuant hereto or thereto, accounting terms not defined in Section 1.01, and accounting terms partially defined in Section 1.01 to the extent not defined, shall have the respective meanings given to them under generally accepted accounting principles or regulatory accounting principles, as applicable. To the extent that the definitions of accounting terms herein are inconsistent with the meaning of such terms under generally accepted accounting principles or regulatory accounting principles, the definitions contained herein shall control.

(c) The words "**hereof**," "**herein**" and "**hereunder**" and words of similar import when used in this Compact shall refer to this Compact as a whole and not to any particular provision of this Compact; and Section, subsection, Schedule and Exhibit references contained in this Compact are references to Sections, subsections, Schedules and Exhibits in or to this Compact unless otherwise specified.

(d) Unless otherwise specifically noted herein, any capitalized word or term used in this Compact but not otherwise expressly defined herein shall have the same meaning as the definition provided for such capitalized word or term in Chapters 50 and 79 of the Kansas Statutes Annotated as in effect on January 1, 2016.

PBPN-000014

## ARTICLE II
## GENERAL PROVISIONS

**Section 2.01.    Purpose of Compact**. The purpose of this Compact is to prevent disputes between the Parties regarding possession, transport, distribution, and Sale of Cigarettes and other Tobacco Products, including but not limited to taxation and escrow collection, in the State of Kansas, on Compact Lands, and on other Qualified Tribal Lands to the extent set forth herein.

**Section 2.02.    External Citations**. The citation to any State statute or regulation in this Compact refers to the version in effect on January 1, 2016, unless otherwise specifically provided herein or unless the Parties specifically agree in writing to a modification of the Compact.

**Section 2.03.    Scope of Compact.** Unless otherwise specifically provided herein, the terms and provisions of this Compact shall only apply to Cigarettes and other Tobacco Products Sold on Compact Lands. Notwithstanding any term or provision herein to the contrary, the Parties agree and acknowledge that the terms and provisions of this Compact shall not apply in any respect, including but not limited to taxation and escrow collection, to (i) any Tobacco Product Manufacturer or manufacturer of other Tobacco Products owned or operated by Nation or any Nation Affiliate during the term of this Compact, or (ii) the possession, transport, distribution, purchase, or Sale of Cigarettes or other Tobacco Products manufactured or imported by any Tobacco Product Manufacturer or manufacturer of other Tobacco Products, in each case to the extent described in clause (i).

## ARTICLE III
## EFFECTIVE DATE; TERM

**Section 3.01.    Effective Date**. Subject to the prior full execution by the Parties, ratification by Nation's Tribal Council by written resolution, approval by Nation's General Council under Nation's Constitution, and ratification by State through its legislation enacted by the State Legislature and publication in the Kansas Register, this Compact shall become effective on July 1, 2016 (the "Effective Date").

**Section 3.02.    Term.**

(a) This Compact shall have an initial term of ten (10) years subject to automatic renewal for successive ten (10) year terms absent a requested revision in writing by any Party on or before August 1 in the calendar year prior to calendar year of the expiration of the then-current term. The Parties shall negotiate such requested revisions in good faith for a period ending fifteen (15) days before expiration of the then current term; *provided, however*, that if the Parties are not able to reach agreement on such requested revisions by such date, the Parties may agree to extend the then-current term beyond the expiration date for so long as the Parties agree that further negotiations are warranted; *provided, further*, that following expiration of the initial or any extended negotiation period, either Party may provide written notice of termination of the Compact effective on the later to occur of the expiration date of the then-current term or two Business Days following the date of delivery of such written notice of termination without giving effect to any extension agreed to by the Parties. In the event that the Parties reach agreement on the requested revisions, such revisions shall be reflected in an amendment to this Compact consistent with Section 8.08. In any event, the terms and provisions of this Compact shall continue to apply and the Parties shall conduct themselves accordingly until such time either that such amendment is fully executed, ratified and effective or that termination of this Compact is effective.

(b) Notwithstanding any provision of this Compact to the contrary, in the event that State is subject to a final, binding arbitration award or decision of a court of competent jurisdiction that the State is non-compliant or has violated the terms of the MSA or Secondary Settlement Agreement due to State's compliance with its obligations under this Compact, the Parties shall attempt to negotiate amendments to this Compact for a period of not less than 90 days following State's written notice to

PBPN-000015

Nation of State's desire to initiate such negotiations. The Parties acknowledge that the purpose of such negotiations would be to amend the Compact in a manner acceptable to the Parties that would permit the State to comply with the terms and provisions of this Compact, the MSA, and the Secondary Settlement Agreement. If the Parties are unable to negotiate such amendments within such negotiation period, the State may terminate this Compact upon two weeks' prior written notice to the Nation. Termination of this Compact pursuant to this Section 3.02(b) shall not be subject to the dispute resolution provisions of Article VII.

(c) In the event that the State is no longer subject to, or elects to withdraw from or cease performing under, the MSA and the Secondary Settlement Agreement, the Nation and the State may jointly agree in writing to terminate this Compact prior to the expiration of the then-current term. If there is any modification to relevant State law or final judicial determination by a court of competent jurisdiction that negates the escrow deposit obligations pursuant to the Escrow Statutes, the State may terminate this Compact at any time thereafter by providing thirty days' written notice to Nation.

## ARTICLE IV
## MASTER SETTLEMENT AGREEMENT PROVISIONS

**Section 4.01.    Nation Obligations.**

(a) Nation shall regulate all Sales of Cigarettes on Compact Lands and may regulate Sales of other Tobacco Products on Compact Lands. As part of such mandatory regulation of Sales of Cigarettes on Compact Lands, the Nation shall require, and enforce such requirement, that:

  (i)     all Sales to ultimate Consumers of Cigarettes on Compact Lands by a Licensed Retailer shall be conducted pursuant to a valid Nation tobacco retailer license;

  (ii)    all Cigarettes Sold on Compact Lands by a Licensed Retailer shall be acquired from a Licensed Distributor;

  (iii)   each Licensed Retailer shall implement and maintain processes that verify receipt of all Cigarettes on Compact Lands substantiated and supported by contemporaneously created documentation, including but not limited to invoices, bills of lading, way bills and other documents, showing Cigarettes received by such Licensed Retailer by brand, quantity, date of receipt, and from whom such Licensed Retailer received such Cigarettes;

