# EXHIBIT 36

# TONYA NEGONSOTT-RODVELT

## Page 1

```
 1  .
 2       UNITED STATES DISTRICT COURT
 3         FOR THE DISTRICT OF KANSAS
 4  .
 5  .
 6  PRAIRIE BAND POTAWATOMI NATION,
 7       Plaintiff,
 8  .
 9    vs.    Case No. 5:14-cv-04066-KHV-RES
10  .
11  JACKSON COUNTY SHERIFF TIM
12  MORSE, in his official capacity,
13       Defendant.
14  .
15  .
16          DEPOSITION OF
17       TONYA NEGONSOTT-RODVELT,
18  taken on behalf of the Defendant, pursuant to
19  Notice to Take Deposition, beginning at 12:58 p.m.
20  on the 9th day of December, 2025, at Fisher,
21  Patterson, Sayler & Smith, 3550 S.W. 5th Street,
22  in the City of Topeka, County of Shawnee, and
23  State of Kansas, before Sandra S. Biggs, Kansas
24  CCR No. 0716.
25  .
```

## Page 2

```
 1           APPEARANCES
 2  .
 3  ON BEHALF OF THE PLAINTIFF:
 4  .
 5    Mr. Klint A. Cowan
 6    Lippes Mathias
 7    201 Robert Avenue, Suite 235
 8    Oklahoma City, Oklahoma  73102
 9    405-456-0030
10    kcowan@lippes.com
11  .
12  .
13  ON BEHALF OF THE DEFENDANT:
14  .
15    Mr. David R. Cooper
16    Fisher, Patterson, Sayler & Smith
17    3550 S.W. 5th Street
18    Topeka, KS  66606
19    785-232-7761
20    dcooper@fpsslaw.com
21  .
22  .
23  ALSO PRESENT:
24    Mr. Rory Wheeler
25    Sheriff Tim Morse
```

## Page 3

```
 1           INDEX
 2  .
 3  .
 4  Certificate ---------------------------- 77
 5  .
 6  .
 7           WITNESS
 8  ON BEHALF OF THE PLAINTIFF:              PAGE
 9  TONYA NEGONSOTT-RODVELT
10  Direct-Examination by Mr. Cooper         5
11  Cross-Examination by Mr. Cowan          66
12  Redirect-Examination by Mr. Cooper      71
13  .
14  .
15           EXHIBITS
16  RODVELT DEPOSITION EXHIBIT NO.:         MARKED
17  No 2  Photo                              5
18  No 3  Prairie Band Potawatomi Nation
19     law code, Chapter 10                  5
20  No 4  Prairie Band Potawatomi Nation
21     law code, Chapter 13                  5
22  No 5  Prairie Band Potawatomi Nation
23     law code, Chapter 14                  5
24  No 6  Prairie Band documents,
25     PBPN-249 - PBPN-286                   5
```

## Page 4

```
 1  No 7  Compact relating to cigarette
 2     and tobacco sales                     5
 3  No 8  Prairie Band documents,
 4     PBPN-87 - PBPN-103                    5
 5  No 9  Prairie Band documents,
 6     PBPN-810 - PBPN-1088                  5
 7  .
 8  .
 9  .
10  .
11  .
12  .
13  .
14  .
15  .
16  .
17  .
18  .
19  .
20  .
21  .
22  .
23  .
24  .
25  .
```

Page 29

 1   A.  Which we provided them notice.  Prior to
 2  the inspections, official inspections, we stopped
 3  in to check on progress.  How you guys doing?  Is
 4  there anything we can do for you?  How can we
 5  help you?  Do you have a opening date?
 6       Q.  Okay.  What's your best estimate as to
 7  the number of official visits that you made to the
 8  store before they opened?
 9       A.  Did you say prior to them opening?
10       Q.  Um-hum.  The next question is going to be
11  after so...
12       A.  I don't think I can answer that, because
13  we were never officially given their opening date.
14       Q.  Okay.  How many unofficial visits did you
15  make before you knew they were open for business?
16       A.  Let's see.  I'd estimate three.
17       Q.  And how many official visits did you make
18  after you knew they were open for business?
19       A.  I need to review my files.
20       Q.  Do you have a guesstimate?
21       A.  There's five.
22       Q.  Okay.  And what degree of frequency were
23  you making those official visits, monthly, weekly,
24  biweekly?
25       A.  Approximately monthly.

