# EXHIBIT 44

# TONYA NEGONSOTT-RODVELT

## Page 1

```
 1  .
 2          UNITED STATES DISTRICT COURT
 3            FOR THE DISTRICT OF KANSAS
 4  .
 5  .
 6  PRAIRIE BAND POTAWATOMI NATION,
 7       Plaintiff,
 8  .
 9     vs.     Case No. 5:14-cv-04066-KHV-RES
10  .
11  JACKSON COUNTY SHERIFF TIM
12  MORSE, in his official capacity,
13       Defendant.
14  .
15  .
16            DEPOSITION OF
17          TONYA NEGONSOTT-RODVELT,
18  taken on behalf of the Defendant, pursuant to
19  Notice to Take Deposition, beginning at 12:58 p.m.
20  on the 9th day of December, 2025, at Fisher,
21  Patterson, Sayler & Smith, 3550 S.W. 5th Street,
22  in the City of Topeka, County of Shawnee, and
23  State of Kansas, before Sandra S. Biggs, Kansas
24  CCR No. 0716.
25  .
```

## Page 2

```
 1            APPEARANCES
 2  .
 3  ON BEHALF OF THE PLAINTIFF:
 4  .
 5     Mr. Klint A. Cowan
 6     Lippes Mathias
 7     201 Robert Avenue, Suite 235
 8     Oklahoma City, Oklahoma  73102
 9     405-456-0030
10     kcowan@lippes.com
11  .
12  .
13  ON BEHALF OF THE DEFENDANT:
14  .
15     Mr. David R. Cooper
16     Fisher, Patterson, Sayler & Smith
17     3550 S.W. 5th Street
18     Topeka, KS  66606
19     785-232-7761
20     dcooper@fpsslaw.com
21  .
22  .
23  ALSO PRESENT:
24     Mr. Rory Wheeler
25     Sheriff Tim Morse
```

## Page 3

```
 1            INDEX
 2  .
 3  .
 4  Certificate ---------------------------- 77
 5  .
 6  .
 7            WITNESS
 8  ON BEHALF OF THE PLAINTIFF:         PAGE
 9  TONYA NEGONSOTT-RODVELT
10  Direct-Examination by Mr. Cooper     5
11  Cross-Examination by Mr. Cowan      66
12  Redirect-Examination by Mr. Cooper  71
13  .
14  .
15            EXHIBITS
16  RODVELT DEPOSITION EXHIBIT NO.:         MARKED
17  No 2  Photo                              5
18  No 3  Prairie Band Potawatomi Nation
19       law code, Chapter 10               5
20  No 4  Prairie Band Potawatomi Nation
21       law code, Chapter 13               5
22  No 5  Prairie Band Potawatomi Nation
23       law code, Chapter 14               5
24  No 6  Prairie Band documents,
25       PBPN-249 - PBPN-286                5
```

## Page 4

```
 1  No 7  Compact relating to cigarette
 2       and tobacco sales                  5
 3  No 8  Prairie Band documents,
 4       PBPN-87 - PBPN-103                 5
 5  No 9  Prairie Band documents,
 6       PBPN-810 - PBPN-1088               5
 7  .
 8  .
 9  .
10  .
11  .
12  .
13  .
14  .
15  .
16  .
17  .
18  .
19  .
20  .
21  .
22  .
23  .
24  .
25  .
```

Page 45

1　BY MR. COOPER:
2　Q. Do you agree that the Cease and Desist
3　Order did not instruct you to chain the doors?
4　A. I'm not an attorney.
5　Q. And the word chain does not appear
6　anywhere in the Cease and Desist Order. Do you
7　agree with that?
8　A. Yes.
9　Q. Okay. Was there any discussion before
10　you, William, Chief Clark and the other two
11　Prairie Band police officers went back to the Snak
12　Atak on May 28 about chaining the doors or closing
13　the business?
14　A. Yes.
15　Q. Okay. I want to know who the persons
16　involved in that conversation were. That's the
17　first question?
18　A. I don't know who all was involved in
19　those conversations.
20　Q. Okay. Now, tell me the people you know
21　that were, in fact, involved in the conversation?
22　A. I take orders from the Tax Commission.
23　Q. Were you present when somebody discussed
24　chaining the doors of the Snak Atak?
25　A. Pre, during, post.

