**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

PRAIRIE BAND POTAWATOMI NATION,
a federally recognized Indian Tribe,

Plaintiff,

vs.

Case No. 5:24-cv-4066-KHV

JACKSON COUNTY SHERIFF TIM MORSE,

Defendant.

**Defendant's Trial Brief and Response to Docs. 90, 91, and 92**

The Prairie Band Potawatomi Nation (PBPN, Nation or Tribe) sued Jackson County Sheriff

Tim Morse seeking a declaratory judgment:

1. Declaring Sheriff Morse unlawfully interfered with the Nation's exercise of its civil-regulatory jurisdiction over Snak Atak (Count I of the Amended Complaint), and

2. Declaring Sheriff Morse wrongfully exercised civil-regulatory jurisdiction through his deputies by issuing parking violations and threatening to tow vehicles within the Reservation.

The PBPN also seeks a permanent injunction:

1. Restraining "Sheriff Morse from interfering in the Nation's lawful exercise of its civil-regulatory jurisdiction within the Reservation," and

2. Restraining Sheriff Morse "from exercising civil-regulatory jurisdiction within the Reservation."

Doc. 67, Pretrial Order, ¶ 4.a. In the Pretrial Order, Sheriff Morse addresses these claims as

follows:

i. The Tribe lacks standing for Count I because it did not suffer an injury in fact, (2) that is fairly traceable to the challenged conduct of Sheriff Morse, or (3) that is likely to be redressed by a favorable judicial decision.

1

ii.      Sheriff Morse did not interfere with the Nation's exercise of civil-regulatory authority.

iii.     The exercise of authority on the Reservation over persons and property as necessary to preserve the peace is not an interference with the Nation's civil-regulatory authority and does not impinge upon tribal attributes of sovereignty over tribal members and tribal territory.

iv.     The enforcement of state vehicle and traffic laws by Sheriff Morse and his deputies on the Reservation does not impinge tribal attributes of sovereignty over tribal members and tribal territory.

v.      The occurrence at the Snak Atak, while not unlawful, was a one-off event unlikely to occur again. There is no threatened injury that is certainly impending nor is there is a '"substantial" risk that the alleged harm will occur again.

vi.     Sheriff Morse and his deputies have jurisdiction to issue parking citations on the Reservation.

*Id*., ¶ 4.b.

To be clear, Sheriff Morse does not "claim that the tribal officials were criminally trespassing when they attempted to enforce their laws on Snak Atak … ." Doc. 90, at 6. Nor does Sheriff Morse contend the Tribe had no regulatory jurisdiction with respect to Snak Atak—though he was unaware of Snak Atak's consent to that jurisdiction until this lawsuit was filed and had been lied to by the owners about the matter.

Directly addressing Plaintiff's claims, there is no cause of action for interference with a Tribe's civil-regulatory jurisdiction absent an actual infringement on *tribal self-government*. However the Tribe frames its claim, Sheriff Morse did not interfere with the Nation's exercise of its civil-regulatory jurisdiction over Snak Atak. More importantly, Sheriff Morse did not infringe on tribal self-government. Sheriff Morse and state law enforcement officials have jurisdiction over all offenses on the reservation, including parking offenses.

Finally, there is no basis for injunctive relief.

2

## I.    Kansas' jurisdiction on the Reservation.

The Tribe's response to the show cause order, Doc. 90, contends Kansas traffic laws on parking, specifically K.S.A. 8-1569 though K.S.A. 8-1572,[1] are civil-regulatory and that Kansas lacks jurisdiction to enforce these statutes on the Reservation. Not so.