  (iv)    each Licensed Retailer shall implement and maintain processes that verify the number of Cigarettes Sold by such Licensed Retailer to Consumers on Compact Lands by contemporaneously created documentation, including register tapes or other indicia of retail Sale generated at the point of Sale or, with respect to vending machine Sales, stocking reports, in each case showing Cigarettes Sold by brand and quantity;

  (v)     each Licensed Retailer shall provide to the Nation Tax Commission, on a timely basis, reports, data, and documentation specified in clauses (iii) and (iv) above regarding retail sales of Cigarettes on Compact Lands in form and format sufficient to enable Nation to comply with its obligations pursuant to Section 4(b) and Section 4(c), and shall maintain such documentation in an adequate and accessible retention system for a period of not less than three years;

  (vi)    each brand of Cigarettes Sold, offered for Sale, possessed for Sale, or imported for Sale on Compact Lands by a Licensed Retailer shall be a brand of an Approved Manufacturer and, subject to Section 4.01(e), shall bear indicia of excise tax payment as provided in Section 5.02;

  (vii)   each Licensed Distributor shall apply indicia of excise tax payment as provided in Section 5.02 to each Pack of Cigarettes prior to delivery to a Licensed Retailer located on Compact Lands;

7

PBPN-000016

(viii)  each Licensed Distributor shall implement and maintain processes that verify delivery of all Cigarettes to Licensed Retailers on Compact Lands substantiated and supported by contemporaneously created documentation, including but not limited to invoices, bills of lading, way bills and other documents, showing Cigarettes delivered by brand, quantity, date of receipt, and to which Licensed Retailer such Cigarettes were delivered;

(ix)  each Licensed Distributor shall implement and maintain processes that, on a monthly basis, verify the number of items of indicia of payment of excise tax purchased from the Nation Tax Commission, as documented by a contemporaneously created, written receipt received from the Nation Tax Commission, the number of such items of indicia received by such Licensed Distributor, if different than the number purchased, the number of such items of indicia affixed to Packs of Cigarettes by such Licensed Distributor, the number of Packs of Cigarettes bearing such indicia delivered to Licensed Retailers as documented by one or more contemporaneously created, written statements from such Licensed Distributor, the number of such items of indicia that may be damaged, torn, mutilated or otherwise unusable and returned to the Nation Tax Commission, documented by a contemporaneously created, written receipt received from the Nation Tax Commission, the number of such items of indicia which are destroyed in accordance with Nation Tax Commission regulations, and the number of unaffixed items of such indicia which are on hand at such Licensed Distributor's premises, as documented by contemporaneously created, written inventory sheets;

(x)  each Licensed Distributor shall implement and maintain processes that verify monthly beginning and ending inventories of Packs of Cigarettes bearing indicia of payment of excise tax described in Section 5.02(a), as documented by contemporaneously created, written inventory sheets showing adjustments during such month for number of Packs of Cigarettes (A) to which such indicia were affixed, (B) received with such indicia affixed, (C) returned from Licensed Retailers, and (D) Sold to Licensed Retailers;

(xi)  with respect to each Licensed Distributor that maintains premises on Compact Lands, such Licensed Distributor shall implement and maintain processes that verify monthly beginning and ending inventories of Packs of Cigarettes not bearing any indicia of payment of excise tax, as documented by contemporaneously created, written inventory sheets showing adjustments during such month for number of Packs of Cigarettes (A) received without bearing any indicia of payment of excise tax, (B) to which indicia of payment of excise tax are affixed, in the aggregate and by specific jurisdiction, (C) Sold to the United States government, and (D) returned to a Tobacco Product Manufacturer;

(xii)  each Licensed Distributor shall provide to the Nation Tax Commission, on a timely basis, reports, data, and documentation specified in clauses (viii), (ix), (x), and (xi) above regarding retail Sales of Cigarettes on Compact Lands in form and format sufficient to enable Nation to comply with its obligations pursuant to Section 4.01(b) and Section 4.01(c), and shall maintain such documentation in an adequate and accessible retention system for a period of not less than three years.

The Parties agree that United States generally accepted accounting principles (GAAP) shall, to the extent applicable, provide the appropriate standard for measuring the adequacy of the processes required by this Section 4.01.

(b) Nation, through its Nation Tax Commission, shall collect from Licensed Retailers the documentation specified in clause (v) of Section 4.01(a), shall collect from Licensed Distributors the documentation specified in clause (xii) of Section 4.01(a), and shall retain all such documentation for a period of not less than three years.

PBPN-000017

(c) Nation, through its Nation Tax Commission at Nation's sole expense, shall prepare and remit to KDOR data regarding Sales of Cigarettes on Compact Lands in the form and format and on the dates reasonably requested by KDOR from time to time and approved by the Nation Tax Commission, such approval not to be unreasonably withheld. Such data shall be prepared based upon the documentation gathered by the Nation Tax Commission pursuant to Section 4.01(b). Such data shall be remitted at the same frequency as comparable data is required to be submitted to the State under applicable State law by State-licensed retailers or distributors of Cigarettes.

(d) Nation, through its Nation Tax Commission, shall implement and maintain processes that verify the number of items of indicia of payment of excise tax delivered to the Nation pursuant to Section 5.02, as documented by a contemporaneously created, written receipt received from the State, the number of such items of indicia applied to Cigarettes delivered to Licensed Retailers as documented by one or more contemporaneously created, written statements from each Licensed Distributor, the number of such items of indicia that may be damaged, torn, mutilated or otherwise unusable and returned to the State, documented by a contemporaneously created, written receipt received from the State, the number of such items of indicia on hand from time to time at the Nation Tax Commission and each Licensed Distributor documented on contemporaneously created, written inventory sheets. Nation, through its Nation Tax Commission, shall retain all such documentation for a period of not less than three years.

(e) On the Effective Date, the Nation Tax Commission shall seize as contraband all Cigarettes held for Sale by Licensed Retailers which do not satisfy the requirements of Section 4.01(a)(vi). Such contraband Cigarettes shall be destroyed subject to oversight by the Nation Tax Commission and KSAG. Notwithstanding any provision of this Compact to the contrary, all Packs of Cigarettes in the inventory of a Licensed Retailer on the Effective Date which bear either a Nation excise tax stamp or a State excise tax stamp shall be deemed to bear indicia of excise tax payment as provided in Section 5.02 for all purposes of this Compact.