Page 30

 1       Q.  Okay.  And were those where you gave them
 2  notice we're coming meetings?
 3       A.  For inspections, yes.
 4       Q.  Okay.  And how would you give them notice
 5  that you wanted to do an inspection?
 6       A.  E-mail.
 7       Q.  To whom?
 8       A.  The owners on the application which was
 9  Amit.
10       Q.  Okay.  You said that at some point in
11  time he kind of disappeared and you were dealing
12  with Raja.  When did that happen?
13       A.  I wish I had my notes.  I don't recall if
14  it was end of March or first of April.
15       Q.  Okay.  Well that's --
16       A.  Without my notes I don't --
17       Q.  That's really, end of March, first of
18  April is really all I care to know.  So after
19  April -- in April, you stopped dealing with Amit,
20  started dealing with Raja.  Is that true?
21       A.  When we would go to the store, the
22  workers would refer us to their boss, Raja Rain.
23       Q.  Okay.  Was he on the premises, by phone
24  or just they'd say you need to talk to him and --
25       A.  Both.

Page 31

 1       Q.  Okay.  How many times did you deal with
 2  Raja face to face on the premises?
 3       A.  Geez.  I need my notes.
 4       Q.  March-April-May, April-May?
 5       A.  I'm confusing this date.  He was -- he
 6  came later.
 7       Q.  You're doing that thinking out loud
 8  thing.  When you say on this date, you're pointing
 9  at the picture, Exhibit 2, which was May 28th?
10       A.  I need my notes to look at the dates of
11  the inspections.
12       Q.  Okay.
13       A.  5/28.  The -- I'm -- let's see.  Three or
14  four times.
15       Q.  Okay.  When you performed your
16  inspections at the Snak Atak, were you ever able
17  to actually inspect the premises and the
18  cigarettes and get the reports that you were
19  looking for?
20       A.  No.
21       Q.  Okay.  So how many times did you attempt
22  an inspection, whether it was successful or not?
23       A.  Official inspections, I can't remember
24  the dates.
25       Q.  Did you answer my question?

Page 32

 1       A.  No, because I am trying to recall my
 2  notes from my office.
 3       Q.  Did you ever get what you were looking
 4  for during an inspection?
 5       A.  Visually, yes.
 6       Q.  Okay.  And what was that that you were
 7  able to visually get that you were looking for?
 8       A.  The business was in operation.  The
 9  business did not have our license displayed as
10  they consented to and were reminded several times.
11  They had contraband on the shelves.  They were
12  selling lottery tickets, had a lottery machine,
13  and we still had no reports.
14       Q.  Okay.  You also saw they were vending
15  motor fuels, right?
16       A.  (Nods head up and down.)
17          MR. COWAN:  Is that a yes?
18       A.  Motor fuel, yes.
19  BY MR. COOPER:
20       Q.  We need a word to actually get --
21       A.  Sorry.
22       Q.  -- in the transcript?
23       A.  Sorry.
24       Q.  When you say contraband, is that anything
25  other than cigarettes without a Tribal tax stamp?