Page 46

1　Q. At any time on May 28, 2024.
2　A. Yes.
3　Q. Okay. Who were the people who discussed
4　chaining the doors of the Snak Atak on May 28?
5　A. So Chief Clark, William and I for
6　carrying out, excuse me, part of our directive.
7　Q. Okay. What was the directive?
8　A. I don't know all the conversations
9　between Chief Clark and his role and the Nation.
10　Q. Okay. You're the tax official carrying
11　out the Nation's tax business?
12　A. My job --
13　Q. So what directive was given to you?
14　A. My job was to hand this signed Cease and
15　Desist Order from the Tax Commission which is Wade
16　Pahmahmie, Ronald Wahweotten, Michelle Simon to
17　Chief Clark.
18　Q. Okay.
19　A. And that's what I did.
20　Q. Okay. Now, let's go back to the chain
21　the doors comment. If you heard somebody give a
22　directive about chaining the doors, who was that
23　person that gave the directive, person or persons?
24　If you didn't hear it, just tell me you didn't
25　hear it.

Page 47

1　A. So from the Cease and Desist Order, we
2　did have chains prepared and ready when this was
3　going to be hand-delivered from Chief Clark.
4　Q. Who's decision was it, if you know, that
5　as part of serving a Cease and Desist Order, there
6　was a plan also to chain the doors of the Snak
7　Atak?
8　A. I don't know the back side conversations.
9　I was informed by the Tax Commission which we did
10　have the chains that would be handed to Chief
11　Clark and this letter.
12　Q. Okay. So how did you come to understand
13　that the doors were to be chained? In other
14　words, did you overhear somebody say it, was an
15　order given directly to you, did Chief Clark
16　mention it on the way that he planned to chain the
17　doors? Understand, I'm going to be deposing Chief
18　Clark tomorrow. But I need to know your
19　understanding of the origin of any plan or
20　directive to chain the doors?
21　A. I can only speak from the Tax Commission
22　advising me that if there was non-compliance, we
23　would through Chief Clark serve the Cease and
24　Desist Order and lock the store up with the
25　chains.

Page 48

1　Q. Okay. In your five-year tenure, has the
2　Prairie Band Tax Commission chained any business
3　or premises other than the Snak Atak. I'm not
4　saying it did chain the Snak Atak. I'm asking is
5　there any business that the Tax Commission has
6　ordered chained?
7　A. I would not have access to other entities
8　of the Tribe that worked directly with PD in
9　regards that matter.
10　Q. Let's go back to my original question.
11　In your five-year tenure do you know of any
12　instance other than the Snak Atak where a business
13　or premises was chained?
14　A. Chained, no.
15　Q. Okay. It never happened in your tenure,
16　right?
17　A. Correct.
18　Q. So what I am understanding from the
19　answers that you've been giving me is that it
20　wasn't your idea to chain the door and you don't
21　know who's decision it was to say to chain the
22　door. Is that an accurate understanding?
23　A. No.
24　Q. Okay. Tell me why it's not an accurate
25　understanding.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E 1st Street N
Suite 200
Wichita, KS 67202
316-201-1612

Page 49

1  A. I do not know the conversations that took
2  place outside of my office. I can tell you
3  through communication with the Tax Commission who
4  may have had them conversations in the back
5  offices, I don't know, what was directed to me
6  from my immediate superiors is this would be
7  handed to Chief Clark after they signed it and
8  approved it. He would issue that and we would
9  close the business.
10  Q. Close the business and chain the doors
11  are different things?
12  A. And chain the doors. Okay.
13  Q. So did you go there with chains?
14  A. Yes.
15  Q. Okay.
16  A. And I handed them to Chief Clark.
17  Q. Again, I've got -- we've got the body cam
18  video of the second visit from Chief Clark and I
19  think it was Deputy Martinez or Barnhart, one of
20  the two. So what's on video is on video. But
21  the business was not chained --
22  A. Correct.
23  Q. -- on May 28th, correct?
24  A. Correct.
25  Q. Who made that decision, if you know?