Pursuant to the Kansas Act, 18 U.S.C. § 3243, Kansas has jurisdiction over all offenses committed by or against Indians on Indian reservations. While not defined as a felony or misdemeanor, traffic infractions (including parking violations) are offenses over which Kansas has jurisdiction under the Kansas Act. *St. Germaine v. Cir. Ct. for Vilas County*, 938 F.2d 75 (7th Cir. 1991) (grant of criminal jurisdiction to state to enforce criminal laws in Indian country includes the jurisdiction to enforce its traffic laws in Indian country). Further, Tribes do not retain inherent, exclusive authority over public rights-of-way running through a reservation. *Strate v. A-1 Contractors*, 520 U.S. 438, 456-59 (1997). Such public roads are likened to non-Indian fee land because the Tribes lacked the power to "assert a landowner's right to occupy and exclude." *Id*. at 456.

As more fully set forth in Defendant's Motion for Summary Judgment, Doc. 75, Kansas has jurisdiction on the PBPN Reservation to keep and preserve the peace, to serve civil process, to regulate traffic on public roads, and over all offenses. Doc. 75, at 27-29, 32-36.

The PBPN cites *Pattern Instructions Kansas, 4th Civil* and contends the instruction identifies the statute, K.S.A. 8-1569, "as civil in nature." Doc. 90 (citing PIK Civ. 4th 121.28). That instruction and its comments do nothing of the sort. Rather, the comment refers to the introductory instruction, PIK Civ 4th 121.01, which instructs that "Negligence is the lack of

---

[1] K.S.A. 8-1569 addresses stopping and parking in residential or business districts so as to block a lane of traffic. K.S.A. 8-1570 authorize any police officer to order an illegally stopped/parked vehicle moved or to move it. K.S.A. 8-1571 addresses stopping and parking generally. K.S.A. 8-1572 requires parking within twelve inches of the curb or shoulder.

reasonable care. Reasonable care requires all persons who use the streets and highways to obey the rules of the road." *Id*. The Notes on Use for PIK Civ. 121.01 instructs, "The court should give this instruction immediately before the court instructs the jury about the applicable rules of the road." Nothing in the statutes or in the PIK make the offense of unlawful stopping, standing, or parking on a roadway anything other than an offense. *See* K.S.A. 8-2102 ("It is unlawful for the owner, or any other person, employing or otherwise directing the driver of any vehicle to require or knowingly to permit the operation of such vehicle upon a highway in any manner contrary to law.").

Plaintiff cites *Rodewald v. Kansas Dep't of Revenue*, 296 Kan. 1022, 297 P.3d 281 (2013). *Doc. 90*, at 6-8. *Rodewald* has no application here. That case dealt with Kansas' regulatory authority to suspend a driver's license for a DUI that occurred on the reservation. Further, the question of jurisdiction in Indian Country or on a reservation is a question of federal, not state, law. *Seymour v. Superintendent of Washington State Penitentiary*, 368 U.S. 351, 353 (1962) (addressing question of the State of Washington's criminal jurisdiction on former reservation—Washington is a Public Law 280 state); *Seneca-Cayuga Tribe of Oklahoma v. State of Oklahoma*, 874 F.2d 709, 714 (10th Cir. 1989) (state authority on a reservation is a "matter of federal law" and state regulatory authority in Indian Country depends on a determination either (1) whether federal law has preempted state authority, or (2) whether state regulation infringes on tribal self-government);[2] *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003) (Kansas

---

[2] Oklahoma, unlike Kansas, was required to disclaim jurisdiction over Indians at statehood. *See* Oklahoma Enabling Act, ch. 3335, § 3, 34 Stat. 267, 270 (1906); Enabling Act Amendment, ch. 2911, 34 Stat. 1286 (1907); *see generally Indian Country, U.S.A., Inc. v. Oklahoma Tax Comm'n.*, 829 F.2d 967, 976–81 (10th Cir.1987) (citing § 1 of the Oklahoma Enabling Act and interpreting it as a general reservation of federal and tribal jurisdiction over Indians and their lands and property), *cert. denied*, 487 U.S. 1218 (1988).