**Section 4.02.    State Obligations.**

(a) Beginning with calendar year 2016 and each subsequent calendar year occurring in whole or in part during the term of this Compact, State will pay to Nation an amount equal to the product of (i) the total dollar amount disbursed to the State pursuant to the MSA and Secondary Settlement Agreement attributable to Sales of Cigarettes during such calendar year, multiplied by (ii) the quotient obtained by dividing (A) total PM brand Units Sold by Licensed Retailers on Compact Lands during such calendar year, by (B) total PM brand Units Sold in Kansas and on Qualified Tribal Lands, without duplication, during such calendar year. Each such payment shall be due within thirty days following State's receipt of any disbursement described in clause (i) above. Concurrently with making such payment to the Nation, the State shall provide Nation with appropriate documentation supporting computation of such payment.

(b) If the KSAG takes the position that an Approved Manufacturer of any brand of Cigarette Sold by Licensed Retailers on Compact Lands is not in compliance with any mandatory requirement of the Escrow Statutes or of the Fire Safety Statutes, the KSAG will notify the Nation and such Approved Manufacturer. If the matter is not resolved within 30 days of such notice, the Nation Tax Commission will prohibit the Sale of that brand family by Licensed Retailers on Compact Lands until the matter is resolved.

(c) The KSAG shall not remove any Approved Manufacturer of any brand of Cigarette Sold by Licensed Retailers on Compact Lands from its directory of compliant Tobacco Product Manufacturers pursuant to K.S.A. §50-6a04(b)(8) prior to giving notice to Nation of, and negotiations regarding, such proposed removal in accordance with Section 7.01(b). For the avoidance of doubt, the foregoing shall not require initiation or completion of arbitration proceedings prior to removal.

PBPN-000018

# ARTICLE V
# TAX PROVISIONS

**Section 5.01.    Exercise of Tax Jurisdiction.**

(a)  The Nation shall have the sole right to impose, collect, and retain Sales taxes and excise taxes on transactions conducted by Licensed Retailers and Licensed Distributors involving Cigarettes and other Tobacco Products ultimately Sold to Consumers by Licensed Retailers on Compact Lands. Further, the Nation shall have the sole obligation hereunder to impose Sales taxes and excise taxes on such transactions to the extent described herein. With respect to such Cigarettes or other Tobacco Products, the State shall not impose any Sales tax, excise tax, privilege tax, use tax, other tax, licensing fee, user fee or other fee at any point in the stream of commerce:

    (i)   where the legal incidence of any such tax or fee falls on any such Consumer; or

    (ii)  which, if passed through in whole or in part to any such Licensed Retailer or Licensed Distributor, would have the effect of increasing such Licensed Retailer's or Licensed Distributor's cost of goods Sold;

*provided, however*, for the avoidance of doubt, such restrictions shall not apply to escrow payments, directory fees, or any bond required under the Escrow Statutes with respect to such Cigarettes. The State shall take no affirmative action to enable or authorize any other individual or entity to take any action which, if taken directly by the State, would violate this Section 5.01(a).

(b)  Notwithstanding any provision of Section 5.01(c) to the contrary, the Nation shall levy upon the consensual Sale of Cigarettes by a Licensed Retailer to a Consumer on Compact Lands a tax computed as a percentage of the actual Sales price thereof exclusive of any rebates. For purposes of the preceding sentence, such Sales tax shall be levied at a rate no lower than the lowest of (i) five percent (5%), or (ii) the Kansas Sales tax rate in effect at the time of such Sale less 1.5%; *provided, however*, that the fixed amount computed pursuant to this Section 5.01(b) shall not be less than $0.00. Nothing in this Compact shall prohibit the Nation, in its sole discretion, from levying Sales tax on such Sales at a rate higher than that required in the preceding sentence.

(c)  Subject to Section 5.01(d), the Nation shall levy upon the consensual Sale of Cigarettes on Compact Lands an excise tax computed from time to time as a fixed amount per Carton of Cigarettes or fractional part thereof. For purposes of the preceding sentence, such fixed amount per Carton of Cigarettes shall be no lower than the lowest of (i) the lowest excise tax rate per Carton of Cigarettes levied or imposed at the time of computation pursuant to the laws of any of the states immediately bordering the State; (ii) the excise tax rate per Carton of Cigarettes levied or imposed at the time of computation pursuant to the laws of the State less $11.20 per Carton of Cigarettes; or (iii) the lowest aggregate excise tax rate per Carton of Cigarettes levied or imposed at the time of computation by any Indian Tribe which is party to a Cigarette/Tobacco Product compact with the State; *provided, however*, that the fixed amount computed pursuant to this Section 5.01(c) shall not be less than $0.01 per Carton. Nothing in this Compact shall prohibit the Nation, at its sole discretion, from levying excise tax on such Cigarettes in an amount higher than that required in the preceding sentence. Such excise tax shall be paid only once and shall be imposed on and paid by the Licensed Distributor which Sells Cigarettes to a Licensed Retailer for Sale to Consumers on Compact Lands. For the avoidance of doubt, the Nation shall not be required to levy such excise tax on any Sale of Cigarettes where the Licensed Distributor intends to Sell such Cigarettes outside Compact Lands.

(d)  Notwithstanding any other provision of this Compact to the contrary, the Nation shall levy upon the consensual Sale of roll-your-own tobacco on Compact Lands an excise tax of not less than 1% of the wholesale Sale price of such roll-your-own tobacco. Such excise tax shall be paid only once and shall be imposed on and paid by the Licensed Distributor at the time that the Licensed Distributor (a) brings or causes to be brought onto Compact Lands such roll-your-own tobacco for Sale on Compact

PBPN-000019

Lands, (b) makes, manufactures, or fabricates such roll-your-own tobacco on Compact Lands for Sale on Compact Lands, or (c) ships or transports such roll-your-own tobacco to any Licensed Retailer on Compact Lands to be Sold by such Licensed Retailer on Compact Lands. For the avoidance of doubt, the Nation shall not be required to levy such excise tax on any sale of roll-your-own tobacco where the Licensed Distributor intends to Sell such roll-your-own tobacco outside Compact Lands.