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street    6420 W 95th Street    800 E 1st Street N
Topeka, KS 66604       Suite 101              Suite 200
785-273-3063           Overland Park, KS 66212 Wichita, KS 67202
www.appinobiggs.com    913-383-1131           316-201-1612

Page 33

1  A. I'm referring contraband to tobacco only.
2  Q. Okay. So the contraband was tobacco,
3  whether cigarettes or other tobacco products,
4  without a Tribal tax stamp. Is that true?
5  A. I was there for -- to inspect the tobacco
6  cigarette packs to ensure they had the Prairie
7  Band Potawatomie Nation tax stamp affixed to them.
8  Q. And you saw cigarettes that did not have
9  that tax stamp?
10  A. Yes.
11  Q. Okay. That's what -- go back to my
12  original question. Was the contraband anything
13  other than cigarettes without an affixed tax
14  stamp?
15  A. There was illegal THC products.
16  Q. Okay. Anything else that you considered
17  to be contraband?
18  A. THC alcohol products.
19  Q. And the alcohol was all beer and
20  Seltzers?
21  A. I'd have to look at the inventory list.
22  I don't recall.
23  Q. Okay. When you say an inventory list, is
24  that an inventory list they gave you or is that
25  the inventory you took after they closed? Or did

Page 34

1  you do an inventory during inspections?
2  A. We took --
3  Q. That makes it compound, but please answer
4  my question.
5  A. We took pictures, so I'd have to refer to
6  the pictures --
7  Q. Okay.
8  A. -- for inventory prior to us taking
9  inventory.
10  Q. Okay. How many times did you go on
11  premises and take pictures of their inventory?
12  A. Let's see. We were -- I always take
13  pictures, but I cannot say I a hundred percent got
14  all the inventory.
15  Q. Yeah. That was not my question. My
16  question was how many times did you go on premises
17  and take pictures?
18  A. Maybe four times.
19     MR. COOPER: Okay. We've been going
20  about an hour. Do you want to keep going or do
21  you want to take a break for a minute?
22     MR. COWAN: I need to take a break if
23  it's okay. I had too much coffee at lunch.
24     MR. COOPER: That's fine.
25     (THEREUPON, a recess was taken.)

Page 35

1  BY MR. COOPER:
2  Q. Is it true, ma'am, that the Tax
3  Commission issued three licenses to the Snak Atak,
4  a business license, tobacco retailers license and
5  motor fuel license in January of 2024?
6  A. In January of 2024?
7  Q. Look in Exhibit 8, pages 90 and 99.
8  A. There's a business license in January,
9  yeah. Yes. They issued the business license, a
10  retail tobacco license and motor fuel license for
11  January 30th, 2024 to January 29, 2025.
12  Q. Was there later a liquor license issued
13  approved by the Tribal Council?
14  A. The liquor license was approved February
15  1st, 2024 to 1st, 2026 by Tribal Council
16  resolution.
17  Q. And did you transmit, inform Amit Mishra
18  of the approval of those licenses?
19  A. I mailed it to his address on the
20  application in Kansas City.
21  Q. What's the date of your letter
22  transmitting that approval?
23  A. February 5th, 2024. This looks like the
24  certified receipt letter.
25  Q. To the best of your recollection, when

Page 36

1  did the Snak Atak actually open for business?
2  A. Without my notes, I don't have an exact
3  date, but I recall trying to work out the stamping
4  issue with them in March.
5  Q. Okay. So you know from personal
6  experience that they were open for business in
7  March of 2024?
8  A. Yes.
9  Q. That's because you went there, they were
10  open for business and they had cigarettes without
11  tax stamps?
12  A. We went there prior to them open -- being
13  open and went back and, yes, it appeared they were
14  in operation.
15  Q. Okay. And they had cigarettes without
16  tax stamps?
17  A. Yes.
18  Q. Okay. To be specific, they had
19  cigarettes without Tribal tax stamps?
20  A. Yes and no.
21  Q. Explain that.
22  A. In March, we talked with the distributor
23  who said they would -- the driver, his name was I
24  think it was -- I think it's Morey and also the
25  owner on the license for Amcon Distributor and

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street          6420 W 95th Street           800 E 1st Street N
Topeka, KS 66604              Suite 101                    Suite 200
785-273-3063                  Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com           913-383-1131                 316-201-1612