Page 50

1  A. Chief Clark stated we would leave in
2  peace.
3  Q. Okay. Now, going back to your Exclusion
4  Complaint on pages Prairie Band 810, 811 and 812,
5  it's on page 812, you asked for an order to secure
6  the business location including, but not limited
7  to, chaining the doors, placing barricades around
8  the property to prevent access to the business
9  location, true?
10  A. Yes.
11  Q. Were chains ever applied to the Snak Atak
12  retail location?
13  A. Not on May 28th, but yes.
14  Q. When were they applied?
15  A. During the seizure.
16  Q. After you'd -- after there'd been an
17  Exclusion Complaint Form, notice and a hearing and
18  an order issued directing that you chain the
19  doors, correct?
20  A. Correct.
21  Q. Did you have any conversation, and I'm
22  asking this because other than a couple of
23  questions from you to the chief on video, I don't
24  see that you actually talked to any of the three
25  deputies who showed up at the Snak Atak on May 28.

Page 51

1  Did you have any conversation with any of the
2  deputy -- Jackson County sheriff's deputies who
3  were present on May 28, 2024?
4  A. Nothing directly with the business, but I
5  recall walking to take pictures and I don't know
6  if I said hi, how are you doing. It was some
7  small --
8  Q. Okay.
9  A. -- talk.
10  Q. Was that where you were serving the Cease
11  and Desist Order or the earlier time you were
12  there to inspect?
13  A. At this time, we would have been waiting
14  for Amal -- or, no, what's his name, Raja to get
15  there. And I had been busy just taking pictures
16  so I could see who all was present. And from
17  this picture, I walked back this way and I
18  remember telling, you know, hi or how are you
19  doing, nice day or something informal.
20  Q. Okay. And do you know who that was that
21  you talked to?
22  A. No.
23  Q. The three deputies who were there?
24  A. It was Jackson County.
25  Q. Well, the three deputies who were there

Page 52

1  were Whelpley, Ohlde and Martinez. Do you know
2  any of those by name or sight?
3  A. I know the W. I have pictures of him.
4  Q. Whelpley?
5  A. I guess that's his last name.
6  Q. On May 28, 2024, did you request a Cease
7  and Desist Order from the Tax Commission? I know
8  you got one, but I'm wanting to know is did you
9  ask for it or were you given it without asking?
10  A. I don't recall without my notes if I
11  asked the next step.
12  Q. So in order to -- for me to close that
13  loop because it's 34 of our proposed stipulation,
14  Clint, you were refused access for this -- for the
15  inspection by the folks who were at the Snak Atak
16  earlier in the day on May 28th, true?
17  A. Yes.
18  Q. You left the premises, went back to the
19  Government Center. And the next time you left the
20  Government Center, you had a Cease and Desist
21  Order?
22  A. Yes.
23  Q. Okay. Now, what you're not sure of is
24  whether you asked for it or if you just asked for
25  next steps. There was the huddle between Darren

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street      6420 W 95th Street      800 E 1st Street N
Topeka, KS 66604         Suite 101                Suite 200
785-273-3063             Overland Park, KS 66212  Wichita, KS 67202
www.appinobiggs.com      913-383-1131             316-201-1612

```
                                                  Page 77
 1             CERTIFICATE
 2  STATE OF KANSAS
 3  COUNTY OF SHAWNEE
 4       I, Sandra S. Biggs, a Certified Court
 5  Reporter, Commissioned as such by the
 6  Supreme Court of the State of Kansas,
 7  and authorized to take depositions and
 8  administer oaths within said State
 9  pursuant to K.S.A 60-228, certify that
10  the foregoing was reported by
11  stenographic means, which matter was
12  held on the date, and the time and place
13  set out on the title page hereof and
14  that the foregoing constitutes a true
15  and accurate transcript of the same.
16       I further certify that I am not
17  related to any of the parties, nor am I
18  an employee of or related to any of the
19  attorneys representing the parties, and
20  I have no financial interest in the
21  outcome of this matter.
22       Given under my hand and seal this
23  19th day of December, 2025.
24       _____
25       Sandra S. Biggs, C.C.R No. 0716
```

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E 1st Street N
Suite 200
Wichita, KS 67202
316-201-1612