As for Kansas, "The Act for Admission excludes from the boundaries of the State of Kansas only those lands which Indian tribes reserved unto themselves 'by treaty' with the United States." *Sac & Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 577 (10th Cir. 2000). The treaties between the United States and the Prairie Band of Potawatomie do not exclude any Indian lands from Kansas' boundaries. See Treaty with the Potawatomi Nation,

authority on reservation is "a matter of federal, not state, law"). For reservation land to be excluded from the jurisdiction of the State of Kansas, the treaty with the Tribe must exclude the reservation from the state boundary or must expressly require consent of the Tribe to be included within the boundary of the State or territory. *Sac & Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 576–77 (10th Cir. 2000). The United States Supreme Court unequivocally held Kansas (and Idaho) *do have* jurisdiction on reservations *unless* that jurisdiction was expressly excluded by treaty. *Langford v. Monteith*, 102 U.S. 145, 147 (1880). This precedent is binding and shows *Rodewald* was wrongly decided. Further, because it is a federal question and not a question of state law, *Rodewald* has no application in this case.

A.    **The "civil" jurisdiction conferred under 25 U.S.C. § 1322 is state court jurisdiction over disputes involving Indians. It has nothing to do with "civil-regulatory" jurisdiction.**

Plaintiff also cites 25 U.S.C. § 1322. Plaintiff contends Kansas has not assumed "civil jurisdiction" under § 1322(a). Doc. 90, at 8. It is true that Kansas has not sought to assume exclusive jurisdiction for lawsuits involving Indians. Plaintiff then contends § 1322 is the means by which Kansas acquires "civil-adjudicatory *and* civil-regulatory jurisdiction over Indians in the Reservation … ." *Id*. (emphasis added). This assertion misconstrues the text and scope of § 1322(a).

> (a) **Consent of United States; force and effect of civil laws.** The consent of the United States is hereby given to any State not having jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State to assume, with the consent of the tribe occupying the particular Indian country or part thereof which would be affected by such assumption, such measure of jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within

1846., 9 Stat. 853 (Doc. 10-1); Treaty with the Potawatomi, 1861, 12 Stat. 1191 (Doc. 10-2); and Treaty with the Potawatomi, 1867, 15 Stat. 531 (Doc. 10-3).

5

such Indian country or part thereof as they have elsewhere within that State.

25 U.S.C. §1322(a). This section was intended primarily to provide a state forum for resolving legal disputes involving Indians. *Bryan v. Itasca Cnty., Minnesota*, 426 U.S. 373, 383 (1976) ("primarily intended to redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens, by permitting the courts of the States to decide such disputes"). Thus, the scope of state civil jurisdiction assumed under § 1322(a) is limited to private causes of action in state courts. *Id.* at 387 ("the legislative history of Title IV makes it difficult to construe § 4 jurisdiction acquired pursuant to Title IV as extending general state civil regulatory authority, including taxing power, to govern Indian reservations").

> **B.      The Reservation is part of the State of Kansas. The Tribe is sovereign, but its reservation is within and part of the Kansas.**

Plaintiff contends "no court has ever ruled that the Nation's 1846 Treaty authorized the incorporation of its Reservation into Kansas." Doc. 90, at 8-9. Plaintiff notes the 1846 Treaty "guarantee[s] the full and complete possession of the same to the Pottowautomie Nation, as their land and home forever." Treaty with the Potawatomi Nation, 1846, 9 Stat. 853 (Doc. 10-1). Plaintiff's premise ignores that "Indian country is part of the State, not separate from the State." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636 (2022). Defendant does not dispute the eleven miles square reservation is the Tribe's reservation "forever" unless and until divested or diminished by Congress. The Reservation is, however, also part of Kansas as it was not excluded from the State by treaty. *Sac and Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 577 (10th Cir. 2000) ("only those lands which Indian tribes reserved unto themselves 'by treaty' with the United States" were exempted from the boundaries of Kansas); *United States v. Ward*, 28 F. Cas. 397, 399 (D. Kan. 1863) ("all territory which was not covered by such treaties was included within the

state, within its jurisdiction and within its territory"). In *Pierce,* the Tenth Circuit held, with respect to Indian country/Reservations, "all territory not previously exempted from the boundaries of the State of Kansas by treaty between the United States and an Indian tribe 'was included within the state, within its jurisdiction and within its territory; and this irrevocably, unqualifiedly, and exclusively.'" 213 F.3d at 577 (quoting *United States v. Ward*, 28 F. Cas. at 399). The PBPN identify no language in its treaties with the United States from which a court "might construe as excluding their lands from the boundaries of the State." *Id*.