**Section 5.02.    Indicia of Tax; Distribution and Transport.**

(a)  The Nation Tax Commission and KDOR shall jointly design and designate indicia of payment of the excise tax levied pursuant to Section 5.01(c). Such indicia shall include at a minimum the acronym "PBPN," the word "Kansas," and an inventory control number, code or other technology in a form and color mutually agreeable to the Nation Tax Commission and KDOR. Kansas shall produce, or cause to be produced, and deliver to the Nation Tax Commission all such indicia as may be required for Nation to comply with its obligations hereunder, including but not limited to Nation's obligations pursuant to Section 4.01(a)(vi). In order to compensate State for production and delivery of such indicia, Nation shall pay to the State the fixed amount of One Hundred Fifty Thousand Dollars ($150,000.00) on February 1, 2018 and each subsequent February 1 during the term of this Compact; *provided, however*, that Nation shall have no obligation to make such any such payment if Licensed Retailers, on an aggregate basis, do not Sell more than 175,000 Cartons of Cigarettes on Compact Lands during the immediately preceding calendar year. The Nation and the State expressly agree and acknowledge that such payments (1) constitute payments for goods and services provided by State to Nation, (2) do not represent the levy or payment of any tax imposed by the State on the Nation, any Nation Affiliate, any Licensed Distributor, any Licensed Retailer, or any Consumer, and (3) do not represent sharing of Nation tax revenues or business profits with the State. Such payments and State's production and delivery of such indicia shall not be subject to any sales, excise or other tax imposed by either State or Nation.

(b)  For purposes of this Compact, the Parties agree that the following shall constitute contraband:

    (i)  All Packs of Cigarettes, in quantities of 20 Cigarettes per Pack or more, not bearing indicia of payment of excise tax as required in this Compact and all devices for vending Cigarettes in which unstamped Packs are found;

    (ii)  all Cigarettes or Tobacco Products in the possession of a minor;

    (iii)all property, other than vehicles, used in the retail Sale of Packs of Cigarettes described in clause (i);

    (iv)  any Cigarettes Sold, offered for Sale, or possessed for Sale on Compact Lands where such Cigarettes are not a brand of an Approved Manufacturer; and

    (v)  any Cigarettes to which tax indicia has been affixed, was caused to be affixed, or the tax paid thereon as required by Section 5.01(c) or (d) of this Compact, where such Cigarettes are not a brand of an Approved Manufacturer.

(c)  Notwithstanding any provision of this Compact to the contrary, any Pack of Cigarettes Sold by a Licensed Retailer, in the possession of a Licensed Retailer, or in transit to a Licensed Retailer with proper bills of lading from a Licensed Distributor in each case bearing the indicia of payment of excise tax described in Section 5.02(a) shall be deemed to be bearing indicia of payment of State excise tax for all purposes of State law and, in any event, shall be deemed not to be a common nuisance or contraband pursuant to State law and not subject to seizure, forfeiture, confiscation or destruction pursuant to State law or process on grounds of non-payment of any State tax.

(d)  Notwithstanding any provision of this Compact to the contrary, any Cigarette in the possession of a Licensed Distributor with premises on Compact Lands or which are in transit, with proper bills of lading showing shipment from the relevant Tobacco Product Manufacturer or its importer to a

PBPN-000020

Licensed Distributor with premises on Compact Lands, but in either case not bearing indicia of payment of excise tax pursuant to Section 5.02(a), or for which tax has not been paid pursuant to Section 5.01(d), shall be deemed not to be a common nuisance or contraband pursuant to State law and not subject to seizure, forfeiture, confiscation or destruction pursuant to State law or process, in each case on grounds of non-payment of State excise tax, if the related Tobacco Product Manufacturer is an Approved Manufacturer.

(e) Any Tobacco Product, other than Cigarettes, which is in the possession of a Licensed Distributor with premises on Compact Lands or is in transit, with proper bills of lading showing shipment from the relevant manufacturer or its importer to a Licensed Distributor with premises on Compact Lands, but in either case not bearing indicia of payment of excise tax pursuant to Section 5.02(a), or for which tax has not been paid pursuant to Section 5.01(d), shall be deemed not to be a common nuisance or contraband pursuant to State law and not subject to seizure, forfeiture, confiscation or destruction pursuant to State law or process, in each case on grounds of non-payment of any State tax.

(f) Any Tobacco Product, other than Cigarettes described in Section 5.02(c), in the possession of a Consumer which a Consumer can demonstrate was purchased from a Licensed Retailer, shall be deemed not to be a common nuisance or contraband pursuant to State law and not subject to seizure, forfeiture, confiscation or destruction pursuant to State law or process on grounds of non-payment of any State tax.

(g) In the event KSAG or KDOR has actual knowledge that any Pack of Cigarettes described in Section 5.02(c) or (d) or any Tobacco Product described in Section 5.02(e) is seized or confiscated under color of State law or process as in effect from time to time, then KSAG or KDOR, as applicable, shall transmit written notice of such seizure or confiscation to the Nation within two Business Days of first acquiring such actual knowledge.

(h) Notwithstanding any provision of this Compact to the contrary, the possession, gift, or use on Qualified Nation Lands of noncommercial privately produced tobacco for religious or ceremonial use shall be exempt from taxation by State and may be exempt from taxation by Nation. Such tobacco shall be deemed not to be a common nuisance or contraband pursuant to State law and not subject to seizure, forfeiture, confiscation or destruction as a common nuisance or contraband pursuant to State law or process, in each case on grounds of non-payment of any State tax. For purposes of this Section 5.02(h), "tobacco" shall mean any plant, including parts or products thereof, within the genus *Nicotiana* and which does not constitute a "controlled substance" within the meaning of 21 U.S.C. § 802(6).

(i) For purposes of this Section 5.02 only, references to "State law" mean K.S.A. § 79-3323 and the Escrow Statutes as each may be amended from time to time.

### ARTICLE VI
### AUDITS AND INSPECTIONS

**Section 6.01.    Purpose**. The purpose of this Article VI is to provide a process for regular verification of the requirements of this Compact. The verification process is intended to reconcile data from all sources that make up the stamping, Selling, and taxing activities under this Compact.