Page 69

1 Revenue?
2     MR. COOPER:  I remember the --
3     MR. COWAN:  Okay.
4     MR. COOPER:  I'd like to see that in
5 writing.
6     BY MR. COWAN:
7   Q.  Yes.  I just wanted to make sure she --
8 you know, she said?
9   A.  Yeah, yeah.  I did.  I was like put that
10 in writing.  That's what we want that in writing.
11   Q.  Okay.  Thank you.  And have you had any
12 training as a tax commissioner on why you would
13 chain a door in a situation like Snak Atak?
14   A.  I'm not certain you would call it
15 training, but the Nation prior to my employment
16 has practiced this method before.  I don't know
17 all the details and specifics, but some of that
18 was shared with me by the Tax Commission.
19   Q.  Okay.  What's your understanding of why
20 you would chain doors when you have a Cease and
21 Desist Order?
22   A.  Exercising their jurisdiction.
23   Q.  Okay.  Real quickly, you mentioned --
24 well, I believe you testified earlier that there
25 were no Tribal tax stamps on any of the cigarettes

Page 70

1 you saw at Snak Atak.  Is that right?
2   A.  None of Prairie Band's current tax
3 stamps, but we believe there was more than a ten-
4 year old stamp which I called over to the LLC and
5 talked with Tyler Levier.  I said I've never seen
6 this stamp in anything of Prairie Band's.  I said
7 I could go research more files.  He said that
8 looks like a stamp from more than ten years ago.
9   Q.  Could that have been a Tribal tax stamp
10 of some sort?
11   A.  Yes.
12   Q.  Okay.  But to your knowledge, it was not
13 a current Prairie Band tax stamp?
14   A.  Absolutely wasn't.
15   Q.  I just want to make sure I understand.
16 Earlier I think you said you were never allowed to
17 inspect the inventory at Snak Atak.  But weren't
18 you allowed once or more than once to look at the
19 tobacco or something when you visited Snak Atak?
20   A.  Correct.  So there was like an impromptu
21 one time.  I asked them can I look at your -- do
22 you mind.  He was like go ahead.
23   Q.  So on that visit after they gave you
24 permission, what did you look at?
25   A.  Just the tobacco, cigarettes.

Page 71

1   Q.  No liquor?
2   A.  I didn't.  Now, if I recall, my coworker
3 later mentioned, hey, about the alcohol.
4   Q.  Okay.  And was Snak Atak open at that
5 time?
6   A.  When he talked with me?
7   Q.  No, when the Snak Atak representatives
8 gave you permission to look at the tobacco, were
9 they in business operating on that day, open to
10 the public that day?
11   A.  On one of my visits, yes.
12   Q.  Okay.  Do you think that was the visit
13 when you were allowed to look at the tobacco?
14   A.  Let's see.  I really wish I had my notes.
15 Because there was a day I actually purchased
16 tobacco, too, and gave it to the PD on one of the
17 days.
18   Q.  Okay.  But at least -- at least on one
19 occasion you were allowed to inspect the tobacco
20 by the Snak Atak representatives?
21   A.  Yes.
22     MR. COWAN:  Okay.  I think that's all I
23 have, David.
24 REDIRECT-EXAMINATION
25 BY MR. COOPER:

Page 72

1   Q.  Video is going to show what it shows, but
2 Bryce Whelpley never mentioned arresting anybody
3 in your presence.  Do you agree with that or
4 disagree with that?
5   A.  All I can tell you is I know what I
6 heard.  I don't have access to your date
7 timestamped video.  I don't know when cameras were
8 turned on or off.  I don't know how their systems
9 work.  I can only tell you what I heard.
10   Q.  Okay.  Tell me to the best of your
11 recollection what was said regarding an arrest?
12   A.  It was real quick.  If we're not putting
13 chains on, no arrest.
14   Q.  Okay.  And who said it?
15   A.  That Officer Whelpley.  He didn't say it
16 directly to me.  I was standing back.
17     MR. COOPER:  All right.  That's all.
18     MR. COWAN:  That's everything I have.
19     (THEREUPON, the deposition concluded at
20 3:22 p.m.)
21 .
22 .
23 .
24 .
25 .