### C. Kansas has "civil-regulatory" jurisdiction within the Reservation.

As set forth in Defendant's Motion for Summary Judgment, Kansas has "civil-regulatory" jurisdiction on the Reservation including jurisdiction to keep and preserve the peace and to serve civil process. Doc. 75, at 27-29, 32-36.

There are many instances of "State civil-regulatory" authority on reservations. *See, e.g.*, *Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95 (2005) (imposition of Kansas motor fuel excise tax for fuel supplied to gas station operated by tribe on reservation property); *In re Kaul*, 269 Kan. 181, 193, 4 P.3d 1170 (2000) (once original allotments were alienated from the allottee, land on the reservation is subject to ad valorem taxation); *Kaul v. State Dep't of Revenue*, 266 Kan. 464, 970 P.2d 60 (1998) (State can impose motor fuel tax for sales on Indian reservation where the legal incidence of the tax fell on the non-members of the tribe).

### II. Addressing this Court's orders.

> The Court identifies the following issues, at a minimum, for trial: (1) whether Sheriff Morse intended to interfere with plaintiff's exercise of civil-regulatory jurisdiction over Snak Atak, (2) whether Nation officials planned to chain the Snak Atak doors, (3) whether Nation officials feared arrest based on Sheriff Morse's statements and actions, (4) whether Nation officials or Chief Clark altered their plans or behavior due to Sheriff Morse's actions regarding Snak Atak and (5) whether aside from the Snak Atak and towing incidents, Sheriff Morse has engaged in other (or ongoing) acts of interference, opposition, intervention, hinderance or prevention with regard to plaintiff's exercise of civil-regulatory jurisdiction.

Doc. 85, at 2. Defendant addresses each of these briefly.

**(1)** **Whether Sheriff Morse intended to interfere with plaintiff's exercise of civil-regulatory jurisdiction over Snak Atak**

Defendant has identified no case that addresses an intent requirement. Rather, as discussed above, there is no cause of action for interference with a Tribe's civil-regulatory jurisdiction absent an actual infringement on *tribal self-government*. The Tribe does not and cannot clear this hurdle.

**(2)** **Whether Nation officials planned to chain the Snak Atak doors.**

While Chief Clark never had a plan to chain the doors of Snak Atak on May 28, 2024, Doc. 75, ¶ 90, the officials had chains ready to give to Chief Clark and officials planed to "serve the Cease and Desist Order and lock the store up with the chains." Negonsott-Rodvelt dep. 46:20-47:25; Doc. 75-22.

**(3)** **Whether Nation officials feared arrest based on Sheriff Morse's statements and actions.**

Chief Clark did not fear arrest. Doc. 75, ¶¶ 87, 91. Sheriff Morse did not threaten arrest, his statements were conditional and theoretical. The conditions described never existed. *Id.*, ¶ 81 (Sheriff Morse conditioned his statement to Chief Clark, saying "if this isn't legitimate and they ask you to leave, theoretically you could be subject to arrest."). No other Tribal official spoke with Sheriff Morse. If anyone feared arrest, that fear was unreasonable.

**(4)** **Whether Nation officials or Chief Clark altered their plans or behavior due to Sheriff Morse's actions regarding Snak Atak.**

On this question, Sheriff Morse contends it does not matter if the officials changed their behavior. On the phone call, Chief Clark told Sheriff Morse that Snak Atak *had* signed an agreement with the Tribe and that nobody had asked Tribal officials to leave. He further told Sheriff Morse that he was present at Snak Atak to serve the Cease and Desist Order and nothing else. Snak Atak never asked Tribal officials to leave so the conditions for criminal trespass were

8

never even arguably in play.