**Section 6.02.    Nation to Contract with Third Party Auditor**. The Nation and the State agree that, for purposes of verifying compliance with this Compact, the Nation will contract with and retain an independent third party auditor (the **"Auditor"**). The Nation and the State shall each bear fifty percent (50%) of the costs of the auditing services. The Nation and the State shall be entitled to freely communicate with the Auditor; *provided, however,* that all information provided to the State by Auditor shall be provided directly to KDOR. The Nation shall select the Auditor, subject to the approval of the KSAG; *provided, further*, that such approval shall not be unreasonably withheld; *provided, further,* that

PBPN-000021

the Nation's selection of any Auditor possessing a valid Kansas Permit to Practice issued by the Kansas Board of Accountancy shall be deemed approved by the KSAG. The Auditor will review records on an annual calendar year basis to issue an annual report and certification as provided in this Article VI.

**Section 6.03.    Audit Protocol**. To verify compliance with this Compact, the Auditor must adhere to the following protocol:

(a) Period Under Review. The Auditor must review records for the calendar year under audit and may review records for earlier years that are after the Effective Date but only as necessary for an internal reconciliation of the relevant books. Subject to the foregoing, records relating to any period before the Effective Date are not open to review. In situations where the Auditor is responsible for verifying records on less than an annual basis, the period under review shall not include years previously reviewed by the Auditor, except when a violation is alleged to have occurred during the period previously reviewed.

(b) Records to be Examined. The Auditor must review Nation Tax Commission books and records for records and invoices of stamp purchases, records and invoice of Sales of stamped Cigarettes, stamp inventory, the stamping process, products Sold, product inventory records, and such additional records as are necessary to verify (1) the Units Sold, (2) the retail Selling price, including application of Nation Sales and excise taxes, and (3) procedures demonstrating Nation's compliance with Sections 4.01 and 5.01 of this Compact, all with respect to Sales of Cigarettes by Licensed Retailers on Compact Lands. In all situations, the Auditor is not responsible for examining, and shall not examine, records that do not relate to the stamping, Selling, or taxing activities of the Nation, any Nation Affiliate, or Nation's licensees, unless a review of the records is necessary to an internal reconciliation of the books of the Nation, any such Nation Affiliate or any such licensee.

(c) Audit Standard. Each audit performed pursuant to this Article VI shall be performed in accordance with generally accepted auditing standards.

**Section 6.04.    Audit Report and Certification**. After each annual audit, the Auditor shall issue to KDOR and the Nation an audit report and a certification, as further described below, with respect to compliance with this Compact. The annual audit report shall set forth the total Units Sold attributable to each Tobacco Product Manufacturer by Licensed Retailers on Compact Lands during the relevant period. The annual audit report shall also include a certified statement of the Auditor to the KDOR that the Auditor finds the Nation to be in compliance with Sections 4.01 and 5.01 of this Compact or else that the Nation is in compliance except for specifically listed items that are explained in the annual report.

**Section 6.05.    Audit Schedule**. Audit reviews shall take place following each calendar year (or portion thereof) during the term of this Compact, with an audit report submitted no later than April 1 following such calendar year.

**Section 6.06.    Joint Audit Implementation and Review**. The Nation and the State shall meet jointly with the Auditor prior to the beginning of each annual audit. The purpose of such meeting will be to discuss the objectives of the upcoming audit, the expectations of the Nation and of the State, the standards to be used in such audit, and any issues regarding conduct of the audit, records pertinent to the audit or the contents of the Auditor's report. Subsequent meetings before and during the audit may be held as required. As soon as practicable after the issuance of the Auditor's report and certification, the Nation and the State may meet jointly with the Auditor as often as required to review the audit report and discuss any issue of concern. In the event that either the Nation or the State disagrees with the Auditor's report or certification, or any audit finding contained therein, either Party may notify the other of the disagreement and follow the procedures for resolution of the disagreement in Article VII of this Compact.

PBPN-000022

**Section 6.07.   Inspections.**

(a) The Parties agree that, subject to the requirements and limitations of this Section 6.07, agents or employees of the Nation Tax Commission and agents or employees of KSAG and/or KDOR will conduct joint inspections of Licensed Retailers and Licensed Distributors located on Compact Lands. In connection with any such joint inspection, the Nation Tax Commission shall permit such agents or employees of the Nation Tax Commission and agents or employees of KSAG and/or KDOR to review all documentation collected and maintained by the Nation Tax Commission pursuant to Section 4.01(b) and Section 4.01(d).

The agents or employees of the Nation Tax Commission and agents or employees of KSAG and/or KDOR shall agree to a random sampling methodology for each joint inspection based on generally recognized valid and reliable sampling techniques. The Parties further agree such joint inspections shall not involve complete audits or complete inventories but shall be limited to random sample inspections of stock, tax indicia, and documentation on hand at the premises of a Licensed Retailer or Licensed Distributor, as applicable, for the purposes of verifying that all Cigarettes offered or intended for Sale by any Licensed Retailer on Compact Lands (i) are solely brands of Approved Manufacturers, (ii) were acquired from a Licensed Distributor, and (iii) bear indicia of payment of excise tax to the extent required in Section 5.02.  In any event, such joint inspections shall not be disruptive of the business operations of any Licensed Retailer or Licensed Distributor.

(b) The State reserves the right hereunder to initiate and participate in up to twelve joint inspections described in Section 6.07(a) per calendar year, with a limit of up to two (2) such joint inspections per calendar month; *provided, however,* that joint inspections of any one or more separate premises on the same Business Day shall only constitute one "joint inspection" for purposes of the preceding limitations; *provided, further,* that if the State and Nation inspection team notes any violations of this Compact by one or more Licensed Retailers or Licensed Distributors during any such joint inspection, the State may initiate, by giving notice in accordance with Section 6.07(c), one follow-up joint inspection with the Nation Tax Commission of all premises involved in such violations on a subsequent Business Day following the earlier of notice of completed cure or conclusion of any cure period pursuant to Section 7.01(a) related to such violations, with such follow-up joint inspection not counting against the monthly or annual limits set forth in this sentence.

(c) The Nation Tax Commission shall make its personnel available for joint inspections permitted hereunder on a Business Day between the hours of 9:00 a.m. and 4:30 p.m. upon prior email notice to the Nation Tax Commission transmitted by a representative of the State by 10:00 a.m. one Business Day prior to the requested inspection. State representatives and Nation Tax Commission representatives shall coordinate the details of the joint inspection by 3:00 p.m. on the day of such email notice. Any email notice provided to the Nation Tax Commission pursuant to the Section 6.07 shall be given at tobacco.compact@pbpnation.org, or such other email address as the Nation may specify to the State by written notice.