Page 73

```
 1              SIGNATURE
 2   .
 3       The deposition of TONYA NEGONSOTT-RODVELT
 4   was taken in the matter, on the date, and at the
 5   time and place set out on the title page hereof.
 6   .
 7       It was requested that the deposition be
 8   taken by the reporter and that same be reduced to
 9   typewritten form.
10   .
11       It was agreed by and between counsel and
12   the parties that the deponent will read and sign
13   the transcript of said deposition.
14   .
15   .
16   .
17   .
18   .
19   .
20   .
21   .
22   .
23   .
24   .
25   .
```

Page 74

```
 1              AFFIDAVIT
 2   .
 3   STATE OF _____:
 4   COUNTY/CITY OF _____:
 5   .
 6       Before me, this day, personally appeared,
 7   TONYA NEGONSOTT-RODVELT, who, being duly sworn,
 8   states that the foregoing transcript of his/her
 9   Deposition, taken in the matter, on the date, and
10   at the time and place set out on the title page
11   hereof, constitutes a true and accurate transcript
12   of said deposition, along with the attached Errata
13   Sheet, if changes or corrections were made.
14   .
15       _____
16           TONYA NEGONSOTT-RODVELT
17   .
18       SUBSCRIBED and SWORN to before me this
19   _____ day of _____, 2025 in the
20   jurisdiction aforesaid.
21   .
22   _____     _____
23   My Commission Expires     Notary Public
24   .
25   .
```

Page 75

```
 1         DEPOSITION ERRATA SHEET
 2   .
 3   RE:    APPINO & BIGGS REPORTING SERVICE, INC.
 4   .
 5   FILE NO.: 78198
 6   .
 7   CASE:   PRAIRIE BAND POTAWATOMI NATION vs.
 8           JACKSON COUNTY SHERIFF TIM MORSE
 9   .
10   DEPONENT: TONYA NEGONSOTT-RODVELT
11   .
12   DEPOSITION DATE: 12/09/2025
13   .
14   To the Reporter:
15   I have read the entire transcript of my Deposition
16   taken in the captioned matter or the same has been
17   read to me.  I request that the following changes
18   be entered upon the record for the reasons
19   indicated.  I have signed my name to the Errata
20   Sheet and the appropriate Certificate and
21   authorize you to attach both to the original
22   transcript.
23   .
24   .
25   .
```

Page 76

```
 1   PAGE:LINE FROM     TO        REASON
 2   .
 3   .
 4   .
 5   .
 6   .
 7   .
 8   .
 9   .
10   .
11   .
12   .
13   .
14   .
15   .
16   .
17   .
18   .
19   .
20   .
21   .
22   .
23   .
24   SIGNATURE:_____ DATE:_____
25       TONYA NEGONSOTT-RODVELT
```

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street, Topeka, KS 66604, 785-273-3063, www.appinobiggs.com
6420 W 95th Street, Suite 101, Overland Park, KS 66212, 913-383-1131
800 E 1st Street N, Suite 200, Wichita, KS 67202, 316-201-1612

```
                                                  Page 77
 1              CERTIFICATE
 2  STATE OF KANSAS
 3  COUNTY OF SHAWNEE
 4      I, Sandra S. Biggs, a Certified Court
 5  Reporter, Commissioned as such by the
 6  Supreme Court of the State of Kansas,
 7  and authorized to take depositions and
 8  administer oaths within said State
 9  pursuant to K.S.A 60-228, certify that
10  the foregoing was reported by
11  stenographic means, which matter was
12  held on the date, and the time and place
13  set out on the title page hereof and
14  that the foregoing constitutes a true
15  and accurate transcript of the same.
16      I further certify that I am not
17  related to any of the parties, nor am I
18  an employee of or related to any of the
19  attorneys representing the parties, and
20  I have no financial interest in the
21  outcome of this matter.
22      Given under my hand and seal this
23  19th day of December, 2025.
24      _____
25      Sandra S. Biggs, C.C.R No. 0716
```


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E 1st Street N
Suite 200
Wichita, KS 67202
316-201-1612