However, if there were plans to chain the doors by Tribal officials, they were planning to do so without first providing due process. The Tribe didn't issue a writ of execution until August 2024. Doc. 75, ¶¶ 95-96, 101 (Tribal Court issued a Combined Final Order of Exclusion and Writ of Execution, which was the first order directing the physical closure, chaining and barricading of Snak Atak; the Cease and Desist Order didn't direct closure, chains or barricades).

> **(5)**    **Whether aside from the Snak Atak and towing incidents, Sheriff Morse has engaged in other (or ongoing) acts of interference, opposition, intervention, hinderance or prevention with regard to plaintiff's exercise of civil-regulatory jurisdiction.**

There are no such instances known to Sheriff Morse.

## III.    Response to Doc. 91, regarding Show Cause order pertaining to the basis for and elements of Plaintiff's claim.

> The Court also orders plaintiff to show cause in writing on or before 5:00 P.M. on June 17, 2026, why under Rule 12(b)(6), Fed. R. Civ. P., the Court should not dismiss plaintiff's complaint that defendant "violated federal law" by interfering with the exercise of its civil-regulatory jurisdiction.

Doc. 85, at 2.

The Tribe's claims have been a moving target. The original complaint was filed July 19, 2024. *Doc. 1.* After a settlement conference conducted by Magistrate Judge O'Hara on December 17, 2024, *Doc. 21*, this Court ordered the Tribe on February 10, 2025, "to show cause in writing why the Court should not dismiss plaintiff's claim for injunctive relief for lack of standing." *Doc. 25*. The Tribe sought leave to file an amended complaint on February 17, 2025, *Doc. 27*, which was granted on March 18, 2025. *Doc. 31*. The Amended Complaint, *Doc. 32* and *Doc. 33*, was filed March 18, 2025. Defendant filed a motion to dismiss, *Doc. 37*, which this Court denied. *Doc. 40.*

This Court construed the Tribe's claims in the amended complaint as follows:

> The amended complaint alleges that because Morse has continued to assert that he is not bound by federal law, that he has civil jurisdiction over the Reservation and that the Nation does not have civil-regulatory jurisdiction or sovereignty over its Reservation, he will continue to wrongfully exercise jurisdiction over the Reservation and interfere with the Nation's sovereignty, which demonstrates a real and immediate threat of future harm. The amended complaint alleges that declaratory and injunctive relief are necessary to prevent further infringement of tribal sovereignty, which is irreparable harm.

Doc. 40, 1-2. This Court went on to conclude the amended complaint "alleged that ***interference with tribal self-government*** is irreparable harm, and that Morse will not stop interfering with tribal self-government unless the Court issues injunctive relief." *Id*. at 13-14 (emphasis added.) This Court then noted the Tribe might be able to satisfy the irreparable harm requirement by showing an invasion of tribal sovereignty. *Id*. at 14.

In the Pretrial Order, however, the Tribe reframes the claim from one related to the Nation's sovereignty and right of self-government to a claim of "interfer[ence] with the Nation's exercise of its civil-regulatory jurisdiction over Snak Atak," and "wrongful[] exercise[ of] civil-regulatory jurisdiction by issuing parking violations and threatening to tow vehicles within the Reservation" while requesting declaratory and injunctive relief as to each. Doc. 67, 27-28, ¶ 4.a (Plaintiff's Claims). We are well past the pleadings stage and plausible allegations and inferences are insufficient for Plaintiff to proceed any further. The question is no longer whether the Tribe might be able to cobble evidence of a significant infringement on Tribal self-government. Rather, the question is whether such evidence exists. When faced with that pointed question, the Tribe has turned from that claim to one of "interference with the Nation's exercise of its civil-regulatory jurisdiction."