(d) Any Packs of Cigarettes found for Sale at a Licensed Retailer during a permitted joint inspection that are not brands of an Approved Manufacturer or that do not bear indicia of payment of excise tax as required in Section 5.02 shall be removed by the Nation Tax Commission until the matter is resolved.

(e) This Section 6.07 does not limit the Nation from unilateral enforcement of its laws and regulations and does not authorize the State to unilaterally conduct inspections of Licensed Retailers or Licensed Distributors on Compact Lands; *provided, however*, that the State may conduct test purchases from Licensed Retailers located on Compact Lands and may conduct unobtrusive observation of those portions of Licensed Retailer and Licensed Distributor premises located on Compact Lands which are open to the general public.

PBPN-000023

## ARTICLE VII
## DISPUTE RESOLUTION

**Section 7.01.    General.**

(a)  In the event Nation is in default of its obligations pursuant to Section 4.01, Article V or Article VI of this Compact, Nation shall cure such default within thirty days following receipt of written notice of such default from the State. Nation Tax Commission shall promptly provide written notice of completion of such cure to State. In the event Nation does not cure such default, the State may initiate dispute resolution procedures in accordance with the remainder of Article VII of this Compact.

(b)  For purposes of this Article VII, each of the State and the Nation may be referred to as a **"Dispute Party."** Each Dispute Party warrants that it will use its best efforts to negotiate an amicable resolution of any and all disagreements, controversies or claims between any or all Nation Claim Parties and the State (each, a **"Dispute"**) arising out of or in connection with this Compact (including without limitation claims relating to the validity, construction, performance, breach and/or termination of this Compact). Negotiation pursuant to this Section 7.01(b) shall be commenced by one Dispute Party providing written notice to the other Dispute Party of the existence of a Dispute. The written notice shall provide a concise summary of the nature of the Dispute. Promptly following delivery of any such written notice, and in no event later than thirty (30) days following such delivery, the Governor of the State of Kansas and the Nation's Chairperson, or their respective designees, shall commence good faith negotiations to resolve such Dispute(s). If the Dispute Parties are unable to negotiate an amicable resolution of any such Dispute within thirty (30) days following such commencement of good faith negotiations or such longer time period as the Dispute Parties may mutually agree in writing, either Dispute Party may submit the matter to arbitration for final resolution. Notwithstanding the foregoing or any other provision of this Compact to the contrary, either Dispute Party may immediately commence arbitration proceedings for the purpose of seeking emergency relief pursuant to the Rules addressing "Emergency Measures of Protection."

**Section 7.02.    Arbitration.**

(a)  *Initiation; Selection of Panel*. Subject to the requirements of Section 7.01, arbitration may be initiated by either Dispute Party by serving written notice to the other Dispute Party and by complying with the requirements of the Rules. Within seven days following initiation of the arbitration proceedings, each Dispute Party shall notify the other Dispute Party and the AAA of its disinterested and independent nominee for an arbitrator. If the Dispute Parties agree upon the nomination of a single arbitrator for the Dispute within ten days following initiation of arbitration, such nominee shall serve as sole arbitrator of the Dispute. If the Dispute Parties do not agree to a single arbitrator, the arbitration panel shall consist of three disinterested and independent arbitrators. In that event, the two arbitrators nominated by the Dispute Parties shall nominate the third disinterested and independent arbitrator to serve with them. In the event the two arbitrators fail for any reason to name the third arbitrator within seven days, the AAA shall name the third arbitrator. In any event, such third arbitrator shall serve as chairperson of the arbitration panel. Notwithstanding the foregoing, the Rules shall govern the selection and number of arbitrators for any Dispute governed by the Emergency Measures of Protection or Expedited Procedures provisions of the Rules, or both.

(b)  *Rules; Federal Question; Choice of Law*. Except as the Dispute Parties may subsequently agree otherwise in writing, the arbitration shall be conducted and enforced in accordance with the Commercial Arbitration Rules and Mediation Procedures (the **"Rules"**) of the (**"AAA"**), as such Rules may be modified by this Compact, the Federal Arbitration Act, and to the extent not preempted by the Federal Arbitration Act, the Kansas Uniform Arbitration Act. The Parties agree and acknowledge that judicial resolution and enforcement of any Dispute or a settlement or arbitration decision issued hereunder with respect thereto, involves questions of federal law. The law governing any Dispute shall be limited to applicable federal law, the common law of the United States, and Kansas law, in that order and without reference to internal conflicts of laws principles.

PBPN-000024

(c) *Proceedings*. Any arbitration shall be conducted at a place designated by the arbitration panel in Topeka, Kansas or any other location as the Dispute Parties may mutually agree in writing. Except for proceedings governed by the Rules on "Emergency Measures of Protection" or by the "Expedited Procedures" contemplated by the Rules, if applicable, the arbitration panel shall commence proceedings within 30 days of appointment of the final arbitrator, and hold proceedings providing each Dispute Party a fair opportunity to present its side of the Dispute, together with any documents or other evidence relevant to resolution of the Dispute. The arbitration decision shall be final and binding upon the Parties unless, during or following completion of the arbitration proceedings, the Dispute Parties have met and arrived at a different settlement of the Dispute. The arbitrators shall have the power to grant equitable or injunctive relief and specific performance of this Compact. The arbitrators shall not have the power to award monetary relief, including damages, penalties, or costs and expenses, including attorneys' fees, to the extent not otherwise expressly permitted by the terms of this Compact. The Parties and the arbitrators shall maintain strict confidentiality with respect to the arbitration.

(d) *Expenses*. The reasonable expenses of Dispute resolution shall be paid equally by the Dispute Parties, who shall also pay their own expenses; *provided, however*, that any Dispute Party who (1) fails or refuses to submit to arbitration following a proper demand by any other Dispute Party, or (2) fails or refuses to voluntarily comply with the terms of any settlement or arbitration decision issued hereunder, shall bear all costs and expenses, including reasonable attorneys' fees, incurred by such other Dispute Party in compelling arbitration of any Dispute or enforcing any settlement or arbitration decision.