As Defendant construes the Tribe's response to this Court's Show Cause Order, *Doc. 91*, the Tribe equates "interference with the Nation's exercise of its civil-regulatory jurisdiction over Snak Atak" with an unlawful invasion of tribal sovereignty. The two are not synonymous.

**A.**     **The cases cited by Plaintiff do not support for the proposition that "interference with the Nation's exercise of its civil-regulatory jurisdiction" is a federal cause of action.**

*California v. Cabazon Band of Mission Indians* held that neither State nor county officials had any authority to enforce California's gambling laws within the reservations. 480 U.S. 202, 206 (1987). *Cabazon* addressed the scope of the jurisdiction conferred on California by Public Law 280. It observed Pub.L. 280 conferred broad criminal jurisdiction to California over offenses committed by or against Indians within all Indian country but that the grant of civil jurisdiction was more limited. The "civil jurisdiction" granted is over private civil litigation involving reservation Indians in state court, but it was not a grant of general civil regulatory authority. 480 U.S. at 207-08.[3] "Accordingly, when a State seeks to enforce a law within an Indian reservation under the authority of Pub.L. 280, it must be determined whether the law is criminal in nature, and thus fully applicable to the reservation under § 2, or civil in nature, and applicable only as it may be relevant to private civil litigation in state court." *Id*. at 208. *Cabazon* concluded that state regulation of the tribal gaming enterprises, given the express federal authorization for the gaming, impermissibly infringed on tribal government. *Id*. at 221–22. Because Kansas isn't a Pub.L. 280 state, *Cabazon* has no application.

*Iowa Tribe of Indians of Kansas & Nebraska v. State of Kansas*, 787 F.2d 1434 (10th Cir. 1986), adds nothing to the equation. That case held Kansas has jurisdiction over gambling offenses committed on Indian reservations and that the Indian Gambling Act, 15 U.S.C. § 1171, did not preempt state jurisdiction to prosecute the sale of pull-tab cards. 787 F.2d at 1440.

---

[3] In *Bryan v. Itasca Cnty., Minnesota*, the Supreme Court noted the "civil jurisdiction" conferred by both 25 U.S.C. § 1322(a) and Pub.L. 280 was jurisdiction for state courts to resolve legal disputes involving Indians. 426 U.S. 386-87.

11

The Seventh Circuit held that the Village of Hobart, Wisconsin[4] lacks jurisdiction to apply its ordinance requiring a permit to conduct a festival to the Oneida Nation's on-reservation festival activities. *Oneida Nation v. Vill. of Hobart*, 968 F.3d 664, 668 (7th Cir. 2020). *Oneida Nation* illustrates the bar the PBPN is trying to clear for it injunctive and declaratory claims. It also illustrates that "interference with the Nation's exercise of its civil-regulatory jurisdiction" isn't the bar. The Oneida Nation sought declaratory and injunctive relief that the Village's ordinance, as applied to tribal activities on reservation land, was preempted by federal law and imposition of the ordinance was "an impermissible infringement on the Nation's power of self-government." *Id*. at 672. No combination of the words "civil-regulatory jurisdiction" appears in the *Oneida Nation* decision.

> ### B.     The undisputed facts show Sheriff Morse did not interfere with Tribal self-government.

In Kansas, Indian reservations are part of the State and are not separate territories. Kansas has jurisdiction in Indian country unless a treaty with the tribe contains a clause excluding the lands of the tribe from State jurisdiction. *Langford v. Monteith*, 102 U.S. 145, 147 (1880) *Langford v. Monteith*, 102 U.S. 145, 147 (1880); *Organized Vill. of Kake v. Egan*, 369 U.S. 60, 72 (1962) (a reservation "was in many cases a part of the surrounding State or Territory, and subject to its jurisdiction except as forbidden by federal law").