(e) *Enforcement*. If enforcement of a settlement or arbitration decision becomes necessary by reason of failure of one or more Parties to implement its terms voluntarily, or if one of the Dispute Parties refuses to participate in arbitration as provided in this Section 7.02 and the other Dispute Party seeks enforcement of any provision of this Compact, the Parties agree that, subject to the limited waivers of sovereign immunity contained herein, the matter may be resolved by judicial resolution and enforcement and that venue for judicial resolution and enforcement shall be in the United States District Court for Kansas pursuant to the specific provisions of this Compact, in any other court of competent jurisdiction, and in any other court having appellate jurisdiction over any such court. In any such proceeding, service on any Dispute Party shall be effective if made by certified mail, return receipt requested to the address set forth in or otherwise designated pursuant to Section 8.06.

**Section 7.03.    Limited Waivers by Nation**. The Nation hereby waives its sovereign immunity, its right to require exhaustion of tribal remedies, and its right to seek tribal remedies with respect to any Dispute, effective only if the Nation fails to implement the terms of a settlement or arbitration decision voluntarily or refuses to participate in arbitration, and subject to the following specific limitations:

(1) *Limitation of Claims*. The limited waiver granted pursuant to this Section 7.03 shall encompass (A) claims which seek monetary relief for direct damages attributable to Nation's breach of this Compact and for costs and expenses, including reasonable attorneys' fees, to the limited extent provided in Section 7.02(d), (B) claims for equitable remedies, and (C) actions to compel Dispute resolution by arbitration or for enforcement of a settlement or arbitration decision as provided in this Article VII. Notwithstanding the foregoing or any other provision of this Compact to the contrary, such limited waiver shall in no event extend to or encompass claims which seek indirect, incidental, special, consequential, punitive, exemplary or reliance damages (including, without limitation, lost or anticipated revenues, lost business opportunities or lost Sales or profits, whether or not any Party has been advised of the likelihood of such damages) against Nation or any Nation Affiliate, and neither Nation nor any Nation Affiliate shall be liable for any such damages.

PBPN-000025

(2) *Time Period*. The limited waiver granted pursuant to this Section 7.03 shall commence upon the Effective Date of this Compact and shall continue until the date of its termination or cancellation pursuant to the terms of this Compact, except that the limited waiver shall remain effective for any proceedings then pending or initiated within 180 days following termination of this Compact for breach, and all permitted appeals therefrom.

(3) *Recipient of Waiver*. The limited waiver granted pursuant to this Section 7.03 is granted to and for the sole benefit of the State, and may not be assigned or granted to any other individual or entity.

(4) *No Revocation*. The Nation agrees not to revoke its limited waiver of sovereign immunity contained in this Section 7.03. In the event of any such revocation, the State may, at its option, declare this Compact terminated for breach by the Nation.

(5) *Limitation Upon Damages*. Any monetary award or awards against the Nation shall be limited, in the aggregate, to an amount equal to total tax revenues and gross profits actually received by the Nation or Nation Affiliates attributable to the Sale of Cigarettes during the term of this Compact.

(6) *Credit of the Nation and Nation Affiliates*. Except as otherwise expressly provided in this Section 7.03, the limited waiver granted pursuant to this Section 7.03 shall not implicate or in any way involve the credit of the Nation or any Nation Affiliate.

**Section 7.04.    Limited Waiver by State**. The State hereby waives its sovereign immunity, effective only if the State fails to implement the terms of a settlement or arbitration decision voluntarily or refuses to participate in arbitration pursuant to this Compact, subject to the following specific limitations:

(1) *Limitation of Claims*. The limited waiver granted pursuant to this Section 7.04 shall encompass (A) claims which seek monetary relief for direct damages attributable to State's breach of this Compact and for costs and expenses, including reasonable attorneys' fees, to the limited extent provided in Section 7.02(d), (B) claims for equitable remedies, and (C) actions to compel Dispute resolution by arbitration or for enforcement of a settlement or arbitration decision as provided in this Article VII. Notwithstanding the foregoing or any other provision of this Compact to the contrary, such limited waiver shall in no event extend to or encompass claims which seek indirect, incidental, special, consequential, punitive, exemplary or reliance damages (including, without limitation, lost or anticipated revenues, lost business opportunities or lost Sales or profits, whether or not any Party has been advised of the likelihood of such damages) against the State, and the State shall not be liable for any such damages.

(2) *Time Period*. The limited waiver granted pursuant to this Section 7.04 shall commence upon the Effective Date of this Compact and shall continue until the later of the date of its termination or cancellation pursuant to the terms of this Compact or the date on which the State has no surviving obligations pursuant to Section 8.02 and no surviving payment obligations pursuant to Section 4.02(a), except that the limited waiver shall remain effective for any proceedings pending on such date or initiated within 180 days following termination of this Compact for breach, and all permitted appeals therefrom.

(3) *Recipient of Waiver*. The limited waiver granted pursuant to this Section 7.04 is granted to and for the sole benefit of the Nation (for itself and the other Nation Claim Parties), and may not be assigned or granted to any other individual or entity.

(4) *No Revocation*. The State agrees not to revoke its limited waiver of sovereign immunity contained in this Section 7.04. In the event of any such revocation, the Nation may, at its option, declare this Compact terminated for breach by the State.

(5) *Limitation Upon Damages*. Any monetary award or awards against the State shall be limited, in the aggregate, to an amount equal to total tax revenues and gross profits actually received by the Nation or Nation Affiliates attributable to the Sale of Cigarettes during the term of this Compact.

PBPN-000026

## ARTICLE VIII
## MISCELLANEOUS

**Section 8.01.    Other Compacts.**

(a)  During the Term of this Compact, State may enter into and be party to one or more compacts or other agreements regarding possession, transport, distribution, or Sale of Cigarettes or other Tobacco Products, including but not limited to taxation and escrow collection, with the Iowa Tribe of Kansas and Nebraska, the Kickapoo Tribe in Kansas, or the Sac and Fox Nation of Missouri in Kansas and Nebraska.

(b)  State shall not enter into or be party to any such compact or agreement with any Indian Tribe during the Term of this Compact, except as otherwise provided in Section 8.01(a).

**Section 8.02.    Confidentiality.** All information provided hereunder to the State shall be provided directly to KDOR and shall be treated as confidential pursuant to K.S.A. 2015 Supp. Sections 50-6a11(e), 50-6a11(f), and 75-5133; *provided, however*, that the State is permitted to provide or share such information pursuant to K.S.A. 2015 Supp. Sections 50-6a11(a) or 75-5133(b)(19).