The question remains, what ***does*** constitute an unlawful interference with tribal self-government that constitutes a cognizable injury? That answer can be gleaned from several Tenth Circuit decisions, discussed below, which have addressed injunction actions based on tribal self-government. From these cases, the following are a significant interference with tribal self-

---

[4] Wisconsin is a Pub.L. 280 state—it is one of the six mandatory states under Pub.L. 280. Public Law 280 83-280, 67 Stat. 588, as amended, 18 U.S.C. § 1162, 28 U.S.C. § 1360.

government amounting to a cognizable injury:

- State seizure of tribally-owned assets;

- State refusal to recognize the legitimacy of tribally issued vehicle titles and vehicle registrations;

- Employing State court processes to seize tribally owned assets for creditors; and

- Employing State court processes to enjoin federally authorized tribal gaming activities.

*Wyandotte Nation v. Sebelius*, 443 F.3d 1247 (10th Cir. 2006) held the seizure of tribally owned gambling proceeds, files and gaming machines and state enforcement of State gaming laws on Indian land impermissibly intruded on the tribal sovereignty. *Id*. at 1251-52, 1255

*Prairie Band of Potawatomi Nation v. Pierce*, **253 F.3d 1234 (10th Cir. 2001)** (*PBPN v. Pierce*), affirmed a preliminary injunction which prevented the State of Kansas from enforcing the state motor vehicle registration and titling laws with respect to an Indian tribe and its members. In *Pierce* the Tribe claimed Kansas was required, by the Indian Commerce Clause and the Kansas Act for Admission, to recognize the motor vehicle registrations and titles issued by the tribe. 253 F.3d at 1240. The Tenth Circuit addressed Kansas' argument that the PBPN lacked standing—that the Tribe had suffered no legally cognizable injury. *Id*. 1241-42 (the first essential element for Artile III standing requires that "the plaintiff must have suffered an invasion of a legally-protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical"). *PBPN v. Pierce* held the state's refusal to recognize the legitimacy of tribally issued vehicle registrations and titles "causes an obvious harm to the tribe: interference with or infringement on tribal self-government." *Id*. at 1242 (citing *Moe v. Confederated Salish & Kootenai Tribes of Flathead Rsrv*., 425 U.S. 463, 469 n.7 (1976) (addressing tribe's contention that state motor vehicle tax could not be imposed on tribe and its members and noting that "the Tribe, Qua Tribe, ha[d] a discrete claim of injury with respect to these forms of state taxation so

13

as to confer standing upon it apart from the monetary injury asserted by the individual [tribal members]").

*Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163 (10th Cir. 1998) held the seizure of tribal assets through state court garnishment amounted a significant interference with tribal self-government and sufficed as an irreparable harm/injury for purposes of preliminary injunction analysis. *Hoover* framed one of the issues as "whether § 1983 can be used to press a claim arising from an alleged violation of tribal sovereign immunity." 150 F.3d at 1169.

*Seneca-Cayuga Tribe of Oklahoma v. State of Okl. ex rel. Thompson*, 874 F.2d 709 (10th Cir. 1989) held that state court lawsuits against a tribe seeking to enjoin the operation of tribal bingo games on Indian land constituted a significant interference with tribal self-government. 874 F.2d at 716.

"The right of tribal self-government is ultimately dependent on and subject to the broad power of Congress." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143 (1980). State jurisdiction over public roads on Indian land does not infringe on tribal self-government or to "the right of reservation Indians to make their own laws and be ruled by them.'" *Strate*, 520 U.S. at 459 (quoting *Williams v. Lee*, 358 U.S. 217, 220 (1959)).

Plaintiff does not identify any federal law that preempts Kansas' jurisdiction over traffic offenses committed by non-Indians or Indians on the PBPN reservation. The events at Snak Atak on May 28, 2024, did not interfere with tribal self-government. Nobody sought a state court order enjoining the Tribe from enforcing its ordinances and regulations on its members or on consenting non-members. There was no disregard of the Tribe's right to make their own laws and be ruled by them.