**Section 8.03.    No Concessions.** By entering into this Compact, the Parties acknowledge and agree that, except as expressly provided herein, the Nation does not concede that: (a) the laws of the State, including any taxation or civil regulatory laws, apply to the Nation, its members or any Nation Affiliate regarding activities and conduct on Qualified Nation Lands or otherwise within the Nation's jurisdiction; or (b) the Qualified Nation Lands are located in or within the State or are otherwise part of the State. By entering into this Compact, the Parties acknowledge and agree that, except as expressly provided herein, the State does not concede that its interests, jurisdiction or sovereignty, as authorized, permitted or recognized by federal law, is diminished, limited or preempted in any manner.

**Section 8.04.    Most-Favored Nation.** The State agrees that Nation may propose an amendment to this Compact by written notice to the State based upon any provision of a compact permitted by Section 8.01 which Nation desires to include as a provision in this Compact. If the State Legislature does not approved such proposed amendment at the legislative session next following the Nation's request for such amendment, Nation may terminate this Compact at any time thereafter by providing thirty days' written notice to State.

**Section 8.05.    Construction.**

(a)  Each Party has received independent legal advice from its attorney(s) of choice and neither Party shall be deemed the author or drafter of this Compact. Therefore, any rule or canon of construction (whether pertaining to contracts, statutes, treaties or otherwise) that, in the case of an ambiguity, such ambiguity is construed against the author or drafter is not applicable. The language of all parts of this Compact shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. It is the intent of the Parties that this Compact shall be construed to reflect that the Parties are of equal stature and dignity and have dealt with each other at arm's-length. Accordingly, any statutory or judicial rules or canon concerning the construction of vague or ambiguous terms (whether pertaining to contracts, statutes, treaties or otherwise) that might otherwise be used in the interpretation or enforcement of this Compact, including construction of ambiguities either in favor of or against a state or Indian Tribe, is not applicable to this Compact and shall not obtain to the benefit or detriment of any Party, nor shall the terms and conditions of this Compact be extended by implication to the benefit or detriment of any Party, it being the intent of the Parties that the construction of this Compact shall be controlled by its express terms and not by implication.

(b)  The Article, Section and other headings contained in this Compact are for reference purposes only and shall not affect the meaning or interpretation of this Compact.

PBPN-000027

**Section 8.06.   Notice.** Except as otherwise expressly provided in Section 6.07(c), any notices or communications required or permitted to be given hereunder shall be in writing and shall be sent by manual delivery, overnight courier or United States certified mail (postage prepaid and return receipt requested) addressed to the respective Party at the address specified below, or at such other address as such Party shall have specified to the other Parties hereto in writing.

If to the Nation:

Chairperson and Tribal Council
Prairie Band Potawatomi Nation
16281 Q Road, Mayetta, KS 66509

with a copy to:

Russell A. Brien
Brien Law, LLC
15026 114th St.
Oskaloosa, KS 66066

If to the State:

Office of the Governor
300 SW 10th Ave., Ste. 241S
Topeka, KS 66612-1590

with copies to:

Office of the Kansas Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612-1597

and

Secretary of Revenue
915 SW Harrison Street, Second Floor
Topeka, KS. 66612-1588

All periods of notice shall be measured from, and such notices or communications shall be deemed to have been given and received on, the date of delivery as evidenced by the signed receipt of such notice or communication by the addressee or its authorized representative.

**Section 8.07.   Limited Purpose.** Nothing in this Compact shall be deemed to authorize the State to regulate or tax the Nation, its members, or any Nation Affiliate or to interfere with the Nation's government or internal affairs. This Compact shall not alter, limit, diminish or preempt Nation, federal or State sovereignty, authority, civil adjudicatory jurisdiction or criminal jurisdiction, except as expressly provided herein. Subject to Section 2.03 and the provisions of this Compact regarding Approved Manufacturers, nothing in this Compact shall require that the Nation, any Nation Affiliate, or any Licensed Retailer or Licensed Distributor obtain or maintain any license from, or otherwise submit to the jurisdiction of, the State. Nothing in this Compact shall constitute a stipulation by any party as to the actual boundaries of Nation's federally-established reservation.

**Section 8.08.   Entire Agreement; Amendments.** This Compact constitutes the entire understanding between the Parties and supersedes any and all prior or contemporaneous understandings and agreements, whether oral or written, between or among the Parties, with respect to the subject matter hereof. Subject to Section 8.04, this Compact can only be amended or modified with the same formality required to make the original Compact valid and enforceable.

PBPN-000028

**Section 8.09.    No Assignment; Beneficiaries.** This Compact is personal in nature, and no Party may directly or indirectly assign or transfer it by operation of law or otherwise. Nothing in this Compact, express or implied, is intended to or shall confer upon any individual or entity, other than the Parties hereto, any right, benefit or remedy of any nature whatsoever under or by reason of this Compact; *provided, however,* that subject to the terms and provisions of Article VII, each Nation Claim Party (other than the Nation) is an express third-party beneficiary of this Compact.

**Section 8.10.    Survival.** Upon the termination or cancellation of this Compact, the obligations of the parties hereunder shall terminate, except that the provisions of Sections 7.01, 7.02, 7.03, 7.04, and 8.02 shall survive such termination or cancellation and the State's payment obligations pursuant to Section 4.02(a) shall survive such termination or cancellation only until satisfaction of such obligations.

**Section 8.11.    Severability.** The terms, provisions, agreements, covenants and restrictions of this Compact are non-severable and, unless otherwise agreed to by the Parties, this Compact shall terminate if any term, provision, agreement, covenant or restriction in this Compact is held by a court of competent jurisdiction or other authority to be invalid, void, or otherwise unenforceable. In the event either Party has actual knowledge that the validity or enforceability of this Compact or any of its terms, provisions, agreements, covenants or restrictions are being challenged in a court of competent jurisdiction or other authority, such Party shall transmit written notice thereof to the other Party within three Business Days of acquiring such actual knowledge. The Parties agree to reasonably cooperate with each other and oppose any such challenge.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Compact as of the respective dates indicated below.

**Prairie Band Potawatomi Nation**                    **State of Kansas**

By: _____            By: _____

Liana Onnen, Chairperson                            Sam Brownback, Governor

Date: _____Feb 17, 2016_____                    Date: _____Feb 17, 2016_____

20

PBPN-000029