In sum, there is no cause of action for interference with the Nation's exercise of its civil-

regulatory jurisdiction (and, thus, there are no elements for the cause of action). Rather, injunctive relief has been granted where a significant interference with tribal self-government is shown and the events at Snak Atak do not clear the bar. Likewise enforcement of the Kansas' and the PBPN's traffic laws on the Reservation does not clear the bar.

**IV.     Response to Doc. 92, regarding Show Cause order pertaining to injunction claim.**

Rule 65(d) requires specificity for an injunction.

(d) **Contents and Scope of Every Injunction and Restraining Order**.

(1) Contents. Every order granting an injunction and every restraining order must:

(A) state the reasons why it issued;

(B) state its terms specifically; and

(C) describe in reasonable detail--and not by referring to the complaint or other document—the act or acts restrained or required.

Fed. R. Civ. P. 65.

The Tribe invites the Court to "narrowly tailor the injunction to address the harm of the Sheriff's interference with the Nation's exercise of civil-regulatory jurisdiction, particularly the Sheriff's prior actions in the case of Snak Atak or the threats to tow a vehicle registered by the Nation and located on the Reservation." Doc. 90, at 3.

When it comes to the enforcement of parking statutes—there is sufficient specificity. The problem with that claim is that Kansas and Sheriff Morse have the jurisdiction and authority to enforce Kansas' traffic statutes (including those on parking and stopping) on the reservation (not to mention authority to enforce the Tribe's laws on parking). *See* § I, *supra* and *Doc. 75*, at 36-45.

As to the interference claim and notwithstanding the Tribe's attempts to describe its injunctive relief claim as narrowly tailored, it is an overbroad and improper request for an order telling the Sheriff to "follow the law." *See Shaw v. Smith*, 166 F.4th 61, 87 (10th Cir. 2026) (and

injunction to obey the law does not pass muster and is fatally flawed). The Tribe offers no description "in reasonable detail" of the "the act or acts restrained or required" as required by Rule 65(d). There is no clarity was to the line that cannot be crossed nor any measuring stick from which one can gauge whether the line has been crossed.

Also, there must be a showing that injunctive relief is necessary. *Shaw,* 166 F.4th at 81. Prospective injunctive relief is improper where Plaintiff cannot show a real or immediate threat of future harm. *Big Elk v. Bd. of County Comm'rs of Osage County*, 3 Fed. Appx. 802, 806 (10th Cir. 2001) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects."). The Tribe does not identify a past violation, let alone an ongoing violation or a real and immediate threat of future injury. As discussed elsewhere, Kansas has jurisdiction and authority to enforce traffic laws on public roads on the Reservation. The prospect of future enforcement of parking laws is not a cognizable injury. The incident involving Snak Atak was not an injury and was, at most, a one-off occurrence unlikely to reoccur.

There is no basis for an injunction and that claim for relief should be dismissed.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 SW 5th Street | Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com

**s/David R. Cooper**
David R. Cooper                                    #16690
**Attorneys for Defendant**

16

**Certificate of Service**

On June 24, 2026, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record:

| | |
|---|---|
| Jere D. Sellers, KS #16406 | Carol E. Heckman, Pro Hac Vice |
| Rachel E. North, D.Kan. #79121 | Klint A. Cowan, Pro Hac Vice |
| STINSON LLP | LIPPES MATHIAS |
| 1201 Walnut Street, Suite 2900 | 50 Fountain Place, Suite 1700 |
| Kansas City, Missouri 64106 | Buffalo, New York 14202 |
| Tel: (816) 691-3190 | Fax: (816) 412-8195 | Tel: (716) 853-5100 | Fax: (716) 853-5199 |
| jere.sellers@stinson.com | | checkman@lippes.com |
| rachel.north@stinson.com | kcowan@lippes.com |

*Attorneys for Plaintiff*

**s/ David R. Cooper**

17